# EXHIBIT A

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>       Plaintiffs,<br><br>      vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD<br><br>       Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION<br><br>**SUMMONS** |

**From The State of New Jersey**
**To The Defendant(s) Named Above:**

     The plaintiff(s), named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $135 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment. If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

/s/ *Theodore J Fetter*

Theodore J. Fetter
Clerk of the Superior Court

DATED:  January 31, 2012

Name of Defendant to Be Served:   **RICHARD D. HAIG, JR.**

Address of Defendant to Be Served: **11 PRESIDENTS DRIVE**
**BRIDGEWATER, NEW JERSEY 08807**

**ATLANTIC COUNTY:**

Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
**LAWYER REFERRAL**
(609) 345-3444
**LEGAL SERVICES**
(609) 348-4200

**BERGEN COUNTY:**

Deputy Clerk of the Superior Court
Civil Division Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769
**LAWYER REFERRAL**
(201) 488-0044
**LEGAL SERVICES**
(201) 487-2166

**BURLINGTON COUNTY:**

Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
**LAWYER REFERRAL**
(609) 261-4862
**LEGAL SERVICES**
(609) 261-4570

**CAMDEN COUNTY:**
**COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103
**LAWYER REFERRAL**
(856) 964-4520
**LEGAL SERVICES**
(856) 964-2010

**CAPE MAY COUNTY:**

Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08201
**LAWYER REFERRAL**
(609) 463-0313
**LEGAL SERVICES**
(609) 465-3001

**CUMBERLAND**

Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts.
P.O. Box 10
Bridgeton, NJ 08302
**LAWYER REFERRAL**
(856) 692-6207
**LEGAL SERVICES**
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records
465 Dr. Marin Luther King Jr,. Blvd.
Newark, NJ 07102
**LAWYER REFERRAL**
(973) 622-6204
**LEGAL SERVICES**
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08906
**LAWYER REFERRAL**
(856) 848-4589
**LEGAL SERVICES**
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House - 1st Floor
583 Newark Avenue
Jersey City, NJ 07306
**LAWYER REFERRAL**
(201) 798-2727
**LEGAL SERVICES**
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
**LAWYER REFERRAL**
(908) 735-2611
**LEGAL SERVICES**
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650
**LAWYER REFERRAL**
(609) 585-6200
**LEGAL SERVICES**
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Middlesex Vicinage
2nd Floor - Tower
56 Patterson Street., P.O. Box 2633
New Brunswick, NJ 08903-2633
**LAWYER REFERRAL**
(732) 828-0053
**LEGAL SERVICES**
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1269
**LAWYER REFERRAL**
(732) 431-5544
**LEGAL SERVICES**
(732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Washington and Court Streets
P.O. Box 910
Morristown, NJ 07963-0910
**LAWYER REFERRAL**
(973) 267-5882
**LAWYER SERVICES**
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
**LAWYER REFERRAL**
(732) 240-3666
**LEGAL SERVICES**
(201) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505
**LAWYER REFERRAL**
(973) 278-9223
**LEGAL SERVICES**
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 29
Salem, NJ 08079
**LAWYER REFERRAL**
(856) 678-8363
**LEGAL SERVICES**
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
400 North Bridge Street
Somerville, NJ 08876
**LAWYER REFERRAL**
(908) 685-2323
**LEGAL SERVICES**
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
**LAWYER REFERRAL**
(973) 267-5882
**LEGAL SERVICES**
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
**LAWYER REFERRAL**
(908) 353-4715
**LAWYER SERVICES**
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
**LAWYER REFERRAL**
(973) 267-5882
**LEGAL SERVICES**
(973) 475-2010

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

**FILED**
CUSTOMER SERVICE TEAM

SEP 2 8 2011

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #5

| | |
|---|---|
| ANONYMOUS,<br><br>          Plaintiffs,<br><br>vs.<br><br>ANONYMOUS<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY,<br>LAW DIVISION: HUDSON COUNTY<br><br>Docket No. $L-4958-11$<br><br>CIVIL ACTION<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>(FILED IN CAMERA AND<br>UNDER SEAL) |

-1-

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR.; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>        Plaintiffs,<br><br>      vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No.<br><br>CIVIL ACTION<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>(FILED IN CAMERA AND UNDER SEAL) |

The Plaintiffs, the State of New Jersey, ex rel. Luis Santiago, Sr., Luis Santiago, Jr., John Peck, and John Honsberger, Sr.; Luis Santiago, Jr. and John Honsberger, Sr., by way of Complaint against the Defendants, Haig's Service Corporation d/b/a Haig Service Corporation, Richard D. Haig, Jr. and Christopher Bernard, say:

-1-

## INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the State of New Jersey arising from false statements and claims made and presented by the Defendants or their agents and/or employees in violation of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 et seq. ("NJFCA").

2.     The violations consist of misrepresentations, knowing omissions of material facts and failure to apply funds for their sole intended purpose in connection with State funds provided the Defendants.

3.     The NJFCA is the State of New Jersey's equivalent of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq.  The NJFCA provides that any person who knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval shall be liable for a civil penalty of between $5,000 and $10,000 for each such claim submitted or paid, plus three times the amount of the damages sustained by the State.

4.     This Complaint is filed under seal for 60 days (without service on the Defendants during that period) to enable the State: (a) to conduct its own investigation without the Defendants' knowledge, and (b) to determine whether to join the action.

5.     The essence of the false claims fraud discovered by Plaintiffs/Relators is that the Defendants bid for and received fire and/or burglar protection service contracts from various governmental entities in the State, which received State funds for, in part, payment of these contracts.  Pursuant to the contracts, the Defendants were to pay their employees "prevailing wages" as required by contract and the Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq.

6.   The Defendants certified that they were, in fact, paying their employees who performed work on these contracts, such as the Plaintiffs/Relators, prevailing wages. However, Defendants concocted an illegal compensation system and otherwise diverted the State funds to themselves instead of paying their employees, including Plaintiffs/Relators, thereby defrauding the State of New Jersey.

7.   Not only was this fraud perpetuated against the named Plaintiffs/Relators, this scheme has been ongoing for many years and the Defendants have perpetuated the fraud against the State by failing to pay prevailing wages to other employees.

8.   Pursuant to the NJFCA, Plaintiffs/Relators seek to recover, on behalf of the State of New Jersey, damages and civil penalties arising from the Defendants' fraudulent acts.

9.   Certain of the Plaintiffs/Relators also bring individual claims because they have not been paid their prevailing wages as required pursuant to N.J.S.A. 34:11-56.40.

10.  In addition to the NJFCA claims and individual prevailing wage claims, Plaintiffs/Relators have worked hours in excess of 40 per workweek without being paid all their over time hours at time and one half as required by the Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq.* ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq.* ("NJWPL").

11.  Rather than paying the time and a half rate required by the FLSA and NJWPL, Defendants promised to provide "comp time" and apply the additional hours to the following week's work. However, this alternative method of payment is a violation of both the FLSA and NJWPL.

12.   Rather than even provide "comp time", in these subsequent weeks, Plaintiffs/Relators were not provided time off or paid the required additional hours and often worked additional time beyond 40 hours in the subsequent workweek.

13.   Two of the Relators are subject to a signed employment agreement which contains an arbitration clause.   Therefore, their individual claims are not brought here, and are being separately filed in the American Arbitration Association.


## PARTIES

14.   Relator, Luis Santiago, Sr. ("Santiago, Sr."), is a technician for the Defendants.  As part of his employment, he works on prevailing wage and non-prevailing wage jobs.

15.   Relator, John Peck ("Peck"), is a technician for the Defendants.   As part of his employment, he works on prevailing wage and non-prevailing wage jobs.

16.   Plaintiff and Relator, Luis Santiago, Jr. ("Santiago, Jr."), is a technician for the Defendants.  As part of his employment, he works on prevailing wage and non-prevailing wage jobs.  In addition, on numerous dates, he worked in excess of 40 hours in a workweek without being paid his overtime as required by law.

17.   Plaintiff and Relator, John Honsberger, Sr. ("Honsberger"), is a technician for the Defendants.  As part of his employment, he works on prevailing wage and non-prevailing wage jobs.  In addition, on numerous dates, he worked in excess of 40 hours in a workweek without being paid his overtime as required by law.

18.   Defendant Haig's Service Corporation d/b/a Haig Service Corporation ("Haig Service Corp.") is a privately held company, incorporated in, and pursuant to the laws of, the State of

New Jersey, with its principal headquarters located at 211A US Hwy 22 East, Green Brook, New Jersey 08812.

19.   Defendant Richard D. Haig, Jr. ("Haig, Jr.") is a private citizen and is the owner, President and Chief Executive Officer of Defendant Haig Service Corp.  He resides at or is otherwise servable at 11 Presidents Drive, Bridgewater, New Jersey 08807.

20.   Defendant Christopher Bernard ("Bernard") is a private citizen and is the Vice President of Defendant Haig Service Corp.  He is servable at 211A US Hwy 22 East, Green Brook, New Jersey 08812.

## FACTUAL BACKGROUND

21.   At all relevant times, Defendant Haig's Service Corp. operated and continues to operate a fire and security/burglar alarm corporation which supplies the following services to their customers:

        a.  Integrated Building Systems;

        b.  Fire/Life Safety Systems;

        c.  Video Detection/CCTV Systems;

        d.  Intrusion Alarm Systems;

        e.  Central Station Monitoring;

        f.  Access Control Systems;

        g.  IP-Based Systems;

        h.  Secure Date Management;

        i.  Web Services; and

        j.  The related Service and Maintenance for these services.

22.   A copy of Defendant Haig Service Corp.'s website stating the services that they provide is attached hereto as Exhibit A.

23.   Plaintiffs/Relators are all technicians for the Defendants and paid an hourly wage, some pursuant to oral agreement, while others work with a written signed, contract.

24.   The work provided by the Plaintiffs/Relators requires significant skills and knowledge of the systems serviced by Haig Service Corp.

25.   Plaintiffs/Relators have not invested any capital into Haig Services Corp., nor do their duties include managerial responsibilities or the exercise of independent managerial judgment.

26.   Rather, Plaintiffs/Relators are sent out on installation, maintenance or service calls on behalf of the Defendants and instructed to perform certain tasks on the Defendants' behalf.

27.   Relators, Luis Santiago, Sr. and John Peck, were provided with a compensation program as part of their employment with Haig Service Corp.

28.   Pursuant to the compensation program under which Santiago, Sr. and Peck were employed, they are paid a minimum wage, initially $7.15 per hour, and advanced additional amounts based upon anticipated work on prevailing wage jobs. The amounts are to be reconciled quarterly, as set forth in the Compensation Program at Paragraph B:

> B.   Estimated Prevailing Wage Draw & Reconciliation
>
> *Some* of the work you perform for *some* of the Company's customers (e.g. some public entities, such as schools) is subject to a higher wage rate – or *prevailing wage* – as mandated by State law. To avoid the extraordinary time and expense that would be required to review service tickets each pay period to determine the amount of your time spent on prevailing wage work, the Company provides each of its technicians, in advance, with an *estimated prevailing wage draw*. The *estimated prevailing wage draw* is calculated by multiplying the number of hours of prevailing wage work the Company anticipates (based on historical dates) you will bill in the quarter times the incremental wages you would earn for such work. Incremental wages are determined by subtracting from the applicable prevailing wage rate amounts paid to you in hourly

wages, as well as allowable deductions for fringe benefits you receive, such as but not limited to paid sick and vacation time, holidays, etc. Thus, if the Company anticipates you will bill thirty (30) hours of prevailing wage work in the first quarter, and the incremental wages due to you equal $20.00 per hour, your total draw for that quarter would be $6,000, less taxes and applicable deductions. This amount would be paid in equal increments throughout that quarter.

**The Company will reconcile its prevailing wage draw program at the end of every quarter.** If you have performed more prevailing wage work than estimated, you will be paid in incremental wages due for prevailing wage hours billed. If you have worked less prevailing wage work than estimated, you are not required to return the difference. This amount will, however, be applied towards prevailing wage hours billed in subsequent quarters within the same calendar year. If appropriate, your draw amount may be raised in future pay periods to better reflect the number of prevailing wage hours likely to be billed. It is the Company's intention to manage the draw program in such a way as to minimize draw payments at the end of a quarter. (bold added.)

29. A copy of the Compensation Program is attached hereto as Exhibit B.

30. Plaintiffs/Relators Santiago, Jr. and Honsberger have not signed an employment agreement and therefore are not subject to the compensation adjustment program set forth in ¶ 28 above.

31. The majority of work performed by the Plaintiffs/Relators during any given year is on prevailing wage jobs, including many on public schools throughout the State.

32. Notwithstanding this language as set forth in ¶ 28 above, Haig Service Corp. never reconciles the promised reconciliation along with the additional wages due to or from the Plaintiffs/Relators.

33. Rather, the Plaintiffs/Relators are paid a set salary which never changes, except for minor, occasional adjustments for some overtime work which are not ordinarily paid at the time and a half as required pursuant to the FLSA and NJWPL. As examples: Relator Peck is paid a

gross salary of $1,884.62 per pay period; Plaintiff/Relator Santiago, Jr. is paid $15.00 per hour and when he works overtime, it is most often paid at a flat rate, not time and a half; and Plaintiff/Relator Honsberger is paid $21.50 per hour, occasionally is paid overtime, but during most pay periods is paid a net salary of $1,331.67 per pay period. These amounts paid do not vary after each quarter, as it should, if a reconciliation of the wages due to prevailing wage rates is undertaken.

34.   Plaintiffs/Relators brought the failure to pay prevailing wages and underpayment of overtime directly to Defendant Haig, Jr. who told them that he will look into it.

35.   Despite the request to review the underpayments and the promise he made to investigate it, Defendant Haig, Jr. never provided a substantive response to Plaintiffs/Relators about the prevailing wages or overtime pay due to them.

36.   Notwithstanding the representation of Haig, Jr. that he will investigate the failure to account for the prevailing wages not being paid, no reconciliation of the prevailing wage draw and no additional payment due was ever provided to Plaintiffs/Relators.

### The Contracts For Prevailing Wage Jobs

37.   Haig Service Corp. provides services to many public entities in New Jersey that receive State Funds as defined in the NJFCA, including, but not limited to, the following, each of which is typical of the manner in which Haig Service Corp. perpetrated the scheme to defraud the State of New Jersey by failing to pay prevailing wage to its employees:

A.   Burlington County Freeholder's Office.

38.  On or about March 30, 2010, Defendants signed an agreement with the County of Burlington Freeholder's Office to provide services to their Human Services Building and associated labor.

39.  A copy of the Agreement with the County of Burlington Freeholder's Office is attached hereto as Exhibit C.

40.  The agreement, Exhibit C, required that prevailing wages be paid to Plaintiffs/Relators at a rate of $80.00/hour.

41.  Haig Service Corp. employees who worked on this job did not receive all of their prevailing wages from this contract with the County of Burlington Freeholder's Office.

42.  There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages from the County of Burlington Freeholder's Office

43.  No reconciliation of the payment of prevailing wages for this job was ever provided to the Haig employees who performed work on it for Haig Service Corp.


B.   Carteret Board of Education

44.  On June 30, 2010, the Carteret Board of Education hired Defendants to provide the "Replacement of the Fire Alarm System at Carteret Middle School."

45.  A copy of the Carteret Board of Education agreement to hire Defendants is attached hereto as Exhibit D.

46.  As part of the bid proposal, Defendants agreed that they would pay its employees who performed work on this job prevailing wage.

47. A copy of Defendants' bid for the Carteret Board of Education job is attached hereto as Exhibit E.

48. Defendants certified to the State of New Jersey that they were paying their employees prevailing wages for work at the Carteret Board of Education.

49. Copies of certifications to the State of New Jersey falsely certifying that Defendants were paying prevailing wages to Employees of the Defendants is attached hereto as Exhibit F.

50. These false Certifications are signed by Defendant Haig, Jr.

51. There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages from this job for the Cartaret Board of Education provided to Haig employees who performed work on this job.

C.    Montclair Township Board of Education:

52. On May 3, 2011, Defendants entered into a contact with the Montclair Township Board of Education to perform services.

53. A copy of the contact with the Montclair Township Board of Education is attached hereto as Exhibit G.

54. Pursuant to Article 13 of the contract with the Montclair Township Board of Education, Defendants agreed to pay prevailing wages.

55. Defendants certified to the State of New Jersey that they were paying their employees prevailing wages.

56. Copies of certifications to the State of New Jersey indicating that Defendants were paying prevailing wages to its employees who worked on this job are attached hereto as Exhibit H.

57.   The certifications are signed by Defendant Bernard.

58.   Haig Service Corp. employees did not receive all of their prevailing wages from this job for the Montclair Township Board of Education.

59.   There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages provided to Haig Service Corp. employees who performed work on this job for the Montclair Township Board of Education.


D.   Plainfield Board of Education:

60.   On February 15, 2010, Defendants bid, and eventually were awarded a contract to provide their services to the Plainfield Board of Education.

61.   A copy of the Bid cover sheet for the bid with the Plainfield Board of Education is attached hereto as Exhibit I.

62.   As part of the agreement with the Plainfield Board of Education, Defendants agreed to pay prevailing wages to their employees, such as Plaintiffs/Relators.

63.   Defendants certified to the State of New Jersey that they were paying their employees prevailing wages.

64.   Copies of certifications to the State of New Jersey indicating that Defendants were paying prevailing wages to its employees are attached hereto as Exhibit J.

65.   The certifications are signed by Defendants Haig, Jr. and Bernard.

66.   Haig Service Corp. employees did not receive all of their prevailing wages from this job for the Plainfield Board of Education.

67. There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages from this job for the Plainfield Board of Education provided to Haig employees who performed work on this job.

E.    Other Contracts where Prevailing Wages were not paid:

68. In addition to the aforesaid municipalities where Defendants had contracts to provide services and agreed to pay prevailing wages, there have been numerous other public contracts which Defendants entered into in which Defendants agreed to provide services and pay their employees at a prevailing wage. These include, but are not limited to:

a.   The Woodbridge, New Jersey Board of Education;

b.   The New Jersey Transit, Newark;

c.   The Pleasantville, New Jersey public schools;

d.   The Old Bridge, New Jersey Board of Education;

e.   The South Brunswick, New Jersey public schools;

f.   The Paterson, New Jersey Public Schools;

g.   The Township of Middletown, New Jersey public schools;

h.   The Morris County building containing the New Jersey Courts;

i.   The Burlington County building containing the New Jersey Courts; and

j.   The Jersey City, New Jersey Housing Authority.

69. Attached hereto as Exhibit K are copies of various contracts, bid proposals, and other associated documents which evidence that Defendants entered into agreements with these public entities whereby they would be required to pay prevailing wages.

70.   Haig Service Corp. employees did not receive all of their prevailing wages from these jobs.

71.   . There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages for these jobs provided to Haig employees who performed work on them.

72.   A more complete list of contracts and submissions falsely certifying that Haig Service Corp. paid its employees prevailing wages are contained on the internal computer network maintained by Haig Service Corp. to which Haig employees are provided limited access.

73.   Defendants place numerous bids for work with governmental entities that receive State funds on the website "Educational Data Services" which has a URL of http:// www.ed-data.com/.  Additional bids where the Defendants promised and/or contracted that they would provide prevailing wages, but failed to do so, can be found on this website.

74.   Defendants utilize a software program called "Sedona" which allows its employees, including Plaintiffs/Relators, to enter their time and ascertain how much is spent on prevailing wage jobs and non-prevailing wage jobs.

### COUNT ONE
### (Violations of the NJFCA)
### (All Relators against All Defendants)

75.   Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 74 of this Complaint.

76.   This is a claim for treble damages and forfeitures, interest and counsel fees under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.*

77.   Through the acts described above, Defendants and their agents and employees knowingly:

a. Presented and caused to be presented fraudulent claims, records, and statements certifying payment of prevailing wages on multiple public jobs for public entities that received funds from the State of New Jersey; and

b. Failed to pay Plaintiffs/Relators prevailing wages for all hours worked pursuant to contracts with government entities requiring payment of prevailing wages

78. Through the acts described above and otherwise, Defendants and their agents and employees knowingly:

a. Made, used, or caused to be made or used false records and statements in order to get such false and fraudulent claims paid and approved by the State of New Jersey, County or municipal entities who are recipients of State Funds as defined in the NJFCA;

b. Made, used, and caused to be made or used false records and statements to conceal, avoid, and/or decrease Defendants' obligation to the Plaintiffs/Relators.

79. Defendants failed to disclose to the Government material facts – i.e., facts that had a natural tendency to influence or were capable of influencing the decision of government officials whether to pay the submitted claims, that if disclosed would have resulted in substantial repayments by them to government entities as a result of the failure to pay prevailing wages.

80. The State of New Jersey and the various other government entities were unaware of the falsity of the records, statements, and claims made or submitted by Defendants and their agents, and employees paid and continued to pay Defendants for claims that would not have been paid if the truth were known.

81.   The State of New Jersey and the other governmental entities and their agents were unaware of Defendants' failure to disclose material facts that would have reduced government obligations, and they would not have not recovered funds but for Plaintiffs/Relators' disclosures.

82.   By reason of the Defendants' false records, statements, claims, and omissions and the failure to make timely payments of the prevailing wages to the Plaintiffs/Relators, the State of New Jersey and the other government entities to which Haig Service Corp. provided services and false certifications have been damaged.

**WHEREFORE,** Plaintiffs/Relators pray for judgment against Defendants as follows:

a.   That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of New Jersey and other governmental entities have sustained as a result of Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each violation of N.J.S.A. 2A:32C-1 *et seq.*;

b.   That Plaintiffs/Relators be awarded the maximum amount allowed pursuant to N.J.S.A. 32C-3;

c.   That Plaintiffs/Relators be awarded all costs and expenses of this action, including attorneys' fees; and

d.   That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

<div align="center">

### COUNT TWO
**(Failure to Pay the Prevailing Wage)**
**(Plaintiffs Santiago, Jr. and Honsberger against All Defendants)**

</div>

83.   Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 82 of this Complaint.

84.   N.J.S.A. 34:11-56.40 concerning Wages on Public Work provides, in pertinent part, that "if any workman is paid less than the prevailing wage to which such workman is entitled under the provisions of this act, such workman may recover in a civil action the full amount of

such prevailing wage less any amount actually paid to him or her by the employer, together with costs and such reasonable attorneys' fees. . ."

85.   The Defendants willfully paid the Plaintiffs/Relators less than the prevailing wages and supplemental benefits to which Plaintiffs/Relators were entitled for the labor that they furnished to the Defendants.

86.   As set forth above, rather than pay the prevailing wages, Defendants concocted a system to falsely certify that such payments were being made in order to deprive Plaintiffs/Relators of their prevailing wages and failed to reconcile and pay the prevailing wages in a timely manner.

87.   Defendants continue to fail to pay the prevailing wages to the Plaintiffs/Relators.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.   An award of unpaid prevailing wages due under the Prevailing Wage Law;

b.   An award of prejudgment and post judgment interest;

c.   An award of reasonable attorney's fees and costs of suit;

d.   That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT THREE
### (Violations of the FLSA)
### (Plaintiffs Santiago, Jr. and Honsberger against All Defendants)

88.   Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 87 of this Complaint.

89.   At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

90. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs/Relators within the meaning of the FLSA.

91. Upon information and belief, at all relevant times, Defendants have had annual gross revenue in excess of $500,000.00.

92. At all relevant times, the Defendants had a policy and practice of failing to pay overtime compensation to its technicians for their hours worked in excess of forty hours per workweek.

93. As a result of the Defendants' willful failure to compensate its employees, including the Plaintiffs/Relators, at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, the Defendants have violated, and continue to violate, the FLSA, including 29 U.S.C. §§ 207(a)(1) and 215(a).

94. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a)

95. Due to the Defendants' FLSA violations, the Plaintiffs/Relators are entitled to recover from the Defendants their unpaid overtime compensation, an additional amount equal as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorney's fees, and costs of suit pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff/Relators pray for judgment against Defendants as follows:

a. An award of unpaid overtime compensation due under the FLSA;

b. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

c. An award of prejudgment and post judgment interest;

d. An award of reasonable attorney's fees and costs of suit;

e.  That the State of New Jersey and other governmental entities and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT FOUR
### (Violations of the NJWPL)
### (Plaintiffs Santiago, Jr. and Honsberger against All Defendants)

96.  Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 95 of this Complaint.

97.  At all relevant times, Plaintiffs/Relators were employed by the Defendants within the meaning of the NJWPL.

98.  Defendant willfully violated Plaintiffs/Relators' rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

99.  Due to the Defendants' NJWPL violations, Plaintiffs/Relators are entitled to recover from the Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs of suit pursuant to the NJWPL.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.  An award of unpaid overtime compensation due under the NJWPL;

b.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to NJWPL;

c.  An award of prejudgment and post judgment interest;

d.  An award of reasonable attorney's fees and costs of suit;

e.  That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT FIVE
### (Unjust Enrichment)
### (All Relators and All Plaintiffs against All Defendants)

100. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 99 of this Complaint.

101. Defendants received remuneration from the State of New Jersey or other government entities which receive funds from the State of New Jersey which included funds that should have been paid to the Plaintiffs/Relators as prevailing wages.

102. Instead of paying the prevailing wages, Defendants kept the monies which should have been paid to the Plaintiffs/Relators.

103. The retention by Defendants of that monetary benefit without paying prevailing wages to Plaintiffs/Relators is unjust.

104. In addition, Defendants failed to pay the overtime to Plaintiffs/Relators at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek in violation of the FLSA and NJWPL.

105. Defendants should be caused to divest all unjustly and illegally gained funds which should have been paid to the Plaintiffs/Relators.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a. An award of actual and consequential damages in an amount to be determined at trial; and

b. That the State of New Jersey and other governmental entities that are recipients of state funds and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT SIX
### (Breach of Fiduciary Duty)
### (All Relators and All Plaintiffs against All Defendants)

106. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 105 of this Complaint.

107. New Jersey law imposes a trust on all monies paid to contractors, pursuant to public works contracts, for the benefit of workers and materialmen who provide labor and materials on such public work projects cover within the public works contracts.

108. Consequently, Defendants, both individually and jointly, have a fiduciary responsibility to Plaintiffs/Relators to ensure the payment of prevailing wages.

109. The Defendants have diverted the monies received from the State of New Jersey, or other governmental entities, pursuant to the public works contracts, and allocated such funds for improper purposes or purposes other than the payment of prevailing wages due to the Plaintiffs.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a. An award unpaid prevailing wages due under the Prevailing Wage Law;

b. An award of prejudgment and postjudgment interest;

c. An award of reasonable attorney's fees and costs of suit;

d. That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT SEVEN
### (Constructive Trust)
### (All Relators and All Plaintiffs against All Defendants)

110. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 109 of this Complaint.

111.  Defendants have committed numerous wrongful acts against the Plaintiffs/Relators and the State of New Jersey, including fraud by failing to pay prevailing wages after certifying that they are paying same, and resulting in the transfer of property for the benefit of the Defendants.

112.  Those wrongful acts have resulted in an unjust enrichment to Defendants.

113.  Such wrongdoing by the Defendants resulted in significant injury to the Plaintiffs/Relators and the State of New Jersey.

114.  By reason of aforesaid acts and conduct, a constructive trust should be imposed on all real property and/or personal/corporate property owned by the Defendants.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.  The imposition of a constructive trust on all real property and/or personal/corporate property owned by the Defendants; and

b.  That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## DEMAND PURSUANT TO R. 1:5-1(a) and R. 4:17-4(c)

Plaintiffs/Relators demands that each party serving pleadings and discovery and receiving answers thereto, serve copies of all such pleadings and discovery received from any party upon the undersigned attorney, and take notice that this is a continuing demand.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised the Henry F. Furst, Esq. is hereby designated as trial counsel on behalf of the Plaintiffs/Relators.

## CERTIFICATION PURSUANT TO R. 4:5-1

Henry F. Furst, Esq., of the Law Office of Henry F. Furst, attorneys for Plaintiffs/Relators, certifies that at this time, upon information and belief, this matter in

-21-

controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated at this time.

### CERTIFICATION OF COMPLIANCE R. 1:38-7(c).

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

HENRY F. FURST, ESQ.
LAW OFFICE OF HENRY F. FURST
Attorney for Plaintiffs/Relators

By: _____
Henry F. Furst

Dated: September ____, 2011

**LITTLER MENDELSON**
A Professional Corporation
One Newark Center - 8th Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendants
    Haig Service Corporation,
    Richard D. Haig, Jr. and Christopher Bernard

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR., LUIS SANTIAGO, JR. (individually), and JOHN HONSBERGER, SR. (individually),<br><br>                         Plaintiffs,<br><br>vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION, RICHARD D. HAIG, JR. and CHRISTOPHER BERNARD,<br><br>                         Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY<br><br>DOCKET NO. HUD-L-4958-11<br><br>**ANSWER AND AFFIRMATIVE DEFENSES**<br><br> |

Defendants Haig Service Corporation ("Haig"), Richard D. Haig, Jr. ("Haig, Jr.") and

Christopher Bernard ("Bernard") (collectively "Defendants"), by and through their attorneys,

Littler Mendelson P.C., hereby answer the Complaint of Plaintiffs Luis Santiago, Sr. ("Santiago,

Sr."), Luis Santiago, Jr. ("Santiago, Jr."), John Peck ("Peck"), and John Honsberger, Sr.

("Honsberger, Sr.") (collectively, "Plaintiffs") as follows:

## AS TO INTRODUCTION

1.      Defendants admit that Plaintiffs have filed a civil action in which they seek

damages, and have asserted purported claims under the New Jersey False Claims Act ("NJFCA").

Defendants deny that there is any validity to Plaintiffs' NJFCA claims or that they are entitled to

any damages or other relief.  Defendants deny the remaining allegations set forth in paragraph 1 of the Complaint.

2.      Defendants admit that Plaintiffs have asserted purported claims under the NJFCA. Defendants deny that there is any validity to Plaintiff's NJFCA claims.  Defendants deny the remaining allegations set forth in paragraph 2 of the Complaint.

3.      Defendants admit that the NJFCA is the state counterpart to the federal False Claims Act.  Further answering, Defendants state the NJFCA speaks for itself.

4.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 4 of the Complaint and, therefore, deny them.

5.      Except to admit that Defendant Haig was required to pay Plaintiffs and other employees prevailing wages on public works projects as defined by state law and when statutorily required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 5 of the Complaint and, therefore, deny them.

6.      Except to admit that Defendant Haig certified that it paid Plaintiffs and other employees prevailing wages on public works projects as defined by state law and when statutorily required, Defendants deny the allegations set forth in paragraph 6 of the Complaint.

7.      Defendants deny the allegations set forth in paragraph 7 of the Complaint.

8.      Defendants admit that Plaintiffs have filed a civil action in which they seek damages, and have asserted purported claims under the NJFCA.  Defendants deny that there is any validity to Plaintiffs' NJFCA claims or that they are entitled to any damages or other relief.

9.      Defendants admit that certain of the Plaintiffs have asserted purported individual claims under the New Jersey Prevailing Wage Act ("NJPWA").  Defendants deny that there is any validity to Plaintiffs' claims or that they are entitled to any damages or other relief.

2

10.     Defendants admit that Plaintiffs have asserted purported claims under the federal Fair Labor Standards Act ("FLSA") and the New Jersey Wage Payment Law ("NJWPL"). Defendants deny that there is any validity to Plaintiffs' FLSA and/or NJWPL claims, or that they are entitled to any damages or other relief.

11.     Defendants deny the allegations set forth in paragraph 11 of the Complaint.

12.     Defendants deny the allegations set forth in paragraph 12 of the Complaint.

13.     Except to admit that Santiago, Sr. and Peck signed employment agreements each containing an arbitration cause, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 13 of the Complaint and, therefore, deny them.

## AS TO PARTIES

14.     Except to admit that Santiago, Sr. formerly worked as a technician for Defendant Haig, performing work on prevailing wage and non-prevailing wage jobs, Defendants deny the allegations set forth in paragraph 14 of the Complaint.

15.     Except to admit that Peck formerly worked as a technician for Defendant Haig, performing work on prevailing wage and non-prevailing wage jobs, Defendants deny the allegations set forth in paragraph 15 of the Complaint.

16.     Except to admit that Santiago, Jr. works as a technician for Defendant Haig, performing work on prevailing wage and non-prevailing wage jobs, Defendants deny the allegations set forth in paragraph 16 of the Complaint.

17.     Except to admit that Honsberger, Sr. works as a technician for Haig, performing work on prevailing wage and non-prevailing wage jobs, Defendants deny the allegations set forth in paragraph 17 of the Complaint.

18.     Defendants admit the allegations set forth in paragraph 18 of the Complaint.

19.     Defendants admit the allegations set forth in paragraph 19 of the Complaint.

20.     Except to admit that Bernard is a private citizen and is the Interim Vice President, Business Optimization & Information Technology of Defendant Haig, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 20 of the Complaint and, therefore, deny them.

## AS TO FACTUAL BACKGROUND

21.     Defendants admit the allegations set forth in paragraph 21 of the Complaint.

22.     Defendants admit that Plaintiffs have attached as Exhibit A to their Complaint a printed page from Haig's website, and that said Exhibit A speaks for itself.

23.     Defendants admit the allegations set forth in paragraph 23 of the Complaint, except deny that Plaintiffs Santiago, Sr. and Peck are employed by Haig as technicians.

24.     Defendants admit the allegations set forth in paragraph 24 of the Complaint.

25.     Except to admit that knowledge of the systems serviced by Defendant Haig is required of the technician position, Defendants deny the allegations set forth in paragraph 25 of the Complaint.

26.     Defendants deny the allegations set forth in paragraph 26 of the Complaint.

27.     Defendants admit the allegations set forth in paragraph 27 of the Complaint.

28.     Defendants state that the "Compensation Program" referenced in paragraph 28 of the Complaint speaks for itself.  Further answering, Defendants deny any mischaracterization of the Compensation Program.

29.     Defendants admit that Plaintiffs have attached as Exhibit B to their Complaint documents titled "Compensation Program," "Agreement Between Haig Service Corporation & John Peck for Payment/Repayment," "Binding Arbitration Policy Acknowledgement Form," and that said Exhibit B speaks for itself.

30.     Defendants deny the allegations set forth in paragraph 30 of the Complaint.

31.     Defendants deny the allegations set forth in paragraph 31 of the Complaint.

32.     Defendants deny the allegations set forth in paragraph 32 of the Complaint.

33.     Defendants deny the allegations set forth in paragraph 33 of the Complaint.

34.     Defendants deny the allegations set forth in paragraph 34 of the Complaint.

35.     Defendants deny the allegations set forth in paragraph 35 of the Complaint.

36.     Defendants deny the allegations set forth in paragraph 36 of the Complaint.

## AS TO THE CONTRACTS FOR PREVAILING WAGE JOBS

37.     Except to admit that Haig provides services to public entities in New Jersey that receive State Funds, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 37 of the Complaint and, therefore, deny them.

38.     Defendants admit the allegations set forth in paragraph 38 of the Complaint.

39.     Defendants admit that Plaintiffs have attached as Exhibit C to their Complaint a Purchase Order/Voucher for the Burlington Country Freeholders Office, and that said Exhibit C speaks for itself.

40.     Defendants state that Exhibit C speaks for itself.  Further answering, Defendants deny any mischaracterization of Exhibit C.

41.     Defendants deny the allegations set forth in paragraph 41 of the Complaint.

42.     Defendants deny the allegations set forth in paragraph 42 of the Complaint.

43.     Defendants deny the allegations set forth in paragraph 43 of the Complaint.

44.     Defendants admit the allegations set forth in paragraph 44 of the Complaint.

45.     Defendants admit that Plaintiffs have attached as Exhibit D to their Complaint a Purchase Order for the Carteret Board of Education, and that said Exhibit D speaks for itself.

46.     Except to admit that Defendant Haig agreed to pay employees prevailing wages on public works projects as defined by state law and when statutorily required, Defendants deny the allegations set forth in paragraph 46 of the Complaint.

47.     Defendants admit that Plaintiffs have attached as Exhibit E to their Complaint a Bid Proposal Form and Bidders Checklist for the Carteret Board of Education, and that said Exhibit E speaks for itself.

48.     Except to admit that Defendant Haig certified to paying prevailing wages on public works projects as defined by state law and when statutorily required, Defendants deny the allegations set forth in paragraph 48 of the Complaint.

49.     Except to admit that Plaintiffs have attached as Exhibit F to their Complaint New Jersey Department of Labor and Workforce Development Payroll Certification forms for the Carteret Board of Education Project, and that said Exhibit F speaks for itself, Defendants deny the allegations set forth in paragraph 49 of the Complaint.

50.     Except to state that Exhibit F speaks for itself, Defendants deny the allegations set forth in paragraph 50 of the Complaint.

51.     Defendants deny the allegations set forth in paragraph 51 of the Complaint.

52.     Defendants admit the allegations set forth in paragraph 52 of the Complaint.

53.     Defendants admit that Plaintiffs have attached as Exhibit G to their Complaint an Agreement between the Montclair Township Board of Education and Haig Service Corporation, and that said Exhibit G speaks for itself.

54.     Defendants state that Exhibit G speaks for itself.  Further answering, Defendants deny any mischaracterization of Exhibit G.

6

55.    Except to admit that Defendant Haig certified to paying prevailing wages on public works projects as defined by state law and when statutorily required, Defendants deny the allegations set forth in paragraph 55 of the Complaint.

56.    Defendants admit that plaintiffs have attached as Exhibit H to their Complaint Payroll Certifications for the Montclair Board of Education Project, and that said Exhibit H speaks for itself.

57.    Defendants state that Exhibit H speaks for itself.  Further answering, Defendants deny any mischaracterization of Exhibit H.

58.    Defendants deny the allegations set forth in paragraph 58 of the Complaint.

59.    Defendants deny the allegations set forth in paragraph 59 of the Complaint.

60.    Defendants admit the allegations set forth in paragraph 60 of the Complaint.

61.    Defendants admit that Plaintiffs have attached as Exhibit I to their Complaint a Form of Bid, dated February 15, 2010, for the Plainfield Board of Education, and that said Exhibit I speaks for itself.

62.    Except to admit that Defendant Haig agreed to pay prevailing wages on public works projects as defined by state law and when statutorily required, Defendants deny the allegations set forth in paragraph 62 of the Complaint.

63.    Except to admit that Defendant Haig certified to paying prevailing wages on public works projects as defined by state law and when statutorily required, Defendants deny the allegations set forth in paragraph 63 of the Complaint.

64.    Defendants admit that Plaintiffs have attached as Exhibit J to their Complaint Payroll Certifications for the Plainfield Board of Education Project, and that said Exhibit J speaks for itself.

65.    Defendants state that Exhibit J speaks for itself.  Furthering answering, Defendants deny any mischaracterization of Exhibit J.

66.    Defendants deny the allegations set forth in paragraph 66 of the Complaint.

67.    Defendants deny the allegations set forth in paragraph 67 of the Complaint.

68.    Except to admit that Defendant Haig has entered into certain contracts to provide services and has agreed to pay prevailing wages on public works projects as defined by state law and when statutorily required, Defendants deny the allegations set forth in paragraph 68 of the Complaint.

69.    Defendants admit that Plaintiffs have attached as Exhibit K to their Complaint copies of various contracts, bid proposals and other documents, and that said Exhibit K speaks for itself.

70.    Defendants deny the allegations set forth in paragraph 70 of the Complaint.

71.    Defendants deny the allegations set forth in paragraph 71 of the Complaint.

72.    Except to admit that Defendant Haig maintains an internal computer system to which employees have limited access, Defendants deny the allegations set forth in paragraph 72 of the Complaint.

73.    Except to admit that Defendant Haig is registered as a vendor with Educational Data Services, Inc. ("Ed-Data") and submits bids for public works contracts with public bodies via Ed-Data's online requisition system, Defendants deny the allegations set forth in paragraph 73 of the Complaint.

74.    Except to admit that Defendants utilize a Sedona software program, Defendants deny the allegations set forth in paragraph 74 of the Complaint.

## AS TO COUNT ONE

75.     Defendants repeat and reallege their responses to paragraphs 1 through 74 of the Complaint as if set forth at length herein.

76.     Defendants admit that Plaintiffs have filed a civil action in which they seek damages, and have asserted purported claims under the NJFCA.  Defendants deny that there is any validity to Plaintiffs' NJFCA claims or that they are entitled to any damages or other relief.

77.     Defendants deny the allegations set forth in paragraph 77 of the Complaint.

77(a).  Defendants deny the allegations set forth in paragraph 77(a) of the Complaint.

77(b).  Defendants deny the allegations set forth in paragraph 77(b) of the Complaint.

78.     Defendants deny the allegations set forth in paragraph 78 of the Complaint.

78(a).  Defendants deny the allegations set forth in paragraph 78(a) of the Complaint.

78(b).  Defendants deny the allegations set forth in paragraph 78(b) of the Complaint.

79.     Defendants deny the allegations set forth in paragraph 79 of the Complaint.

80.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 of the Complaint and, therefore, deny them.

81.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81 of the Complaint and, therefore, deny them.

82.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82 of the Complaint and, therefore, deny them

Plaintiffs' unnumbered prayer for relief following paragraph 82 contains no allegations to which Defendants are required to respond, but to the extent that they may, Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever.

## AS TO COUNT TWO

83.     Defendants repeat and reallege their responses to paragraphs 1 through 82 of the Complaint as if set forth at length herein.

84.     Defendants state that the statute enumerated in paragraph 84 of the Complaint speaks for itself and, therefore, deny any mischaracterization of its content.  Further answering, Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever under the NJPWA.

85.     Defendants deny the allegations set forth in paragraph 85 of the Complaint.

86.     Defendants deny the allegations set forth in paragraph 86 of the Complaint.

87.     Defendants deny the allegations set forth in paragraph 87 of the Complaint.

Plaintiffs' unnumbered prayer for relief following paragraph 87 contains no allegations to which Defendants are required to respond, but to the extent that they may, Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever.

## AS TO COUNT THREE

88.     Defendants repeat and reallege their responses to paragraphs 1 through 87 of the Complaint as if set forth at length herein.

89.     The allegations set forth in paragraph 89 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

90.     The allegations set forth in paragraph 90 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

91.     Defendants deny the allegations set forth in paragraph 91 of the Complaint.

92.     Defendants deny the allegations set forth in paragraph 92 of the Complaint.

93.     The allegations set forth in paragraph 93 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

94.     The allegations set forth in paragraph 94 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

95.     The allegations set forth in paragraph 95 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

Plaintiffs' unnumbered prayer for relief following paragraph 95 contains no allegations to which Defendants are required to respond, but to the extent that they may, Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever.

## AS TO COUNT FOUR

96.     Defendants repeat and reallege their responses to paragraphs 1 through 95 of the Complaint as if set forth at length herein.

97.     The allegations set forth in paragraph 97 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

98.     The allegations set forth in paragraph 98 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

99.     The allegations set forth in paragraph 99 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

Plaintiffs' unnumbered prayer for relief following paragraph 99 contains no allegations to which Defendants are required to respond, but to the extent that they may, Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever.

## AS TO COUNT FIVE

100.    Defendants repeat and reallege their responses to paragraphs 1 through 99 of the Complaint as if set forth at length herein.

101.    Except to admit that Defendants received remuneration for services rendered pursuant to public works contracts with public bodies, Defendants deny the allegations set forth in paragraph 101 of the Complaint.

102.    Defendants deny the allegations set forth in paragraph 102 of the Complaint.

103.    The allegations set forth in paragraph 103 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

104.    The allegations set forth in paragraph 104 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

105.    The allegations set forth in paragraph 105 of the Complaint state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations set forth therein.

Plaintiffs' unnumbered prayer for relief following paragraph 105 contains no allegations to which Defendants are required to respond, but to the extent that they may, Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever.

**AS TO COUNT SIX**

106.    Defendants repeat and reallege their responses to paragraphs 1 through 105 of the Complaint as if set forth at length herein.

107.    The allegations set forth in paragraph 107 of the Complaint state a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the allegations set forth therein.

108.    The allegations set forth in paragraph 108 of the Complaint state a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the allegations set forth therein.

109.    Defendants deny the allegations set forth in paragraph 109 of the Complaint.

Plaintiffs' unnumbered prayer for relief following paragraph 109 contains no allegations to which Defendants are required to respond, but to the extent that they may, Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever.

**AS TO COUNT SEVEN**

110.    Defendants repeat and reallege their responses to paragraphs 1 through 109 of the Complaint as if set forth at length herein.

111.    Defendants deny the allegations set forth in paragraph 111 of the Complaint.

112.    The allegations set forth in paragraph 112 of the Complaint state a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the allegations set forth therein.

113.    The allegations set forth in paragraph 113 of the Complaint state a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the allegations set forth therein.

114.    The allegations set forth in paragraph 114 of the Complaint state a legal conclusion to which no response is required.   To the extent a response is required, Defendants deny the allegations set forth therein.

Plaintiffs' unnumbered prayer for relief following paragraph 114 contains no allegations to which Defendants are required to respond, but to the extent that they may, Defendants specifically deny that Plaintiffs are entitled to any relief whatsoever.

WHEREFORE, Defendants demand judgment dismissing the Complaint and granting them their costs of suit, counsel fees, and such other and further relief as the Court may deem just and proper.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of punitive damages or statutory penalties or interest may be granted.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which an award of attorneys' fees may be granted to Plaintiffs.

### FOURTH AFFIRMATIVE DEFENSE

Defendants are entitled to statutory credit toward any overtime compensation sought by Plaintiffs for any overtime payments Defendants have already made during the relevant time period.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred to the extent Plaintiffs did not work more than 40 hours in

14

any given work week and, therefore, they are not entitled to overtime under the New Jersey Wage and Hour Law.

## SIXTH AFFIRMATIVE DEFENSE

Any amounts properly excluded from the calculation of the regular rate of pay pursuant to New Jersey Wage and Hour Law must be excluded from the calculation of any overtime rate of pay which may be found to be due Plaintiffs.

## SEVENTH AFFIRMATIVE DEFENSE

Any monies owed to Plaintiffs have been paid in full and any obligations Defendants may have owed to Plaintiffs have been paid or otherwise satisfied in full.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the applicable statute of limitations and/or by the doctrine of laches.

## NINTH AFFIRMATIVE DEFENSE

The Complaint is barred in whole or in part by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims, or the damages they may recover, are barred or at least reduced by their failure to mitigate damages.

## ELEVENTH AFFIRMATIVE DEFENSE

All or portions of Plaintiffs' claims are barred by the doctrine of avoidable consequences because reasonable steps were taken to prevent and correct allegedly improper wage payments, Plaintiffs unreasonably failed to use the preventative and corrective opportunities provided to them, and the reasonable use of those procedures would have prevented at least some, if not all, of the harm Plaintiffs allegedly suffered.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because at all material times, Defendants acted in a good faith belief that they were in compliance with all applicable statutes, laws, regulations, judicial interpretations and administrative interpretations, practices and policies, and at no time did Defendants pay Plaintiffs in a manner known or believed to violate any applicable statutory or administrative requirement.

## THIRTEENTH AFFIRMATIVE DEFENSE

Any alleged failure by any of the Defendants to perform any obligations resulted from Plaintiffs' failure to perform their employment obligations, which performance by Plaintiffs was a condition precedent to or concurrent with Defendants' performance of their obligations.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are estopped and barred by their own conduct from recovering any relief.

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendants reserve the right to raise any and all other defenses that may become evident during discovery or otherwise.

## DEMAND FOR STATEMENT OF DAMAGES

Pursuant to N.J. Court R. 4:5-2, Defendants demand service, within five (5) days of the date of service hereof, of a Statement of Damages claimed in the Complaint.

## DEMAND FOR PRODUCTION OF DOCUMENTS

Pursuant to N.J. Court R. 4:18-2, Defendants demand that Plaintiffs produce all documents or papers referred to in the Complaint, either directly or by reference, within five (5) days after service hereof.

## DESIGNATION OF TRIAL COUNSEL

Under N.J. Court R. 4:5-1(c), Haig and Richard Haig, Jr. designate Eboneé Hamilton

Lewis, Esq. as trial counsel.

## CERTIFICATION PURSUANT TO RULE 4:5-1

The undersigned hereby certifies that the within matter in controversy is not the subject of any other pending or contemplated court action or arbitration proceeding and knows of no additional parties who should be joined in this action.

## CERTIFICATION PURSUANT TO RULE 4:6-1

The undersigned certifies that a copy of the within Answer and Affirmative Defenses was served within the time permitted by N.J. Court R. 4:6-1.

<div style="margin-left:40%">

**LITTLER MENDELSON, P.C.**
Attorneys for Defendants,
Haig Service Corporation, Richard Haig, Jr.
and Christopher Bernard

By: _____
Eboneé Hamilton Lewis

</div>

Dated: March 5, 2012

17

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a copy of the attached Answer and Affirmative Defenses, Demand for Statement of Damages, Demand for Production of Documents, and Designation of Trial Counsel to be served on Plaintiffs' counsel via Federal Express to Henry Furst, Esq., Law Office of Henry F. Furst, 52 Upper Montclair Plaza, Montclair, New Jersey 07043, and Peter G. Caplan, Esq., 130 Pompton Avenue, Verona, New Jersey 07044.

March 5, 2012

_____
Eboneé Hamilton Lewis

Firmwide:109523340.1 060197.1001

FILED

MAR 06 2012

SUPERIOR COURT NEW JERSEY
COURT HUDSON
CIVIL DIVISION #1

18

**Appendix XII-B1**



## CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA | |
| CHG/CK NO. | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

| ATTORNEY / PRO SE NAME<br>Eboneé Hamilton Lewis, Esq. | TELEPHONE NUMBER<br>(973) 848-4734 | COUNTY OF VENUE<br>Hudson |
|---|---|---|
| FIRM NAME  (if applicable)<br>Littler Mendelson, P.C. | | DOCKET NUMBER (when available)<br>L-4958-11 |
| OFFICE ADDRESS<br>One Newark Center, 8th Floor<br>Newark, New Jersey 07102 | | DOCUMENT TYPE<br>Answer |
| | | JURY DEMAND    ☐ YES    ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Defendants | CAPTION<br>Santiago, et al. v. Haig Service Corp., et al. |
|---|---|
| CASE TYPE NUMBER (See reverse side for listing)<br>620 | IS THIS A PROFESSIONAL MALPRACTICE CASE?          ☐ YES   ■ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW<br>REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ Yes   ■ No | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes   ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY  (if known)<br>■ NONE<br>☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION | | |
|---|---|---|
| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>■ Yes   ☐ No | IF YES, IS THAT RELATIONSHIP:<br>■ EMPLOYER/EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain)<br>☐ FAMILIAL   ☐ BUSINESS | |
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ☐ YES | ☐ No |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR
ACCELERATED DISPOSITION

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes   ■ No | IF YES, PLEASE IDENTIFY THE  REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ Yes   ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be
redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

**Side 2** 

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
151   NAME CHANGE
175   FORFEITURE
302   TENANCY
399   REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502   BOOK ACCOUNT (debt collection matters only)
505   OTHER INSURANCE CLAIM (including declaratory judgment actions)
506   PIP COVERAGE
510   UM or UIM CLAIM (coverage issues only)
511   ACTION ON NEGOTIABLE INSTRUMENT
512   LEMON LAW
801   SUMMARY ACTION
802   OPEN PUBLIC RECORDS ACT (summary action)
999   OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305   CONSTRUCTION
509   EMPLOYMENT (other than CEPA or LAD)
599   CONTRACT/COMMERCIAL TRANSACTION
603N  AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y  AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605   PERSONAL INJURY
610   AUTO NEGLIGENCE – PROPERTY DAMAGE
621   UM or UIM CLAIM (includes bodily injury)
699   TORT – OTHER

**Track III - 450 days' discovery**
005   CIVIL RIGHTS
301   CONDEMNATION
602   ASSAULT AND BATTERY
604   MEDICAL MALPRACTICE
606   PRODUCT LIABILITY
607   PROFESSIONAL MALPRACTICE
608   TOXIC TORT
609   DEFAMATION
616   WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617   INVERSE CONDEMNATION
618   LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156   ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303   MT. LAUREL
508   COMPLEX COMMERCIAL
513   COMPLEX CONSTRUCTION
514   INSURANCE FRAUD
620   FALSE CLAIMS ACT
701   ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**

| | | | |
|---|---|---|---|
| 280 | ZELNORM | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 291 | PELVIC MESH/GYNECARE |
| 288 | PRUDENTIAL TORT LITIGATION | 292 | PELVIC MESH/BARD |
| 289 | REGLAN | 293 | DEPUY ASR HIP IMPLANT LITIGATION |

**Mass Tort (Track IV)**

| | | | |
|---|---|---|---|
| 248 | CIBA GEIGY | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 282 | FOSAMAX |
| 271 | ACCUTANE/ISOTRETINOIN | 284 | NUVARING |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 286 | LEVAQUIN |
| 278 | ZOMETA/AREDIA | 287 | YAZ/YASMIN/OCELLA |
| 279 | GADOLINIUM | 601 | ASBESTOS |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**   ☐ **Putative Class Action**   ☐ **Title 59**

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY
DIVISION OF LAW
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, New Jersey 07102

**FILED**

JAN 31 2012

PETER F. BARISO, JR., P.J.Cv.

BY: Lorena L. Salzmann
Deputy Attorney General
(973) 648-3183

-------------------------------------:
STATE OF NEW JERSEY, ex rel. LUIS  :  SUPERIOR COURT OF NEW
SANTIAGO, SR., LUIS SANTIAGO JR.,   :  JERSEY- LAW DIVISION
JOHN PECK AND JOHN HONSBERGER,      :
SR., LUIS SANTIAGO, JR. (INDIVIDUALLY) :  HUDSON COUNTY
AND JOHN HONSBERGER, SR. (INDIVIDUALLY),: CIVIL ACTION
        Plaintiffs,                 :  DOCKET NO. HUD-L-4958-11
                                    :
    vs.                             :
                                    :
HAIG'S SERVICE CORPORATION (a New   :  **UNSEALING ORDER**
Jersey Corporation) d/b/a HAIG SERVICE :
CORPPORATION; RICHARD D. HAIG, Jr. and :
CHRISTOPHER BERNARD,                :
        Defendants.                 :  (FILED UNDER SEAL OF
                                    :   N.J.S.A. 2A:32C-5)
-------------------------------------:

The State of New Jersey ("New Jersey") through its counsel,

Jeffrey S. Chiesa, Attorney General of New Jersey ("the Attorney

General") (Lorena L. Salzmann, Deputy Attorney General, appearing),

having filed its Notice of Election to Decline Intervention pursuant

to N.J.S.A. 2A:32C-5(g)(2), the Court rules as follows:

IT IS on this _31st_ day of _Jan._____, 2012;

    **ORDERED** that the Complaint, New Jersey's Notice of Election to

Decline Intervention, and this Order be unsealed and served upon the

defendants by the Relator; and it is further

    **ORDERED** that the Clerk of the Court shall administratively

reopen the above action; and it is further

**ORDERED** that the seal be lifted as to all other matters occurring in this action after the date of this Order; and it is further

**ORDERED** that Relator may maintain the instant action in the name of the State of New Jersey; provided, however, that the action may be *voluntarily* dismissed only if ~~the Court and~~ the Attorney General of New Jersey give written consent to the dismissal and their reasons for consenting; and it is further

**ORDERED** that pursuant to N.J.S.A. 2A:32C-6(f), all subsequent pleadings, including supporting memoranda, filed in this action must be served upon the Attorney General; *by Pl's Counsel* and it is further

**ORDERED** that New Jersey may order any deposition transcript or intervene in this action, for good cause, at any time; and it is further

**ORDERED** that all Orders of this Court in this action shall be *served upon* ~~sent to~~ the Attorney General; *by Pl's Counsel* and it is further

**ORDERED** that should either the Relator or the defendants propose that this action be dismissed, settled, or otherwise discontinued, *Pl's Counsel shall solicit* ~~the Court will solicit~~ the written consent of the *any* Attorney General before *by the Court.* ruling ~~or granting its approval.~~

_____
Honorable Peter F. Bariso, P.J.Civ.

HUDSON COUNTY SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY          NJ 07306

COURT TELEPHONE NO. (201) 217-5162
COURT HOURS

DATE:     JANUARY 31, 2012
RE:       STATE OF NEW JERSEY VS HAIG'S SERVICE CORP
DOCKET# HUD L -004958 11

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT. WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:  HON PETER F. BARISO

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM       002
AT: (201) 795-6908.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.

ATTENTION:

ATTORNEY GENERAL
124 HALSEY STREET
PO BOX 45029
NEWARK              NJ 07101

JUABR



HUDSON SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY NJ 07306

TELEPHONE: (201) 217-5163

MARCH 16, 2012

8:30 AM - 4:30 PM        DOCKET: HUD-L-6743-11

PLAINTIFF IS HEREBY ORDERED TO SERVE A COPY OF THIS ORDER ON ALL PARTIES WHO HAVE APPEARED IN THIS CASE WITHIN 7 DAYS OF THE DATE HEREOF, AND UPON ALL SUBSEQUENT APPEARING PARTIES WITHIN 7 DAYS OF THEIR APPEARANCE IN THE CASE.

EBONEE HAMILTON LEWIS
LITTLER MENDELSON PC
ONE NEWARK CENTER
8TH FLOOR
NEWARK NJ 07102



UNITED STATES POSTAGE
$ 00.45⁰
PITNEY BOWES
02 1M
0008002691
MAR 22 2012
MAILED FROM ZIP CODE 07306

HUDSON SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY NJ 07306

TELEPHONE: (201) 217-5163
8:30 AM - 4:30PM

# OFFICIAL LEGAL NOTICE



Please notify
court
of disability
accommodation
needs

RECEIVED
MAR 2 3 2012

EBONEE HAMILTON LEWIS
LITTLER MENDELSON PC
ONE NEWARK CENTER
8TH FLOOR
NEWARK NJ 07102

HUDSON SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY NJ 07306

TELEPHONE: (201) 217-5163
CV0155     8:30 AM - 4:30PM

SORRELL HUD - L -004858 11
STATE OF NEW JERSEY

MARCH 21...

HAIG'S SERVICE ...

A CASE MANAGEMENT CONFERENCE IS SCHEDULED FOR THIS CASE
ON APRIL 18, 2012 AT 9:30AM BEFORE JUDGE MARTHA T ROYSTER.

PLAINTIFF IS HEREBY ORDERED TO SERVE A COPY OF THIS ORDER ON ALL PARTIES WHO
HAVE APPEARED IN THIS CASE WITHIN 7 DAYS OF THE DATE HEREOF, AND UPON ALL
SUBSEQUENT APPEARING PARTIES WITHIN 7 DAYS OF THEIR APPEARANCE IN THE CASE.

PLEASE REPORT TO: COURT ROOM SFLR

... HAMILTON LEWIS
...LER MENDELSON PC
ONE NEWARK CENTER
16TH FLOOR
NEWARK NJ 07102

STATE OF NEW JERSEY, ex rel. LUIS
SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN
PECK AND JOHN HONSBERGER, SR., LOUIS
SANTIAGO, SR. (INDIVIDUALLY) AND JOHN
HONSBERGER, SR. (INDIVIDUALL),

                Plaintiffs,

vs.

HAIG'S SERVICE CORPORATION (a New
Jersey Corporation) d/b/a HAIG SERVICE
CORPORASTION, RICHARD D. HAIG, JR. and
CHRISTOPHER BERNARD,

                Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: HUDSON COUNTY

DOCKET NO. HUD-L-4958-11

**Civil Action**

FILED
TEAM #2

APR 20 2012

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION 911

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS/RELATORS' APPLICATION FOR AN ORDER TO SHOW CAUSE WITH RESTRAINTS

---

LITTLER MENDELSON, P.C.
One Newark Center - 8th Floor
Newark, New Jersey  07102
973.848.4700
Attorneys for Defendants

Ebonee Hamilton Lewis, Esq.
*Of Counsel and on the Brief*

## **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II.  STATEMENT OF FACTS ............................................................................... 2

III.  LEGAL ARGUMENT ..................................................................................... 4

    A. Plaintiffs/Relators Have Not Met The Prerequisites For Injunctive
    Relief .......................................................................................................... 4

       1.  Relators Have Adequate Remedies At Law; Any Loss Of Income
          or Fringe Benefits of Employment Do Not Constitute Irreparable
          Harm .................................................................................................... 5

       2.  The Balance Of Hardships Does Not Favor Relators; Neither
          Courts Nor Juries Are Empowered To Serve As "Super Personnel"
          Departments ........................................................................................ 6

       3.  Plaintiffs/Relators Fail To Meet Their Burden Of Showing Facts
          Entitling Them To Relief; They Are Unlikely To Succeed On The
          Merits Of Their Claims ...................................................................... 9

IV.  CONCLUSION ............................................................................................. 11

## TABLE OF AUTHORITIES

*Coskey's Television & Radio Sales & Serv., Inc. v. Foti,*
   253 N.J. Super. 626, 639  (App. Div. 1992) ........................................................5

*Crowe v. DeGioia,*
   90 N.J. 126 (1982) ...................................................................................4,5,6,9

*Frank's GMC,*
   847 F.2d 100, 102 (3d Cir.1988) ..........................................................................6

*Judice's Sunshine Pontiac, Inc. v. General Motors Corp.,*
   418 F. Supp. 1212, 1219 (D.N.J. 1976) ..............................................................5,6

*McCarthy v. The Home Depot, et al.,*
   Docket No. A-6056-04T26056-04T p. 18 (App. Div. October 30, 2006).......................8

*Pepper v. Princeton Univ.,*
   77 N.J. 55, 87 (1978) ...........................................................................................8

*Sampson v. Murray,*
   415 U.S. 61, 90 (1974) .......................................................................................5,7

*Sautto v. Edenboro,* 84 N.J. Super.
   461, 478 (App. Div.), *certif. denied,* 43 N.J. 353 (1964) ..................................7

*Sherman v. Sherman,*
   330 N.J. Super. 638, 645 (Ch. Div. 1999) ............................................................9

*Smith v. Travelers Mortgage Servs,*
   699 F. Supp. 1080, 1085 (D.N.J. 1988)..................................................................6

*Verna v. Links at Valleybrook Neighborhood Ass'n, Inc.,*
   371 N.J. Super. 77, 89 (App. Div. 2004)................................................................7

*Waste Mgmt. of New Jersey, Inc. v. Union County Utilities Auth.,*
   399 N.J. Super. 508, 528 (App. Div. 2008)............................................................9

## I.    PRELIMINARY STATEMENT

At the outset, Relators' application should be denied for having failed to comply with the procedural and substantive prerequisites for the relief sought in their Order to Show Cause with Temporary Restraints (hereinafter, "Order to Show Cause").  Despite Relators' contention, there is nothing emergent about this application other than its recent filing.  Indeed, this application was filed on April 18, 2012, more than two months after Relators claim the alleged retaliation started.  (Relators' Letter Brief at p. 2)  The delay in seeking a temporary restraining order and injunctive relief in this case cannot be taken lightly.  Delay constitutes relevant evidence that the interim injunctive relief requested is not necessary.  On that basis alone, the Court should deny this application.

Moreover, Relators' Order to Show Cause relies on an incomplete and inaccurate recitation of the facts to attempt to prop up their far-fetched theory that Defendants retaliated against them for the filing of their Complaint.  In the absence of both direct evidence of retaliatory intent and specific and substantial evidence of pretext by Defendants, Relators instead offer bald speculation, apparently hoping that this Court will second-guess the non-retaliatory business decisions made by Defendants.  Notwithstanding Relators' liberties with the facts in an attempt to avoid what the actual facts and applicable case law warrant – a denial of this application -- as is detailed below, the facts do not warrant the restraints requested.

In their application, Relators ask the Court to preliminarily and permanently restrain the Defendants from: (1) retaliation against Relators; and (2) Reducing Relators' hours, removing assistants, taking away company vehicles, or taking other retaliatory actions.  (Relators' Letter Brief at p. 12)  Relators are not entitled to the injunctive relief they seek in their application for the simple reason that even if they could show a likelihood of success on the merits, which they

cannot do, they have adequate remedies available to them at law, for they in essence seek compensatory damages in the form of monetary relief.  It is black-letter law that a claim for money damages is simply not an appropriate basis to ask a court to employ the extraordinary remedies of equity, especially a temporary restraining order or a preliminary injunction.  As set forth below, New Jersey law does not support injunctive relief for Relators under these circumstances.  Accordingly, the Relators' application should be denied with prejudice in its entirety.

## II.    STATEMENT OF FACTS[1]

John Honsberger, Sr. ("Honsberger, Sr.") has been employed by Haig as an Inspection Technician since in or about 2006. (Haig Cert. at ¶ 3)  He previously worked for the Company's predecessor. (Haig Cert. at ¶ 3)  Luis Santiago, Jr. ("Santiago, Jr.") has been employed by Haig as an Inspection Technician since in or about 2010. (Haig Cert. at ¶ 4)

As Inspection Technicians, Honsberger, Sr. and Santiago, Jr. are responsible for performing on-site system inspection and testing of fire alarm systems.  (Haig Cert. at ¶ 5)  Haig's Inspection Technicians work on teams of two due to the type of inspection work needed to service customers.  (Haig Cert. at ¶ 6)  Haig assigned Honsberger, Sr. and Santiago, Jr. to work on the same team after the Company promoted the individual with whom Hansberger previously worked.  (Haig Cert. at ¶ 7)  There have been no changes in the responsibilities of either Honsberger, Sr. or Santiago, Jr. since the filing of the lawsuit in this matter.  (Haig Cert. at ¶ 8)  They are being assigned service tickets in the same manner as other Inspection Technicians. (Haig Cert. at ¶ 8)

Neither Honsberger, Sr. nor Santiago, Jr. are certified or licensed to perform certain of

---

[1]      All the facts set forth in the Statement of Facts are taken from the Certification of Richard D. Haig, Jr., filed herewith (the "Haig Cert.").

the work assigned to other Technicians, such as Service Technicians. (Haig Cert. at ¶ 9)  Service Technicians generally are knowledgeable and experienced in all areas of electronic security, with a specific knowledge of Fire Alarm, Intrusion Alarm, CCTV and Card Access Systems. (Haig Cert. at ¶ 9)  Service Technicians are not required to hold any such certifications for their position, but some of them do. (Haig Cert. at ¶ 9)  They are responsible for diagnosing and repairing service issues. (Haig Cert. at ¶ 9)  The diagnostic work that Service Technicians perform requires that they enter confined spaces, such as ceilings and crawl spaces. (Haig Cert. at ¶ 9) They work alone. (Haig Cert. at ¶ 9)

Company vehicles are not provided to all Technicians.  (Haig Cert. at ¶ 10)  The Company does not consider a Technician's proximity to his or her team member's home in assigning company vehicles. (Haig Cert. at ¶ 11)  There are currently no teams of Inspection Technicians where each Technician has been provided a company vehicle. (Haig Cert. at ¶ 12)

Following the promotion of the individual who previously worked with Honsberger, the Company needed to reallocate its company vehicles. (Haig Cert. at ¶ 13)  As a result, Jim O'Neal, the President of Haig, requested that either Honsberger, Sr. or Santiago, Jr. return their company vehicles since they were working together. (Haig Cert. at ¶ 13)  The choice as to who would return their company vehicle was left to Honsberger, Sr. and Santiago, Jr. (Haig Cert. at ¶ 13)

On April 9, 2012, Honsberger, Sr. returned his company vehicle without incident.  He reported to work each day of that work week. (Haig Cert. at ¶ 14)  On April 11, 2012, Honsberger, Sr. requested reimbursement of his gas expenses for travel to and from work. (Haig Cert. at ¶ 15)  Prior to receiving a response, on that same date, Honsberger requested to take vacation days, instead of working, the week of April 16, 2012.   (Haig Cert. at ¶ 15)

Subsequently, his request was denied as Haig does not reimburse any Technician for his or her gas or related expenses for travel to and from work. (Haig Cert. at ¶ 15)  Honsberger's vacation request was approved. (Haig Cert. at ¶ 16)

Neither Honsberger, Sr. nor Santiago, Jr. have suffered any reduction in their hourly wage rate or bi-weekly compensation since the filing of this lawsuit. (Haig Cert. at ¶ 17)  They have consistently been scheduled to work and have completed time sheets reflecting that they have worked forty or more hours per week. (Haig Cert. at ¶ 17)

At times, Haig has occasion for Technicians to be on call since certain of its customers, such as schools, do not allow testing to be performed during class-time hours, which normally end around 2:00 p.m. or 3:00 p.m. (Haig Cert. at ¶ 18)  Each week the Company prepares an on-call list identifying those technicians who will be on call for the week. (Haig Cert. at ¶ 19) Typically, a technician that is called to work performs work after hours -- either after-school hours or on the weekends. (Haig Cert. at ¶ 19)  A technician who is on the on-call list for the week receives an additional $50.00 for the week. (Haig Cert. at ¶ 20)  Both Honsberger, Sr. and Santiago, Jr. have consistently and strongly refused to work after-school hours, citing their preference to work a daytime schedule. (Haig Cert. at ¶ 21)

## III.   LEGAL ARGUMENT

### A.   Plaintiffs/Relators Have Not Met The Prerequisites For Injunctive Relief

The general standards to be applied to an application for a temporary restraining order or preliminary injunction are adequately set forth in *Crowe v. DeGioia*, 90 N.J. 126 (1982). Relators' moving papers do not address, let alone satisfy, the *Crowe* standards.

In New Jersey, it is well-established law that to prevail on an application for a temporary restraining order or preliminary injunction, a plaintiff must satisfy the four-prong test set forth in

*Crowe v. DiGioia*, 90 N.J. 126 (1982). First, an application for preliminary injunctive relief should be granted only "when necessary to prevent irreparable harm." *Id.* at 132. The second prong requires that the legal right underlying the applicant's claim be settled as a matter of law. *Id.* at 133. The third prong requires the applicant to "make a preliminary showing of a reasonable probability of ultimate success on the merits." *Ibid.* Fourth, the court also must balance the resulting hardship to the parties in granting or denying preliminary injunctive relief. *Id.* at 134. "An interlocutory injunction is an extraordinary equitable remedy utilized primarily to forbid and prevent irreparable injury, and it must be administered with sound discretion and always upon consideration of justice, equity and morality in a given case." *Coskey's Television & Radio Sales & Serv., Inc. v. Foti*, 253 N.J. Super. 626, 639 (App. Div. 1992) (internal quotation omitted). As set forth in detail below, Relators cannot satisfy this test.

**1.  Relators Have Adequate Remedies At Law; Any Loss Of Income or Fringe Benefits of Employment Do Not Constitute Irreparable Harm**

Relators are not entitled to injunctive relief because they have adequate remedies available to them at law. A preliminary injunction should not be issued unless necessary to prevent irreparable harm. *Crowe*, *supra*, 90 N.J. at 131. It is axiomatic that harm is considered irreparable only if it cannot be adequately addressed by monetary damages. *Id.*

The moving party on an injunction motion bears the burden of showing irreparable harm. *See Judice's Sunshine Pontiac, Inc. v. General Motors Corp.*, 418 F. Supp. 1212, 1219 (D.N.J. 1976). New Jersey courts have recognized that harm is only considered irreparable "if it cannot be redressed adequately by monetary damages." *Crowe*, *supra*, 90 N.J. at 133. Indeed, it is well-established that loss of earnings will not constitute irreparable injury in a preliminary injunction case. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.").

Here, Relators claim that the alleged retaliation by Defendants has resulted in a reduction in additional income, reduced earnings and potential earnings, and the denial of a fringe benefit of employment (e.g., a company vehicle). (Relators' Letter Brief at pp. 4, 5 and 8). That alleged harm most definitely is insufficient for a remedy of injunctive relief since the quality of harm that can adequately be compensated through damages. *See Crowe,* 90 N.J. at 133. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Ibid.* Indeed, "[t]he availability of adequate monetary damages belies a claim of irreparable injury." *Frank's GMC,* 847 F.2d 100, 102 (3d Cir.1988).

Plaintiffs' demands would appropriately be considered at the end of the litigation, in the unlikely event that plaintiff were to prevail, by the payment of money. Thus in *Judice's Sunshine, supra,* the Court denied the granting of a preliminary injunction because the plaintiff was able to recover costs and attorney's fees should he prevail in litigation. 418 F. Supp. at 1222. The Court reasoned that "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* The *Judice's Sunshine's* court's reasoning is applicable in this case. Further, issuance of an injunction is discretionary and the normal standard of proof must be satisfied, including proof of irreparable harm. There is no presumption of irreparable harm inherent in a CEPA violation. *See Smith v. Travelers Mortgage Servs.,* 699 F.Supp. 1080, 1085 (D.N.J. 1988). Therefore, on this ground alone Relators' application should be denied.

**2.   The Balance Of Hardships Does Not Favor Relators; Neither Courts Nor Juries Are Empowered To Serve As "Super Personnel" Departments.**

Before a preliminary injunction may issue, the court must consider the appropriateness of the relief sought based on a balancing of the equities, i.e., the Relators' alleged economic interest

6

versus the public harm granting the injunction would have on the public. *See Verna v. Links at Valleybrook Neighborhood Ass'n, Inc.*, 371 N.J. Super. 77, 89 (App. Div. 2004). "An injunction is the strong arm of equity" and should not be issued when it would "operate oppressively or contrary to the real justice in the case or where it is not the fit and appropriate method of redress under all circumstances of the case, or where the benefit it will do the complainant is slight in comparison with the injury will do the defendant." *Sautto v. Edenboro*, 84 N.J. Super. 461, 478 (App. Div.), *certif. denied*, 43 N.J. 353 (1964) (citations omitted).

Relator Honsberger, Sr. claims that "[he] agreed to return the [company] vehicle and did so on April 9, 2012 as instructed. I am now forced to take time off of work in order to figure out how I will be able to get to work." (Honsberger, Sr. Certification at ¶ 37). Clearly, he has a duty to mitigate his damages between now and then. What's more, Relator Honsberger, Sr. conveniently omits from his certification that he worked the entire week of April 9, 2012 without incident, after returning the company vehicle. (Haig Cert. at ¶ 14) It was only after Haig requested reimbursement of gas expenses for travel to and from work that he requested to take vacation days, instead of working, the week of April 16, 2012. (Haig Cert. at ¶ 15) Indeed, any consequence of not being able to work results from Relator Honsberger, Sr.'s own decision not to show up for work.

Finally, as set forth above, Relator Honsberger, Sr. will not suffer irreparable harm, as defined in the context of a request for injunctive relief, if the Court does not grant the Order to Show Cause. It bears emphasis that neither lost wages nor the deprivation of employment are sufficient as a matter of law for the issuance of the relief requested by Relators. *See Sampson v. Murray*, 415 U.S. at 90.

Conversely, if the Court grants Relators' application, Defendants will suffer significant

harm.   Haig has articulated legitimate, non-retaliatory reasons for its business decisions. Requiring Haig to make its employment decisions based on Relators' vacillation as to when, where and with whom they work, and the types of assignments they should be given would necessarily involve the Court acting as a "super personnel" department or second guessing Haig's business judgment and would interfere with Haig's management of its operations.  *See Pepper v. Princeton Univ.*, 77 N.J. 55, 87 (1978) ("[a]nti-discrimination laws do not permit the courts to make personnel decisions for employers.  They simply require that an employer's personnel decisions be based on criteria other than those proscribed by law"); *McCarthy v. The Home Depot, et al.*, Docket No. A-6056-04T26056-04T p. 18 (App. Div. October 30, 2006). Being ordered by the Court to forcibly assign Relators to work certain hours and times, and with certain individuals, and provide them each with a company vehicle, despite Haig's business needs, customers' requests and staffing requirements, is an inherently unworkable solution.  If so ordered, will the Court be called upon to review alleged inadequate hours, or any allegedly adverse operational decision?   Haig has clearly articulated non-retaliatory reasons for its decisions.   A jury may ultimately be asked to decide if they believe the company, and empowered to award damages against Haig if they think the Company was dishonest. Nonetheless, for the purposes of this application, Relators bear the burden of showing facts entitling them to relief, with all presumptions and ambiguities to be taken against them.  Clearly they have not met that burden and the balance of hardships weighs in Defendants' favor. Therefore, Relators' request to second-guess Haig's decision should be rejected.

Suffice it to say, Relators have not demonstrated any irreparable injury that will occur if their request for injunctive relief is denied.   At most, the Relators' harm is possible loss of additional income.  On the other hand, granting the injunction and prohibiting Haig from making

legitimate decisions in response to its business needs, customers' requests and staffing requirements would have a chilling effect on its operations. Accordingly, the balance of equities favors the denial of Relators' application.

### 3. Plaintiffs/Relators Fail To Meet Their Burden Of Showing Facts Entitling Them To Relief; They Are Unlikely To Succeed On The Merits Of Their Claims.

Relators have not come close to showing and cannot show a reasonable probability of success on the merits. "The time-honored approach in ascertaining whether a party has demonstrated a reasonable likelihood of success requires a determination of whether the material facts are in dispute, and whether the applicable law is settled." *Waste Mgmt. of New Jersey, Inc. v. Union County Utilities Auth.*, 399 N.J. Super. 508, 528 (App. Div. 2008) (citations omitted).

In particular, "a preliminary injunction should not issue where all material facts are controverted." *Crowe*, *supra*, 90 N.J. at 133. "[I]n other words, the movant must clearly and convincingly show that the material facts are not in dispute. *Sherman v. Sherman*, 330 N.J. Super. 638, 645 (Ch. Div. 1999).

Far from meeting that standard here, Relators have simply presented the Court with their own self-serving statements and contradictions. Despite their best efforts to characterize Haig's business decisions as retaliatory and obfuscate the inconsistencies in their position, they have ultimately admitted to the following:

(a) "I *prefer* a normal daytime work schedule so that I [can] spend time with my step son who is 12 years old and my step daughter who is 10 years old. As a result, Haig shifted my hours to only day time work." (Santiago Cert. at ¶ 6) (emphasis added)

(b) "If I was only working nights, I would not necessarily work the forty hour or more work week that I had been performing since I started working for Haig." (Santiago Cert. at ¶ 11)

(c) "Shortly after I complained about the nighttime schedule, I learned that I was being taken off the on-call list[.]" (Santiago Cert. at ¶ 14)

(d) "I was informed by Mr. O'Neal that Haig was running out of daytime inspection work and I would have to work the night shift. I told Mr. O'Neal that *I did not want to work* the night shift, I had never worked the night shift, and was not about to start." (Honsberger Cert. at ¶ 10) (emphasis added)

(e) "Later that same day, Mr. O'Neal called me again and said that I did not have to work the night shift." (Honsberger Cert. at ¶ 11)

(f) "I [ ] told Mr. O'Neal that if I was not going to be allowed to perform service calls, *I should be removed from the 'on call' list.*" (Honsberger Cert. at ¶ 21) (emphasis added)

(g) "Beyond being too large physically to enter the crawl space, there should be *two* people present for jobs such as this in case anything dangerous occurs." (Honsberger Cert. at ¶ 22)

Relators cannot "have their cake and eat it too." They cannot maintain on the one hand that they prefer to work a daytime schedule, do not want to work the "night shift," cannot work alone but need to work on a team and each be provided with a company vehicle, ask to be removed from the on call list, and then claim on the other hand that Defendants retaliated against them by acquiescing to their requests and preferences to work a daytime schedule, not scheduling them to work the "night shift," not assigning diagnostic work to Relator Honsberger without help due to his admitted physical limitations, removing them from the on call list,[2] assigning them to work together, and giving them the choice to decide amongst themselves as to who would return their company vehicle. Indeed, other than their own actions and decisions, there is nothing preventing Relators from sharing the company vehicle by alternating the weeks of driving it, for example.

Indeed, it escapes Defendants as to how and why Relators believe that they should be paid an extra $50.00 for being on the on-call list, for example, when they both have admitted that they do not want to work at night, or how and why they should be treated differently, i.e.,

---

[2]    Typically, a technician, the position in which Relators are employed, who is "on call" is performing work either during after-school hours or on the weekends. (Haig Cert. at ¶ 19) A technician who is "on call" receives an additional $50.00 for the week on which he is on the list. (Haig Cert. at ¶ 20)

"specially," for having filed this lawsuit when they admit that Haig has acquiesced to their requests and accommodated their "preferences." For Relators to now turn around and claim that Defendants' actions are retaliatory is specious at best. Accordingly, Relators are unlikely to be successful on the merits of their allegations of retaliation.

## IV.    CONCLUSION

For the reasons set forth above, Relators cannot demonstrate that they are entitled to an order to show cause with temporary restraints or a preliminary injunction. Therefore, their application should be denied. Further, Defendants respectfully request that the Court award Defendants their attorney's fees and costs for the time needlessly spent in connection with this matter, and such other and further relief that the Court deems just and proper.

Respectfully submitted,

LITTLER MENDELSON, P.C.
Attorneys for Defendants

By: _____
    Ebonee Hamilton Lewis

Dated:  April 20, 2012

Firmwide:110596405.1 060197.1001

**LITTLER MENDELSON**
A Professional Corporation
One Newark Center - 8th Floor
Newark, New Jersey  07102
973.848.4700
Attorneys for Defendant



FILED
TEAM #2

APR 2 0 2012

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #11

---

STATE OF NEW JERSEY, ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK AND JOHN HONSBERGER, SR., LOUIS SANTIAGO, SR. (INDIVIDUALLY) AND JOHN HONSBERGER, SR. (INDIVIDUALL),

Plaintiffs,

vs.

HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORASTION, RICHARD D. HAIG, JR. and CHRISTOPHER BERNARD,

Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: HUDSON COUNTY

DOCKET NO. HUD-L-4958-11

Civil Action

**CERTIFICATION OF RICHARD D. HAIG, JR. IN OPPOSITION TO PLAINTIFFS/RELATORS APPLICATION FOR AN ORDER TO SHOW CAUSE WITH RESTRAINTS**

---

RICHARD D. HAIG, JR., of full age, hereby certifies as follows:

1.      I submit this Certification in opposition to Plaintiffs/Relators Order to Show Cause with Temporary Restraints.  This certification is based on my personal knowledge.

2.      I am the Chief Executive Officer of Haig Service Corporation ("Haig" or the "Company"), a single-source provider of integrated safety and security solutions.

3.      John Honsberger, Sr. ("Honsberger, Sr.") has been employed by Haig as an Inspection Technician since in or about 2006.  He previously worked for the Company's predecessor.

4.      Luis Santiago, Jr. ("Santiago, Jr.") has been employed by Haig as an Inspection Technician since in or about 2010.

5.      As Inspection Technicians, Honsberger, Sr. and Santiago, Jr. are responsible for performing on-site system inspection and testing of fire alarm systems.

6.      Haig's Inspection Technicians work on teams of two due to the type of inspection work needed to service customers.

7.      Haig assigned Honsberger, Sr. and Santiago, Jr. to work on the same team after the Company promoted the individual with whom Hansberger previously worked.

8.      There have been no changes in the responsibilities of either Honsberger, Sr. or Santiago, Jr. since the filing of the lawsuit in this matter.  They are being assigned service tickets in the same manner as other Inspection Technicians.

9.      Neither Honsberger, Sr. nor Santiago, Jr. are certified or licensed to perform certain of the work assigned to other Technicians, such as Service Technicians.   Service Technicians generally are knowledgeable and experienced in all areas of electronic security, with a specific knowledge of Fire Alarm, Intrusion Alarm, CCTV and Card Access Systems.  Service Technicians are not required to hold any such certifications for their position, but some of them do.  They are responsible for diagnosing and repairing service issues.  The diagnostic work that Service Technicians perform requires that they enter confined spaces, such as ceilings and crawl spaces.  They work alone.

10.     Company vehicles are not provided to all Technicians.

11.     The Company does not consider a Technician's proximity to his or her team member's home in assigning company vehicles.

12.     There are currently no teams of Inspection Technicians where each Technician has been provided a company vehicle.

13.     Following the promotion of the individual who previously worked with Honsberger, the Company needed to reallocate its company vehicles.  As a result, Jim O'Neal, the President of Haig, requested that either Honsberger, Sr. or Santiago, Jr. return their company

vehicles since they were working together.  The choice as to who would return their company vehicle was left to Honsberger, Sr. and Santiago, Jr.

14.     On April 9, 2012, Honsberger, Sr. returned his company vehicle without incident. He reported to work each day of that work week.

15.     On April 9, 2012, Honsberger, Sr. returned his company vehicle without incident. He reported to work each day of that work week.  On April 11, 2012, Honsberger, Sr. requested reimbursement of his gas expenses for travel to and from work.  Prior to receiving a response, on that same date, Honsberger requested to take vacation days, instead of working, the week of April 16, 2012.  Subsequently, his request was denied as Haig does not reimburse any Technician for his or her gas or related expenses for travel to and from work.  Honsberger's vacation request was approved.

16.     Honsberger's vacation request was approved.

17.     Neither Honsberger, Sr. nor Santiago, Jr. have suffered any reduction in their hourly wage rate or bi-weekly compensation since the filing of this lawsuit.  They have consistently been scheduled to work and have completed time sheets reflecting that they have worked forty or more hours per week.

18.     At times, Haig has occasion for Technicians to be on call since certain of its customers, such as schools, do not allow testing to be performed during class-time hours, which normally end around 2:00 p.m. or 3:00 p.m.

19.     Each week the Company prepares an on-call list identifying those technicians who will be on call for the week.  Typically, a technician that is called to work performs work after hours -- either after-school hours or on the weekends.

20.     A technician who is on the on-call list for the week receives an additional $50.00 for the week.

3

21.     Both Honsberger, Sr. and Santiago, Jr. have consistently and strongly refused to work after-school hours, citing their preference to work a daytime schedule.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

                                                    _____
                                                    RICHARD D. HAIG, JR.

Dated: April 20, 2012

Firmwide:110612610.1 060197.1001

4

**LITTLER MENDELSON**
A Professional Corporation
One Newark Center, 8th Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendants
  *Haig Service Corp., Richard D. Haig, Jr.*
  *and Christopher Bernard*



---

| | |
|---|---|
| STATE OF NEW JERSEY, ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK AND JOHN HONSBERGER, SR., LOUIS SANTIAGO, SR. (INDIVIDUALLY) AND JOHN HONSBERGER, SR. (INDIVIDUALL), | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY |

SUPERIOR COURT OF NEW
JERSEY
LAW DIVISION: HUDSON
COUNTY

Plaintiffs,

DOCKET NO. HUD-L-4958-11

vs.

**CERTIFICATION OF
EBONEÉ HAMILTON LEWIS
PURSUANT TO R.1:4-4(c)**

HAIG'S SERVICE CORPORATION (a New Jersey
Corporation) d/b/a HAIG SERVICE CORPORASTION,
RICHARD D. HAIG, JR. and CHRISTOPHER
BERNARD,

Defendants.

---

Eboneé Hamilton Lewis, of full age, hereby certifies as follows:

1.     I am an attorney admitted to practice law before the courts of the State of New Jersey and I am a Shareholder with the law firm of Littler Mendelson, P.C., attorneys for defendants Haig Service Corp., Richard D. Haig, Jr. and Christopher Bernard in the above-captioned matter.

2.     Richard D. Haig, Jr. has acknowledged the genuineness of his facsimile signature on his Certification which is being submitted herewith. If requested by the Court or a party, the Certification with the original signatures will be filed with the Court.

I certify that the foregoing statements made by me are true to the best of my knowledge.  I understand that if any of the above statements are willfully false I am subject to punishment.

By: _____
     Eboneé Hamilton Lewis


Dated:  April 20, 2012

Firmwide:110625597.1 060197.1001

**LITTLER MENDELSON**
A Professional Corporation
One Newark Center, 8th Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendants
*Haig Service Corp., Richard D. Haig, Jr.*
*and Christopher Bernard*

F I L E D
TEAM #2

APR 20 2012

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION

| | |
|---|---|
| STATE OF NEW JERSEY, ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK AND JOHN HONSBERGER, SR., LOUIS SANTIAGO, SR. (INDIVIDUALLY) AND JOHN HONSBERGER, SR. (INDIVIDUALL), <br><br> Plaintiffs, <br><br> vs. <br><br> HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORASTION, RICHARD D. HAIG, JR. and CHRISTOPHER BERNARD, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: HUDSON COUNTY <br><br> DOCKET NO. HUD-L-4958-11 <br><br> **CERTIFICATION OF SERVICE** |

I, EBONEÉ HAMILTON LEWIS, hereby certify as follows:

1.     I am an attorney-at-law associated with the law firm of Littler Mendelson, a Professional Corporation, counsel for Defendants, Haig Service Corp., Richard D. Haig, Jr. and Christopher Bernard (collectively "Defendants"), in connection with the above-captioned matter, and am familiar with the facts set forth in this Certification.

2.     On April 20, 2012, I caused the original and two copies of the following to be filed with the Clerk of the Superior Court of New Jersey, Law Division, Hudson County Administration Building, 583 Newark Avenue, Jersey City, New Jersey via hand delivery, and a copy each to be served upon Joshua M. Lurie, Esq. and Henry F. Furst, Esq., counsel of record for

Plaintiffs, Law Offices of Henry F. Furst, 52 Upper Montclair Plaza, Upper Montclair, New Jersey 07043, via hand delivery:

(1) Defendants' Brief in Opposition to Plaintiffs/Relators Application for an Order to Show Cause with Restraints;

(2) Certification of Richard D. Haig, Jr. in Opposition to Plaintiffs/Relators Application for an Order to Show Cause With Restraints;

(3) Certification of Facsimile Signature; and

(4) this Certification of Service.

I certify that the foregoing statements made by me are true to the best of my knowledge. I understand that if any of the above statements are willfully false I am subject to punishment.

By: _____
     Ebonee Hamilton Lewis

Dated: April 20, 2012

Firmwide:110623518.1 060197.1001

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW
52 UPPER MONTCLAIR PLAZA
UPPER MONTCLAIR, NEW JERSEY 07043
———
TELEPHONE: (973) 744-4000
FACSIMILE:  (866) 744-4483

HENRY F. FURST
————
JOSHUA M. LURIE
————
MARK J. CINTRON
*Of Counsel*

April 20, 2012

**Via Facsimile**

Hon. Peter F. Bariso, Jr., P.J. Civ.
Superior Court of New Jersey
Hudson Vicinage
Brennan Courthouse, 2nd Floor
583 Newark Avenue
Jersey City, New Jersey 07306
*Facsimile*: 201-795-0725

Re:   State of New Jersey ex rel. Santiago, *et al.* v. Haig Service Corp. *et al.*
Docket No: HUD-L-4958-11

Dear Judge Bariso:

We represent the Plaintiffs/Relators, the State of New Jersey ex rel. Luis Santiago, Sr., Luis Santiago, Jr., John Peck and John Honsberger, Sr., Luis Santiago, Jr. (individually), and John Honsberger, Sr. (individually).

We submitted an Order to Show Cause with Restraints pursuant to R. 4:52. I was advised that Your Honor requested that we provide a supplemental brief addressing the four requirements for preliminary injunctive relief set forth in Crowe v. De Gioia, 90 N.J. 126 (1982).

Crowe established four criteria for granting preliminary restraints: 1) whether irreparable harm will occur without the restraints (Id. at pp. 132-33); 2) whether the legal right is unsettled (Id. at p. 133); 3) whether the material facts are controverted (Id.); and 4) the relative hardships of the parties (Id. at p. 134). Each is addressed below.

**LAW OFFICES OF HENRY F. FURST**
  ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter to Judge Bariso re: OTSC
April 20, 2012
Page 2 of 3

Irreparable Harm:

Our opening brief sets forth at length that the Defendants have been retaliating against the Plaintiffs/Relators since the service of this False Claims Act Complaint.  The latest act of retaliation includes the order that Plaintiff/Relator John Honsberger, Sr. surrender the company car he was assigned continuously for the past six years.  Mr. Honsberger only owns one vehicle, which his wife uses to travel to work.  He lives in Pompton Lakes, the corporate office is in Green Brook and he often must work at distant locations around the State.

Mr. Honsberger was able to use his vehicle the first week after the surrender order because his wife was on vacation, and the subsequent week (this week) he took vacation time because of the inability to travel to work and his required job sites. Mr. Honsberger cannot afford to purchase or lease a vehicle We believe that this represents the Defendants' effort to make Mr. Honsberger unable to work, and is a precursor to termination on the grounds of inability to perform his job functions timely.  Therefore, the irreparable harm is allowing the retaliation coupled with the complete loss of employment and income.  .

The Legal Right:

The legal right is settled.  Defendants cannot retaliate.  Retaliation is precluded by every statute pled in the Complaint as well as under CEPA (N.J.S.A. 34:19-1 *et seq.*).  CEPA specifically precludes the removal of fringe benefits or perquisites for the filing of a Complaint – such as the taking away of a company vehicle.  (N.J.S.A. 34:19-5 (c)).

The Material Facts:

The material facts are not in dispute:  after being assigned a company car for six years, Mr. Honsberger has lost this fringe benefit. Defendants contend that the removal is part of a restructuring of the company.  However, as set forth in length in the Relators' certification, the "restructuring" is only applicable to the Plaintiffs/Relators.  Relators request that the status quo be maintained.

Relative Hardships of the Parties:

The hardship to Mr. Honsberger has been extensively discussed.  There is no hardship to Defendants.  They have provided this company vehicle for six years prior, and only took it away after the complaint in this matter was served.

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter to Judge Bariso re: OTSC
April 20, 2012
Page 3 of 3

Conclusion:

Because all four elements of Crowe are satisfied, and in light of the likelihood of irreparable harm, we respectfully request that the Court grant the preliminary restraints, allow Mr. Honsberger to utilize his company car so that he can return to work under the same conditions as existed prior to the service of the Complaint on Haig.

Accordingly we request that the Court grant the restraints, and, if awarded, fax a copy of the Order to Show Cause to my office so it may be served by facsimile upon the Defendants.

Respectfully submitted,

Henry F. Furst, Esq.

JML:rdh

cc:    Hon. Martha Royster, J.S.C. (via Facsimile at 201-795-6973)
        Ebonee` N. Hamilton Lewis, Esq. (via Email: enlewis@littler.com)
        DAG Lorena Salzmann (via Email: lorena.salzmann@dol.lps.state.nj.us)

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | | |
|---|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | : : : : : | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11 |
| Plaintiffs, | : : | CIVIL ACTION |
| vs. | : : : | **ORDER TO SHOW CAUSE WITH RESTRAINTS PURSUANT TO R. 4:52** |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | : : : : : | |
| Defendants. | : : | |

THIS MATTER being brought before the Court by The Law Office of Henry F. Furst, attorneys for Plaintiffs/Relators, STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually) (hereafter referred to collectively as "Relators"), seeking relief by way of temporary restraints pursuant to R. 4:52, based upon the facts set forth in the Certification of Henry F. Furst, Esq., the Certification of John Honsberger, Sr., the Certification of Luis Santiago, Jr., and Letter Brief filed herewith; and it appearing that the Defendants have notice of this application and for good cause shown.

It is on this _____ day of _____, 2012

-1-

**ORDERED** that Defendants HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and their employees and agents (hereafter referred to collectively as "Defendants"), appear and show cause before the Superior Court at the Hudson County Courthouse in Jersey City, New Jersey at _____ o'clock in the forenoon or as soon thereafter as counsel can be heard, on the ___ day of April, 2012 or as soon as possible, why an order should not be issued preliminarily enjoining and restraining Defendants, from:

A. Retaliating against Relators for filing a Complaint in the Superior Court of New Jersey alleging violations of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq*. ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq*. ("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq*. ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq*. ("NJWPL");

B. Reducing Relators' hours, removing assistants, taking away corporate vehicles, and other acts changing their conditions of employment as a result of their filing a Complaint in the Superior Court of New Jersey alleging violations of the NJFCA, NJPWA, FLSA and NJWPL.

C. Granting such other relief as the court deems equitable and just.

And it is further **ORDERED** that pending the return date herein, Defendants are enjoined and restrained from:

A. Retaliating against Relators for filing a Complaint in the Superior Court of New Jersey alleging violations of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq*. ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq*. ("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq*. ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq*. ("NJWPL");

-2-

B. Reducing Relators' hours, removing assistants, taking away corporate vehicles, and other acts changing their conditions of employment as a result of their filing a Complaint in the Superior Court of New Jersey alleging violations of the NJFCA, NJPWA, FLSA and NJWPL.

C. Granting such other relief as the court deems equitable and just.

And it is further **ORDERED** that:

1. The Defendants may move to dissolve or modify the temporary restraints herein contained on two (2) days notice to Relators' Attorney.

2. A copy of this order to show cause, and supporting certifications submitted in support of this application be served upon the Defendants within _____ days of the date hereof, in accordance with R. 4:4-3 and R. 4:4-4, this being original process.

3. Relators must file with the court their proof of service of the pleadings on the Defendants no later than three (3) days before the return date.

4. Defendants shall file and serve a written response to this order to show cause and the request for entry of injunctive relief and proof of service by _____, 20__. The original documents must be filed with the Clerk of the Superior Court in the county listed above. A list of these offices is provided. You must send a copy of your opposition papers directly to Judge _____, whose address is _____, New Jersey. You must also send a copy of your opposition papers to Relators' attorney whose name and address appears above. A telephone call will not protect your rights; you must file your opposition and pay the required fee of $ _____ and serve your opposition on your adversary, if you want the court to hear your opposition to the injunctive relief the plaintiff is seeking.

5. Relators must file and serve any written reply to the Defendants' order to show cause opposition by _____, 20__. The reply papers must be filed with the Clerk of the

-3-

Superior Court in the county listed above and a copy of the reply papers must be sent directly to the chambers of Judge _____.

6. If Defendants do not file and serve opposition to this order to show cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that Relators file a proof of service and a proposed form of order at least three days prior to the return date.

7. If Relators have not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than three (3) days before the return date.

8. If you cannot afford an attorney, you may call the Legal Services office in the county in which you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

9. The Court will entertain argument, but not testimony, on the return date of the order to show cause, unless the court and parties are advised to the contrary no later than ___ days before the return date.

_____
                                                          J.S.C.

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
**LAWYER REFERRAL**
(609) 345-3444
**LEGAL SERVICES**
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601-0769
**LAWYER REFERRAL**
(201) 488-0044
**LEGAL SERVICES**
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060
**LAWYER REFERRAL**
(609) 261-4862
**LEGAL SERVICES**
(609) 261-4570

**CAMDEN COUNTY:**
**COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice
1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103
**LAWYER REFERRAL**
(856) 964-4520
**LEGAL SERVICES**
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08201
**LAWYER REFERRAL**
(609) 463-0313
**LEGAL SERVICES**
(609) 465-3001

**CUMBERLAND**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts.
P.O. Box 10
Bridgeton, NJ 08302
**LAWYER REFERRAL**
(856) 692-6207
**LEGAL SERVICES**
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records
465 Dr. Marin Luther King Jr,. Blvd.
Newark, NJ 07102
**LAWYER REFERRAL**
(973) 622-6204
**LEGAL SERVICES**
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street, P.O. Box 750
Woodbury, NJ 08906
**LAWYER REFERRAL**
(856) 848-4589
**LEGAL SERVICES**
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House - 1st Floor
583 Newark Avenue
Jersey City, NJ 07306
**LAWYER REFERRAL**
(201) 798-2727
**LEGAL SERVICES**
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
**LAWYER REFERRAL**
(908) 735-2611
**LEGAL SERVICES**
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650
**LAWYER REFERRAL**
(609) 585-6200
**LEGAL SERVICES**
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court
Middlesex Vicinage
2nd Floor - Tower
56 Patterson Street., P.O. Box 2633
New Brunswick, NJ 08903-2633
**LAWYER REFERRAL**
(732) 828-0053
**LEGAL SERVICES**
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
71 Monument Park
P.O. Box 1269
Freehold, NJ 07728-1269
**LAWYER REFERRAL**
(732) 431-5544
**LEGAL SERVICES**
(732) 866-0020

**MORRIS COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Washington and Court Streets
P.O. Box 910
Morristown, NJ 07963-0910
**LAWYER REFERRAL**
(973) 267-5882
**LAWYER SERVICES**
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
Court House, Room 119
118 Washington Street
Toms River, NJ 08754
**LAWYER REFERRAL**
(732) 240-3666
**LEGAL SERVICES**
(201) 341-2727

-5-

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505
**LAWYER REFERRAL**
(973) 278-9223
**LEGAL SERVICES**
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
92 Market St., P.O. Box 29
Salem, NJ 08079
**LAWYER REFERRAL**
(856) 678-8363
**LEGAL SERVICES**
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
400 North Bridge Street
Somerville, NJ 08876
**LAWYER REFERRAL**
(908) 685-2323
**LEGAL SERVICES**
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
**LAWYER REFERRAL**
(973) 267-5882
**LEGAL SERVICES**
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073
**LAWYER REFERRAL**
(908) 353-4715
**LEGAL SERVICES**
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
**LAWYER REFERRAL**
(973) 267-5882
**LEGAL SERVICES**
(973) 475-2010

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | | |
|---|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR.; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | : | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY |
| | : | Docket No. HUD-L-4958-11 |
| Plaintiffs, | : | CIVIL ACTION |
| vs. | : | CERTIFICATION OF HENRY F. FURST IN SUPPORT OF ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS PURSUANT TO RULE 4:52 |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | : | |
| Defendants. | : | |

Henry F. Furst, Esq. certifies as follows:

1.    I am an Attorney-at-Law of the State of New Jersey, the principal attorney at the Law Office of Henry F. Furst, attorneys for the Relators/Plaintiffs.

2.    I provide this certification in support of the Relators/Plaintiffs Order to Show Cause with Restraints pursuant to R. 4:52.

3.    I have knowledge of the facts contained herein.

4.    This is a case filed pursuant to the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.* ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq.*

("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq.* ("FLSA") and the New

Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq.* ("NJWPL").

      5.     After numerous meetings with the Relators/Plaintiffs, a Complaint was drafted

and filed with the Court, under seal, as required by N.J.S.A. 2A:32C-5. The seal was to lift 60

days after filing.

      6.     After the complaint was filed under seal, there were discussions with the Attorney

General for the State of New Jersey regarding this matter.

      7.     The Attorney General requested that the seal continue for additional time in order

to evaluate the matter and decide whether to intervene.

      8.     On January 19, 2012, the Attorney General advised that they would not be

intervening in this matter. However, they requested that we continue this litigation and further to

keep them advised of how the litigation was proceeding as they may intervene at a later date.

      9.     On January 31, 2012, the Court Ordered the seal to be lifted allowing the

Relators/Plaintiffs to serve the Defendants in this matter.

      10.     A copy of the Order lifting the seal is attached hereto as Exhibit A.

      11.     After the seal was lifted, we served the Defendants personally via Guaranteed

Subpoena Service. Service was effectuated against Defendant Haig Service Corp. on February 7,

2012 and against Defendant Richard D Haig, Jr. on February 8, 2012.

      12.     Copies of the Affidavits of Service on Haig Service Corp. and Richard D. Haig,

Jr. are attached hereto as Exhibit B.

      13.     Subsequent to the service on the Defendants, I was advised by Relators/Plaintiffs,

Luis Santiago, Jr. and John Honsberger, Sr., the two Relators/Plaintiffs still currently employed

by Defendant Haig Service Corp., that Defendant Haig Service Corp. has retaliated against them for their filing of the Complaint in this matter.

14.     The facts and circumstances related to the retaliation which they have suffered as a result of the filing of this Complaint are set forth within the Certifications of Luis Santiago, Jr. and John Honsberger, Sr. which are filed concurrently with this Order to Show Cause and are incorporated herein.

15.     After being informed of these retaliatory acts against Mr. Santiago and Mr. Honsberger, my office contacted counsel for Haig and demanded that the retaliation cease.

16.     I was informed by counsel for Haig that certain claims by Mr. Honsberger were irrational because he was not an hourly employee and, instead, was an exempt employee.

17.     Some aspects of the retaliation then ceased, but as set forth by Mr. Santiago and Mr. Honsberger, Haig is continuing to retaliate in various ways against them.

18.     The exhibits attached hereto are true and accurate copies of what they purport to be.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_Henry F. Furst, Esq._

Dated: April 18, 2012

**EXHIBIT A**

HUDSON COUNTY SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY       NJ 07306

COURT TELEPHONE NO. (201) 217-5162
COURT HOURS

DATE:    JANUARY 31, 2012
RE:      STATE OF NEW JERSEY VS HAIG'S SERVICE CORP
DOCKET:  HUD L -004958 11

THE ABOVE CASE HAS BEEN ASSIGNED TO:   TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:  HON PETER F. BARISO

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     002
AT:  (201) 795-6908.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R.4:5A-2.
ATTENTION:

ATTORNEY GENERAL
124 HALSEY STREET
PO BOX 45029
NEWARK          NJ 07101

JUABR

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY
DIVISION OF LAW
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, New Jersey 07102

**FILED**

JAN 31 2012

PETER F. BARISO, JR., P.J.Cv.

     BY:  Lorena L. Salzmann
          Deputy Attorney General
          (973) 648-3183

| | |
|---|---|
| STATE OF NEW JERSEY, ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO JR., JOHN PECK AND JOHN HONSBERGER, SR., LUIS SANTIAGO, JR. (INDIVIDUALLY) AND JOHN HONSBERGER, SR. (INDIVIDUALLY), Plaintiffs, vs. HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPPORATION; RICHARD D. HAIG, Jr. and CHRISTOPHER BERNARD, Defendants. | SUPERIOR COURT OF NEW JERSEY- LAW DIVISION HUDSON COUNTY CIVIL ACTION DOCKET NO. HUD-L-4958-11 <u>UNSEALING ORDER</u> (FILED UNDER SEAL OF N.J.S.A. 2A:32C-5) |

The State of New Jersey ("New Jersey") through its counsel, Jeffrey S. Chiesa, Attorney General of New Jersey ("the Attorney General") (Lorena L. Salzmann, Deputy Attorney General, appearing), having filed its Notice of Election to Decline Intervention pursuant to <u>N.J.S.A.</u> 2A:32C-5(g)(2), the Court rules as follows:

IT IS on this _3/st_ day of _Jan._____, 2012;

    ORDERED that the Complaint, New Jersey's Notice of Election to Decline Intervention, and this Order be unsealed and served upon the defendants by the Relator; and it is further

    ORDERED that the Clerk of the Court shall administratively reopen the above action; and it is further

**ORDERED** that the seal be lifted as to all other matters occurring in this action after the date of this Order; and it is further

**ORDERED** that Relator may maintain the instant action in the name of the State of New Jersey; provided, however, that the action may be *voluntarily* dismissed only if ~~the Court and~~ the Attorney General of New Jersey give written consent to the dismissal and their reasons for consenting; and it is further

**ORDERED** that pursuant to N.J.S.A. 2A:32C-6(f), all subsequent pleadings, including supporting memoranda, filed in this action must be served upon the Attorney General; *by Pl's Counsel* and it is further

**ORDERED** that New Jersey may order any deposition transcript or intervene in this action, for good cause, at any time; and it is further

**ORDERED** that all Orders of this Court in this action shall be *served upon* ~~sent to the~~ Attorney General; *by Pl's Counsel* and it is further

**ORDERED** that should either the Relator or the defendants propose that this action be dismissed, settled, or otherwise discontinued, *Pl's Counsel shall solicit* ~~the Court will solicit~~ the written consent of the Attorney General before ruling *any by the Court.* ~~or granting its approval.~~

                    Honorable Peter F. Bariso, P.J.Civ.

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY
DIVISION OF LAW
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, New Jersey 07102

**RECEIVED**

JAN 27 2012

CIVIL CASE
MANAGEMENT OFFICE

**FILED**
TEAM #2

JAN 27 2012

BY: Lorena L. Salzmann
Deputy Attorney General
(973) 648-3183

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #5

------------------------------------:  SUPERIOR COURT OF NEW
STATE OF NEW JERSEY, ex rel. LUIS     :  JERSEY- LAW DIVISION
SANTIAGO, SR., LUIS SANTIAGO JR.,     :
JOHN PECK AND JOHN HONSBERGER,        :  HUDSON COUNTY
SR., LUIS SANTIAGO, JR. (INDIVIDUALLY) :  CIVIL ACTION
AND JOHN HONSBERGER, SR. (INDIVIDUALLY),:  DOCKET NO. HUD-L-4958-11
        Plaintiffs,          :
   vs.                            :
                     :
HAIG'S SERVICE CORPORATION (a New     :  **NOTICE OF ELECTION**
Jersey Corporation) d/b/a HAIG SERVICE :  **TO DECLINE INTERVENTION**
CORPPORATION; RICHARD D. HAIG, Jr. and :
CHRISTOPHER BERNARD,                   :
        Defendants.          :  (FILED UNDER SEAL OF
                     :  N.J.S.A. 2A:32C-5)
------------------------------------:

Pursuant to the New Jersey False Claims Act, N.J.S.A. 2A:32C-5(g)(2), the State of New Jersey ("New Jersey") hereby notifies the Court of its decision not to intervene in this action; therefore, "the seal shall be lifted and the person bringing the action shall have the right to conduct the action."

Although New Jersey declines to intervene, it respectfully refers the Court to N.J.S.A. 2A:32C-5(b) and (c) and 2A:32C-6(f), which allow the Relator to maintain the action in the name of New Jersey; providing, however, that "the action may be voluntarily dismissed by the person bringing the action if the Attorney General gives written consent to the dismissal along with the reason for

consenting, and the court approves the dismissal." <u>N.J.S.A.</u>
2A:32C-5(c).

Therefore, New Jersey requests that, should either the Relator
or the defendants propose that this action be dismissed, settled,
or otherwise discontinued, this Court solicit the written consent
of the Attorney General before ruling or granting its approval.

Furthermore, pursuant to <u>N.J.S.A.</u> 2A:32C-6(f), New Jersey
requests that all pleadings filed in this action be served upon the
Attorney General; New Jersey also requests that Orders issued by
the Court be sent to the Attorney General. Additionally, New
Jersey reserves its right to order any deposition transcripts and
to intervene in this action, for good cause, at a later date.

A proposed order accompanies this Notice.

Respectfully submitted,

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY

By:  *Lorena L. Salzmann*

Lorena L. Salzmann
Deputy Attorney General

EXHIBIT B

**EXHIBIT B**

STATE OF NEW JERSEY EX REL., ET AL

Plaintiff

vs.

HAIG'S SERVICE CORPORATION, A NJ CORPORATION D/B/A HAIG
SERVICE CORPORATION, ET AL

Defendant

**Person to be served (Name and Address):**
HAIG'S SERVICE CORPORATION, A NJ CORPORATION D/B/A HAIG
SERVICE CORPORATION
211A US HWY 22 EAST
GREEN BROOK TWP. NJ 08812
By serving: HAIG'S SERVICE CORPORATION, A NJ CORPORATION D/B/A
HAIG SERVICE CORPORATION

**Attorney:** HENRY F FURST, ESQ

**Papers Served:** SUMMONS, COMPLAINT, CIS, EXHIBITS

**Service Data:**   [X] Served Successfully      [ ] Not Served

**Date/Time:**   02/06/2012  12:56PM

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age
residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

Superior Court Of New Jersey

HUDSON Venue

Docket Number: HUD L 4958 11

## AFFIDAVIT OF SERVICE
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.___

**Attempts:**   Date/Time: _____
                Date/Time: _____
                Date/Time: _____

Name of Person Served and relationship/title:

ATISHA BETHEA

AUTHORIZED AGENT

**Description of Person Accepting Service:**

SEX: F__  AGE: 21-35   HEIGHT: 5'4"-5'8"   WEIGHT: 131-160 LBS.   SKIN: BLACK   HAIR: RED   OTHER: _____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] No response on:       Date/Time: _____
                          Date/Time: _____
                          Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this

_07_ day of _Feb_ , 20 _12_

Notary Signature: _____

JACKELINE GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 15, 2015

Commission Expiration

I, NUNO VEIGA,
was at the time of service a competent adult, over
the age of 18 and not having a direct interest in the
litigation. I declare under penalty of perjury that the
foregoing is true and correct.

_____        02/07/262
Signature of Process Server        Date

Name of Private Server: NUNO VEIGA Address: 2009 Morris Avenue UNION, NJ 07083 Phone: (800) PROCESS



2 0 1 2 0 2 0 3 1 0 1 3 0 5

STATE OF NEWJERSEY EX REL., ET AL

    Plaintiff

vs.

HAIG'S SERVICE CORPORATION, A NJ CORPORATION D/B/A HAIG
SERVICE CORPORATION, ET AL

    Defendant

Person to be served (Name and Address):
RICHARD D HAIG, JR
11 PRESIDENTS DR
BRIDGEWATER NJ 08807
By serving: RICHARD D HAIG, JR

Attorney: HENRY F FURST, ESQ

Papers Served: SUMMONS, COMPLAINT, CIS, EXHIBITS

Service Data:   [X] Served Successfully    [ ] Not Served

Date/Time:   02/07/2012  06:25PM    _____

[X] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age
residing therein (indicate name & relationship at right)

[ ] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

Superior Court Of New Jersey

HUDSON Venue

Docket Number: HUD L 4958 11

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____

Attempts:    Date/Time: 02/06/2012  05:22PM
         Date/Time: _____
         Date/Time: _____

Name of Person Served and relationship/title:

RICHARD D HAIG, JR _____

SELF _____

Description of Person Accepting Service:

SEX: M   AGE: 36-50   HEIGHT: 5'4"-5'8"    WEIGHT: 131-160 LBS.    SKIN: WHITE    HAIR: BROWN    OTHER: _____

Unserved:
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[X] No response on:    Date/Time: 02/06/2012  05:22PM
                 Date/Time: _____
                 Date/Time: _____

Other:

Served Data:
Subscribed and Sworn to me this
_08_ day of _Feb_, 20_12_

Notary Signature: _____

JACKELINE GONZALEZ
NOTARY PUBLIC OF NEW JERSEY    Name of Notary    Commission Expiration
My Commission Expires Dec. 15, 2015

I, NUNO VEIGA,
was at the time of service a competent adult, over
the age of 18 and not having a direct interest in the
litigation. I declare under penalty of perjury that the
foregoing is true and correct.

02 08 2012

Signature of Process Server    Date

Name of Private Server: NUNO VEIGA Address: 2009 Morris Avenue UNION, NJ 07083 Phone: (800) PROCESS

MM

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>Plaintiffs,<br><br>vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION<br><br>**CERTIFICATION OF LUIS SANTIAGO, JR. IN SUPPORT OF ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS PURSUANT TO RULE 4:52** |

Luis Santiago, Jr. certifies as follows:

1.      I am a Plaintiff/Relator in the above matter.

2.      I am currently a technician for Defendant Haig Service Corp. I have worked for Haig since the middle of 2008. As a technician, my job responsibilities included doing installations, service and inspections of fire alarms and burglar alarm systems for Haig and being "on call." Also, as a fringe benefit of my employment, I received a company car which I use to commute to work as well as to job sites.

3.      I have knowledge of the facts contained herein.

4.      In early February, 2012, I was informed by my lawyers that the Complaint in this matter was about to be served upon the Defendants.

5.      Since the service of this complaint, there have been efforts by Haig to change the terms of my employment.

-1-

Change from Daytime Work

6.     I regularly worked the day shift for Haig for quite some time.  I was initially assigned to mostly night work, but I prefer a normal daytime work schedule so that I could spend time with my step son who is 12 years old and my step daughter who is 10 years old.  As a result, Haig shifted my hours to only day time work.

7.     I learned about the illegal acts of my employers by not paying my prevailing wage, failing to pay me the overtime I was due, and that my employers had falsely certified to various public entities that they were in fact paying me prevailing wage.

8.     My fellow Relators approached Richard D. Haig, Jr., the owner of Haig, on their own and my behalf and asked him about the situation.  They were ignored by Mr. Haig.

9.     After the Complaint was served in this matter, I was called on my telephone by Jim O'Neal who is the new President of Haig.

10.    Mr. O'Neal told me that I would no longer have the advantage of a daytime work schedule.

11.    If I was only working nights, I would not necessarily work the forty hour or more work week that I had been performing since I started working for Haig.

12.    This threat was rescinded after I complained.

13.    I was also informed that Haig lacked sufficient daytime work, yet Haig has hired new technicians since the Complaint was served.  These new employees are doing work during daytime hours that I normally performed.

Removal from "On-Call" List

14.    Shortly after I complained about the nighttime schedule, I learned that I was being taken off the on-call list, which will lower my income.  I will no longer be performing certain tasks that I used to perform prior to the filing of the Complaint; these are certain jobs for Haig which I have been performing for years.

-2-

Change in Job Responsibilities

    15.    My employment is now limited to doing inspections which is different from my prior job responsibilities. Further, Haig changed the inspection process that I was performing for many years by increasing, significantly, the time that it takes to perform the same task, and then chastising me for taking extra time because of the new procedures which I was required to perform. After numerous complaints from Haig's customers regarding the increased time to perform the inspections and the extra cost, Haig ended this procedure.

Reduction of Income

    16.    As a result of this adverse action taken by Haig, my income has significantly declined. I have been removed from the "on call" list which I earned an extra $50.00 each time I was on the list and additional hours of overtime work for all "on call" work.

    17.    A short while ago, I was present when Mr. O'Neal was chastising my co-Relator, John Honsberger, Sr., for filing this complaint. Mr. O'Neal told Mr. Honsberger that we were "fucking stupid" for filing this complaint. When I heard Mr. O'Neal use this derogatory language and insult both John and myself, I asked him to repeat himself. Mr. O'Neal said, to the effect of "you heard me, you are fucking stupid."

    18.    I believe the change in my job responsibilities, and they way that I am now being treated at Haig is retaliation for fling the False Claims Act complaint. The employment changes were done to limit my hours, to keep me from doing any further prevailing wage work and to reduce my income.

    19.    It is no mere coincidence that this sudden change of my employment status and the insulting and harassing way I am being treated at Haig occurred after the Complaint was served upon Haig. I had no prior warning or knowledge that the changes were to be made. My job related duties were virtually unchanged for years. The only thing that changed was that I became a "Relator" in the lawsuit.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Luis Santiago, Jr.

Dated: April ___, 2012

-4-

Pursuant to Rule 1:4-4c, I hereby certify that Luis Santiago, Jr. acknowledged the genuineness of his signature in his Certification, which was received in my office by electronic mail (email). A copy of the Certification with his original signature will be filed if requested by the Court or any party.

Joshua M. Lurie, Esq.

Dated: April 1C, 2012

-5-

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>Plaintiffs,<br><br>vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION<br><br>**CERTIFICATION OF JOHN HONSBERGER, SR. IN SUPPORT OF ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS PURSUANT TO RULE 4:52** |

John Honsberger, Sr. certifies as follows:

1.    I am a Plaintiff/Relator in the above matter.

2.    I am currently a technician for Defendant Haig Service Corp.

3.    I have knowledge of the facts contained herein.

4.    I have been a technician for Haig for several years. Initially, I was a technician for Haig's predecessor. When Haig purchased that corporation approximately six years ago, I began working for Haig. As a technician, my job responsibilities included doing service and inspection for fire alarm and burglar alarm systems for Haig and being "on call." Also, as a fringe benefit of my employment, I received a company car which I use to commute to work as well as to job sites.

-1-

5.      My income was reduced after Haig purchased the company I previously worked for. I have, for the entire time that I have been at Haig, been paid hourly based upon a 40 hour work week, with some extra amounts added for overtime performed.  However, I was not paid at time and a half for this overtime work.  Much of the work I performed was on prevailing wage jobs.

6.      I learned about the illegal acts of my employers by not paying my prevailing wage, failing to pay me the overtime I was due, and that my employers had falsely certified to various public entities that they were in fact paying me prevailing wage.

7.      My fellow Relators approached Richard D. Haig, Jr., the owner of Haig, on their own and my behalf and asked him about the situation.  They were ignored by Mr. Haig.

8.      In early February, 2012, I was informed by my lawyers that the Complaint in this matter was about to be served upon the Defendants.

9.      After the Complaint was served in this matter, I was called on the telephone by Jim O'Neal who is the new President of Haig.

10.     I was informed by Mr. O'Neal that Haig was running out of daytime inspection work and I would have to work the night shift.  I told Mr. O'Neal that I did not want to work the night shift, I had never worked the night shift, and was not about to start.  Mr. O'Neal then told me that if Haig runs out of daytime work that I would be sent home and called when work becomes available. In that event, I would lose pay for those hours.

11.     Later that same day, Mr. O'Neal called me again and said that I did not have to work the night shift.

12.     On March 5, 2012, Mr. O'Neal called my assistant, Ron, into his office and told him that he was being given a company vehicle, would no longer be working with me, and would now be working with another technician named Audi.

13.     Ron had been working with me since June of 2011.

14.     I was told by one of the office workers, Tish, that I was "now on my own."

-2-

15.     On March 15, 2012, I finished before the end of the day.  When I asked what job to work on next, I was told to go home at 1:30 p.m. by Tish.  This was strange because there was usually more work for me to perform if I finished a job early.  I asked Tish if I would be paid for the entire day, and she told me to "ask Jim."

16.     The following day, I went into the office to drop off some paperwork.  Mr. O'Neal was in the office, so I asked him if I would be paid for the entire day as I was instructed to do by Tish.

17.     Rather than give a substantive response, Mr. O'Neal told me to call my lawyer.

18.     Mr. O'Neal then chastised me, and said "you guys are fucking stupid for suing the company while still working there."

19.     I was then sent on a job which required two men to perform.  When completed, I was informed that there was no additional work for me for the day and I was sent home early at 1:00 p.m.

20.     I asked Mr. O'Neal if I was still allowed to work service calls instead of just inspections.  Mr. O'Neal said I was not.

21.     I then told Mr. O'Neal that if I was not going to be allowed to perform service calls, I should be removed from the "on call" list.  Mr. O'Neal told me that Luis Santiago, Jr. and I were already off the list.  I was paid $50.00 for the week just to be "on call," even if I was not dispatched.  Further, I earned additional income for responding to "on call" work.

22.     The following week, I was sent to do an inspection alone.  When I arrived, I discovered that the job required that I would have to go into an enclosed crawl-space.  Beyond being too large physically to enter the crawl space, there should be two people present for jobs such as this in case anything dangerous occurs.

23.     I contacted Haig to inform them that I would not be able to perform this inspection because I was alone and because of the physical size limitation.  Haig then sent me on another inspection.

-3-

24.     Afterwards, I learned that Haig is claiming that I have refused work.  I have never refused work for Haig.

25.     Lately, I have been mostly performing inspection jobs with my co-Relator, Luis Santiago, Jr.  This change in my job assignments only occurred after the Complaint was served.

26.     I was informed that there was not enough work for me at this time, yet Haig has hired new technicians since the Complaint was served, and these new employees are performing work during the day that I normally performed.

27.     I have been told by my co-workers that they are so backed up, that certain customers have been waiting for service for two to three weeks.  These are for service calls that I normally would have performed during my normal 40 hour work week.

28.     On April 2, 2012, Luis Santiago, Jr. was called by Mr. O'Neal and told that I was no longer a technician, but was now to be considered a "helper" and Luis Santiago, Jr. was going to be the lead technician on the jobs that we are performing together.  This is a demotion for me.

29.     Recently, Luis Santiago, Jr. was contacted by Mr. O'Neal and told that because we were now a "team," we were not allowed to have two corporate vehicles.  I had to return my vehicle no later than Monday, April 9.

30.     When Mr. Santiago pressed for more information on this, he was told that it was a new company policy, and that teams working together would only have one vehicle in order to save money.

31.     This new policy has only been applied to me and Mr. Santiago.

32.     While there are other teams that only have one corporate vehicle, the members of the team live close to one another so that they can carpool without a problem.

33.     There is another team where the members live quite far apart (each member retains a company vehicle).

-4-

34.     Luis Santiago, Jr. lives in Bayonne and I live in Pompton Lakes.  These two municipalities are approximately 1 hour away from each other by car.

35.     I only own one vehicle, which my wife drives to her work.  I have been utilizing the company vehicle for my entire tenure at Haig.

36.     I understand that Mr. Santiago also owns one vehicle, which his girlfriend uses to travel to work.

37.     I agreed to return the vehicle and did so on April 9, 2012 as instructed.  I am now forced to take time off of work in order to figure out how I will be able to get to work.

38.     I believe that the change in my conditions of employment, and the way that I am being harassed and treated by my employer is in retaliation for my participation in filing the complaint.  Now, my hours are limited.  I have lost my company vehicle which I have been using since I started working for Haig.  I have been demoted.  I have been sent home early, or told to go home early, on several days.  I have been removed from the "on call" list and banned from performing anymore service calls.  As a result of all of this, my income will decrease.

39.     It is no mere coincidence that this sudden change of my employment status occurred after the Complaint was served upon Haig.  My job related duties were virtually unchanged for years.  The only thing that changed was that I became a "Relator" in the lawsuit.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

John Honsberger, Sr.

Dated: April 17, 2012

-6-

Pursuant to Rule 1:4-4c, I hereby certify that John Honsberger, Sr. acknowledged the genuineness of his signature in his Certification, which was received in my office by facsimile. A copy of the Certification with his original signature will be filed if requested by the Court or any party.

_____
Joshua M. Lurie, Esq.

Dated: April 18, 2012

## LAW OFFICES OF HENRY F. FURST
### ATTORNEYS AT LAW
### 52 UPPER MONTCLAIR PLAZA
### UPPER MONTCLAIR, NEW JERSEY 07043

HENRY F. FURST

JOSHUA M. LURIE

MARK J. CINTRON
*Of Counsel*

TELEPHONE: (973) 744-4000
FACSIMILE: (866) 744-4483

April 18, 2012

**Via FedEx Overnight – 8697 4776 1117**

Clerk - Law Division
Superior Court of New Jersey
Hudson Vicinage - Civil Division
583 Newark Avenue
Jersey City, New Jersey 07306

Re:   State of New Jersey ex rel. Santiago, *et al.* v. Haig Service Corp. *et al.*
Docket No: HUD-L-4958-11

Dear Sir/Madam:

This is Plaintiff/Relators, Luis Santiago, Jr. and John Honsberger, Sr.'s letter brief in support of their Order to Show Cause for Restraints pursuant to R. 4:52 as a result of the acts of retaliation by Defendants against Relators after the service of the Complaint.

### Factual and Procedural History

This is a case arising under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.* ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq.* ("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq.* ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq.* ("NJWPL").

Relators, Luis Santiago, Jr. ("Santiago") and John Honsberger, Sr. ("Honsberger") are technicians for the Defendant Haig Service Corp., which is owned and operated by Defendant Richard D. Haig, Jr. (hereafter referred to collectively as appropriate as "Haig"). As a perquisite of employment, each Relator received a company car for their exclusive use. Each drove to and from their homes to their work assignments and to Haig headquarters in the company car.

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of OTSC
April 18, 2012
Page 2 of 12

After working for Haig for several years, Relators learned that they were being underpaid because: 1) Haig failed to pay appropriate prevailing wage required by the NJPWA; 2) Haig failed to pay the appropriate amount of overtime required by the FLSA and NJWPL; and 3) most egregiously, Haig's senior executives repeatedly submitted certifications to multiple public entities falsely stating that Haig paid their employees, including the Relators, prevailing wages in violation of the NJFCA.

Relators filed a Complaint alleging violations of the NJFCA, NJPWA, FLSA and NJWPL. Pursuant to the NJFCA, the matter was filed under seal while the Attorney General for the State of New Jersey determined whether or not to intervene in the matter. Certification of Henry F. Furst, attached hereto, at ¶¶ 5-7 (hereafter, "Furst Cert. at ¶ __")

On January 19, 2012, the Attorney General determined not to intervene. Furst Cert. at ¶ 8. However, they requested that Relators continue this litigation and further to keep the Attorney General advised of how the litigation was proceeding as they may intervene at a later date. Id.

On January 31, 2012, the Court lifted the seal so that Relators could serve the Defendants. Furst Cert. at ¶¶ 9, 10. Personal service was effectuated on February 7 and February 8, 2012. Furst Cert. at ¶¶ 11-12. The retaliation started shortly thereafter against Santiago and Honsberger who are the only Relators still employed by Haig. Furst Cert. at ¶¶ 13-14. See also Certification of Luis Santiago, Jr., attached hereto (hereafter, "Santiago Cert. at ¶ __") and Certification of John Honsberger, Sr., attached hereto (hereafter, "Honsberger Cert. at ¶ __").

LAW OFFICES OF HENRY F. FURST
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Support of OTSC
April 18, 2012
Page 3 of 12

Santiago was contacted by Mr. James O'Neil, the new president of Haig, and informed that he was being re-assigned to the night shift.   Santiago Cert. at ¶¶ 10-11.  When Santiago was first hired by Haig, they wanted to place him on the night shift.  However, he requested that he be placed on the day shift because he wanted to be able to spend time with his girlfriend's children who he treats and sees as his own.  Thus, Haig allowed Santiago to be on the day shift for nearly his entire career with Haig.  Santiago Cert. at ¶ 6.  Santiago challenged the attempt to transfer him to the night shift, and eventually Haig relented.  Santiago Cert. at ¶ 12.  However, this was not the end of the retaliation.

Around the same time as Santiago was told by Mr. O'Neal that he would be forced to work the night shift, Honsberger was also told my Mr. O'Neal that he would also be forced to work the night shift – an assignment he had never had during his entire tenure at Haig. Honsberger Cert. at ¶ 10.  Mr. Honsberger informed Mr. O'Neal that he did not want to work on the night shift, and eventually Haig relented.  Honsberger Cert. at ¶¶ 10-11.  Shortly thereafter, Mr. Honsberger was told by his "helper," Ron, who he had been working with for an extended period of time, that Ron would no longer be working with him.  Honsberger Cert. at ¶¶ 12-14. Because he would no longer have a "helper," Honsberger could no longer perform certain job functions which he had been performing for many years.  As a result, Haig attempted, on several occasions, to send him home early in the day alleging that there was not enough work for him to perform.  Honsberger Cert. at ¶ 15, 19.  However, at the same time, new technicians hired by Haig were performing the jobs which Honsberger had performed prior to the service of the

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of OTSC
April 18, 2012
Page 4 of 12

Complaint.  Honsberger Cert. at ¶ 26.  When Honsberger went to Mr. O'Neil to inquire why there was such a change in his employment status and to inquire whether he would be paid for the hours below his normal 40 hour week when he was sent home, he was told to ask his lawyer and then chastised for filing the complaint.  Honsberger Cert. at ¶¶ 16-18.  Mr. Honsberger then informed Mr. O'Neal that, if he was not going to have regular hours, then he would like to be removed from the "on call" list.  Honsberger Cert. at ¶¶ 20-21.  However, Mr. O'Neal informed Mr. Honsberger that he and Santiago had already been removed from the list.  Honsberger Cert. at ¶ 21.

Santiago, shortly thereafter, learned that he too had been taken off the "on call" list.  Santiago Cert. at ¶¶ 14, 16.

The result of Santiago being removed from the "on call" list is a reduction in additional income.  Technicians are paid a flat fee of $50.00 to be on call, and then are to be paid overtime for the work performed in excess of 40 hours/week while working on call jobs.  Santiago Cert. at ¶ 16.

After being informed about the retaliation, counsel for Relators contacted counsel for Haig and demanded that the retaliation cease.  Furst Cert. at ¶ 15.

After receiving the demand from Relator's counsel, Haig stopped certain aspects of the retaliation but other forms then occurred.  Furst Cert. at ¶ 17.

Instead of working separately, Santiago and Honsberger are now assigned to work together.  Honsberger Cert. at ¶ 25.  Honsberger has been informed that he no longer is a

LAW OFFICES OF HENRY F. FURST
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Support of OTSC
April 18, 2012
Page 5 of 12

technician, but is now Santiago's "helper" – a demotion from the position he has held for his entire tenure at Haig. Honsberger Cert. at ¶ 28. This demotion is even greater evidence of retaliation because, only a few weeks prior to being informed that he was now a "helper," counsel for Haig informed Mr. Furst that Mr. Honsberger was not entitled to overtime because he was an exempt employee. Furst Cert. at ¶ 16. This is a demotion for Mr. Honsberger. Honsberger Cert. at ¶ 28.

The latest retaliation against the Relators began on or about April 2, 2012. Haig knew that Honsberger and Santiago live about an hour's drive from each other. Honsberger Cert. at ¶ 34. It is an important fringe benefit of employment that each was assigned a company car for their exclusive use, including commuting to work at job sites and the office. Nonetheless, Honsberger and Santiago were contacted by Haig and informed that one of them was required to return their company car. Honsberger Cert. at ¶ 29. When they inquired why, they were informed that Haig has a new policy that for each team, only one member will have a company vehicle. Honsberger Cert. at ¶ 30. However, both members of other "teams" that include members who live far away from each other retained their cars. Honsberger Cert. at ¶¶ 31-33. Other teams that are assigned only one vehicle are the ones that live in close proximity to each other.

These actions by Haig are in retaliation for the filing of the Complaint in this matter, and Haig must be enjoined from continuing this retaliation and ordered to return or retain these employees in their regular employment status prior to the service of the Complaint, ordered to

**LAW OFFICES OF HENRY F. FURST**
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of OTSC
April 18, 2012
Page 6 of 12

return seniority rights to Mr. Honsberger, and further ordered to return Mr. Honsberger's fringe

benefit of a company vehicle.

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of OTSC
April 18, 2012
Page 7 of 12

## Legal Argument

Haig's conduct violates specific provisions against retaliation contained in every statutory

claim set forth in Relator's Complaint:

The NJFCA, N.J.S.A. 2A:32C-10(b), states:

> No employer shall discharge, demote, suspend, threaten, harass,
> deny promotion to, or in any other manner discriminate against an
> employee in the terms and conditions of employment because of
> lawful acts done by the employee on behalf of the employee or
> others in disclosing information to a State or law enforcement
> agency or in furthering a false claims action, including
> investigation for, initiation of, testimony for, or assistance in an
> action filed or to be filed under this act.

The NJPWA, N.J.S.A. 34:11-56.39, states:

> Any employer who discharges or in any other manner
> discriminates against any worker because the worker has made any
> complaint to his employer, to the public body or to the
> commissioner that he has not been paid wages in accordance with
> the provisions of this act, or because the worker has caused to be
> instituted or is about to cause to be instituted any proceeding under
> or related to this act, or because the worker has testified or is about
> to testify in any such proceeding shall be guilty of a disorderly
> persons offense and shall, upon conviction therefor, be fined not
> less than $100 nor more than $1,000.

The FLSA, 29 U.S.C. § 215 (a)(3), states:

> [I]t shall be unlawful for any person . . .
>
> (3) to discharge or in any other manner discriminate against any
> employee because such employee has filed any complaint or
> instituted or caused to be instituted any proceeding under or related
> to this chapter, or has testified or is about to testify in any such
> proceeding, or has served or is about to serve on an industry
> committee;

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of OTSC
April 18, 2012
Page 8 of 12

The NJWPL, N.J.S.A. 34:11-56a24, states:

> Any employer who discharges or in any other manner
> discriminates against any employee because such employee has
> made any complaint to his employer, to the commissioner, the
> director or to their authorized representatives that he has not been
> paid wages in accordance with the provisions of this act, or
> because such employee has caused to be instituted or is about to
> cause to be instituted any proceeding under or related to this act, or
> because such employee has testified or is about to testify in any
> such proceeding, or because such employee has served or is about
> to serve on a wage board, shall be guilty of a disorderly persons
> offense and shall, upon conviction therefor, be fined not less than
> $100 nor more than $1,000. Such employer shall be required, as a
> condition of such judgment of conviction, to offer reinstatement in
> employment to any such discharged employee and to correct any
> such discriminatory action, and also to pay to any such employee
> in full, all wages lost as a result of such discharge or
> discriminatory action, under penalty of contempt proceedings for
> failure to comply with such requirement.

Haig's conduct violates these worker protection statutes.   Haig has threatened the

Relators by suggesting that they should not continue to work while suing the company.   Haig has

demoted Honsberger and taken away his fringe benefit of a car.   Haig has reduced the earnings

and potential earnings of both Relators.

The Legislature has been cognizant that employers may retaliate against employees for

bringing statutorily protected acts against their employers for a variety of reasons.   As such, the

Legislature has long ago codified the Conscientious Employee Protection Act of 1986, N.J.S.A.

34:19-1 *et seq.* ("CEPA").[1]

---

[1] While Relators have not, at this time, instituted a cause of action for CEPA, they have informed counsel
for the Defendants that if the retaliation does not cease, Relators will move to amend the Complaint to

LAW OFFICES OF HENRY F. FURST
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of OTSC
April 18, 2012
Page 9 of 12

CEPA forbids an employer from taking any retaliatory acts against an employee who,

*inter alia:*

> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:
>
> > (1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, reasonably believes constitutes improper quality of patient care; or
>
> > (2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;
>
> b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer, or another employer, with whom there is a business relationship, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity, or, in the case of an employee who is a licensed or certified health care professional, provides information to, or testifies before, any public body

---

bring claims for retaliation, including violations of CEPA.  Further, as this is an Order to Show Cause, seeking restraints, the provisions of CEPA apply.  The Complaint was the notice of illegal conduct under CEPA.  N.J.S.A. 34:19-4

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Support of OTSC
April 18, 2012
Page 10 of 12

conducting an investigation, hearing or inquiry into the quality of
patient care.

N.J.S.A. 34:19-3.

"'Retaliatory action' means the discharge, suspension or demotion of an employee, or
other adverse employment action taken against an employee in the terms and conditions of
employment." N.J.S.A. 34:19-2(e).  As our Supreme Court recently noted:

> Under CEPA, it is unlawful for an employer to retaliate against an
> employee who "report[s] illegal or unethical workplace activities."
> Dzwonar v. McDevitt, 177 N.J. 451, 461-62 (2003) (internal
> quotations and citation omitted). Because CEPA is "remedial
> legislation," it "should be construed liberally to effectuate its
> important social goal" — "to encourage, not thwart, legitimate
> employee complaints." Id. at 463, (internal quotation marks and
> citations omitted); accord D'Annunzio v. Prudential Ins. Co. of
> Am., 192 N.J. 110, 120 (2007).

\* \* \*

> What constitutes an "adverse employment action" must be viewed
> in light of the broad remedial purpose of CEPA, and our charge to
> liberally construe the statute to deter workplace reprisals against an
> employee speaking out against a company's illicit or unethical
> activities.

Donelson v. DuPont Chambers Works, 206 N.J. 243, 255-56, 257-58 (2011).

Relators did in fact disclose the wrongful acts of Haig to a public entity for what they

reasonably believed was a violation of the law; the fraudulent activity of their employer, Haig.

First, they confronted their employer, Defendant Richard D. Haig, Jr., and inquired about the acts

which they believed to be illegal.[2]  (Complaint, ¶¶ 34-36).  They were given the "brush off,"

---

[2] Relators do not believe that the disclosure to a supervisor requirement of CEPA set forth in N.J.S.A.
34:19-4 applies for two reasons. First, they disclosed the problem directly to Mr. Haig.  Second,
"[d]isclosure shall not be required where the employee is reasonably certain that the activity, policy or

LAW OFFICES OF HENRY F. FURST
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of OTSC
April 18, 2012
Page 11 of 12

ignored, and told that he would look into it. Id. No changes were made. Id. Second, when they inquired about why they were being retaliated against, the Relators were told to ask their attorneys and chastised for filing a Complaint while still employed by Haig. Honsberger Cert. at ¶ 18; Santiago Cert. at ¶ 17. This shows the intent of the Defendants not only to ignore their statutory obligations regarding payment, but also demonstrates their intent to retaliate for the filing of the Complaint.

The relief sought is permitted by CEPA. N.J.S.A. 34:19-5 requires, upon a finding of a violation of CEPA that the Court "shall also order . . ." the following relief where applicable:

> a. An injunction to restrain any violation of this act which is continuing at the time that the court issues its order;
>
> b. The reinstatement of the employee to the same position held before the retaliatory action, or to an equivalent position;
>
> c. The reinstatement of full fringe benefits and seniority rights;
>
> d. The compensation for all lost wages, benefits and other remuneration; and
>
> e. The payment by the employer of reasonable costs, and attorney's fees.

N.J.S.A. 34:19-5.

---

practice is known to one or more supervisors of the employer. . ." Id. As set forth in the Complaint, the acts of Haig have been ongoing for many years, were perpetuated by Richard D. Haig, Jr. (the owner of the company), Christopher Bernard (then Vice President of the company), and other supervisors in the company, the Defendants knowingly submitted false certifications to various public entities, the Defendants knew that they were not paying the required prevailing wages, and the Defendants knew that they were not paying the required overtime. Thus, all supervisors were aware of their illegal activities.

**LAW OFFICES OF HENRY F. FURST**
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of OTSC
April 18, 2012
Page 12 of 12

## Conclusion

For the foregoing reasons, the Court should grant the restraints requested pursuant to <u>R.</u> 4:52 and preliminarily and permanently restrain the Defendants from:

A.    Retaliating against Relators for filing a Complaint in the Superior Court of New Jersey alleging violations of the NJFCA, NJPWA, FLSA and NJWPL;

B.    Reducing Relators' hours, removing assistants, taking away company vehicles, or taking other retaliatory actions.

Further, because of the need for Mr. Honsberger to use his company vehicle to work, Honsberger Cert. at ¶¶ 29-37, the Court must order Haig to return the company vehicle to Mr. Honsberger immediately so that he may return to work.

Respectfully Submitted,

Henry F. Furst, Esq.

HFF:rdh

cc:    Hon. Martha T. Royster, J.S.C.
            (via FedEx Overnight, under Separate Cover – 8697 4776 1128)

        Ebonee` N. Hamilton Lewis, Esq.
            (via Email and Certified Mail – 7011 2970 0000 3005 6168)

        DAG Lorena Salzmann (via Email and Regular Mail)

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | | |
|---|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR.; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | : : : : : | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY |
| | : | Docket No. HUD-L-4958-11 |
| Plaintiffs, | : : | CIVIL ACTION |
| vs. | : : | **ORDER** |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | : : : : : | |
| Defendants. | : : | |

THIS MATTER, having been opened to the Court by the Law Office of Henry F. Furst, co-counsel for the Plaintiffs/Relators, the STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), by Order to Show Cause with Restraints pursuant to R. 4:52 against Defendants HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD as a result of the retaliatory acts by certain Defendants against the Plaintiffs/Relators after the filing and service of the Complaint in this matter, the Court having found that retaliation has occurred, the Court having reviewed Plaintiffs/Relators moving papers, heard any opposition thereto by Plaintiff Defendants, and for good cause shown,

-1-

IT IS ON THIS ___ DAY OF _____, 2012,

**ORDERED**, that Defendants HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; ant its employees and agents including but not limited to RICHARD D. HAIG, JR. are hereby restrained, preliminarily and permanently from retaliating against Relators for filing a Complaint in the Superior Court of New Jersey alleging violations of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.* ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq.* ("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq.* ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq.* ("NJWPL"); and it is further

**ORDERED**, that Defendants HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR. and their employees and agents are hereby restrained, preliminarily and permanently from reducing Relators' hours, removing assistants, taking away corporate vehicles, and other acts changing their conditions of employment as a result of their filing a Complaint in the Superior Court of New Jersey alleging violations of the NJFCA, NJPWA, FLSA and NJWPL; and it is further

**ORDERED**, that Defendants HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR. and their employees and agents must immediately return Plaintiff/Relator John Honsberger, Sr.'s company vehicle so that he may return to work; and it is further

**ORDERED**, that reasonable attorneys' fees and costs shall be imposed against the Defendants, and awarded to counsel for the Plaintiffs/Relators as a result of the illegal and retaliatory acts of the Defendants; and it is further

**ORDERED**, that, pursuant to the preceding paragraph, within 14 days of the entry of this Order, counsel for Plaintiffs/Relators shall submit a fee application with the Court; and it is further

**ORDERED**, that a copy of the within Order shall be served on all parties within seven (7) days.

_____
                                                    J.S.C.

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | | |
|---|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR.; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | : : : : : | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11 |
| Plaintiffs, | : : | CIVIL ACTION |
| vs. | : : | **CERTIFICATE OF SERVICE** |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | : : : : | |
| Defendants. | : : | |

I hereby certify that an original and two copies of the within Order to Show Cause with Restraints, Certification of Henry F. Furst, Esq. with Exhibits, Certification of Luis Santiago, Jr., Certification of John Honsberger, Sr. and Letter Brief have on this day been forwarded for filing to the Civil Motions Clerk, Hudson County Courthouse, 583 Newark Avenue, Jersey City, New Jersey 07306 via FedEx Overnight, and a copy has been served upon:

<div align="center">

Ebonee N. Hamilton Lewis, Esq.
Littler Mendelson, P.C.
One Newark Center
1085 Raymond Blvd, 8th Floor
Newark, New Jersey 07102

</div>

via Email and Certified Mail.

<div align="center">-1-</div>

A Copy of these documents has also been served upon the Attorney General of the State of New Jersey by sending a copy to Deputy Attorney General  Lorena Salzmann, Department of Law, 124 Halsey Street, 5th Floor, Newark, New Jersey 07101 via E-mail and Regular Mail.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

By: _____
Henry F. Furst, Esq.

Dated: April 18, 2012

Prepared and Filed by the Court

|  | : | **SUPERIOR COURT OF NEW JERSEY** |
|---|---|---|
| STATE OF NEW JERSEY ex rel. | : | **HUDSON COUNTY LAW DIVISION** |
| LUIS SANTIAGO, SR., LUIS SANTIAGO, JR. | : | Docket No.: HUD-L-4958-11 |
| JOHN PECK and JOHN HONSBERGER, SR; | : | |
| LUIS SANTIAGO, SR. (individually), LUIS | : | |
| SANTIAGO, JR. (individually), | : | |
|  | : | **Civil Action** |
| Plaintiff, | : | |
|  | : | |
| v. | : | |
|  | : | **CASE MANAGEMENT ORDER #1** |
| HAIG'S SERVICE CORPORATION (a New | : | |
| Jersey Corporation) d/b/a HAIG SERVICE | : | **FILED** |
| CORPORATION; RICHARD D. HAIG, JR.; | : | |
| and CHRISTOPHER BERNARD | | **APR 2 3 2012** |
|  | | |
| Defendants. | | **MARTHA T. ROYSTER, J.S.C.** |

**THIS MATTER** having come before the Court by way of a Case Management Conference in

Chambers on April 23, 2012, before the Hon. Martha T. Royster, J.S.C.

**IT IS** on this __23st__ day of __April,__ 2012;

**ORDERED** as follows:

All dates shall run from March 6, 2012.

2.      Interrogatories previously served by all parties.

3.      Plaintiffs' supplements to interrogatories to be served by May 4, 2012.

4.      Plaintiff's discovery demands previously served.

5.      Defendants' discovery demands to be served by May 4, 2012.

6.      Parties to provide paper discovery responses to initial document/interrogatory request by

June 1, 2012.

7.      All additional paper discovery shall be exchanged by July 1, 2012.

8.   Plaintiff to file any amendments to the complaint and/or declaratory judgment applications as it relates to unpaid wages/arbitration clauses pursuant to Court rules returnable on May 25, 2012.

9.   Defendant to file opposition/motion to dismiss/summary judgment motions pursuant to Court rules.

10.   Deposition of Defendants to begin on June 8, 2012.

11.   Deposition of all parties and fact witnesses are to be completed by July 6, 2012.

12.   Plaintiff's expert reports as to all issues shall be served by September 3, 2012.

13.   Defendant's expert reports as to all issues shall be served by November 12, 2012.

14.   Deposition of all experts shall be completed by December 10, 2012.

16.   **The DISCOVERY END DATE is January 4, 2013.**

17.   There shall be no change in this discovery schedule without a conference between counsel and the Court. Any discovery not conducted pursuant to this Order is deemed waived.

18.   **The NEXT CASE MANAGEMENT CONFERENCE will be conducted on July 9, 2012.**


A copy of this Order has been provided to all parties who have appeared at the Case Management Conference. All other parties and/or subsequent appearing parties shall be served with a copy of this Order by Plaintiff within 7 days of the party's appearance in the case.




**Honorable Martha T. Royster, J.S.C.**

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY |
| | Docket No. HUD-L-4958-11 |
| Plaintiffs, | CIVIL ACTION |
| vs. | |
| | **NOTICE OF MOTION TO AMEND COMPLAINT** |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | |
| Defendants. | |

TO: Ebonee N. Hamilton Lewis, Esq.
Littler Mendelson, P.C.
One Newark Center
1085 Raymond Blvd, 8th Floor
Newark, New Jersey 07102
Counsel for Defendants

PLEASE TAKE NOTICE that the undersigned shall make application to the Superior

Court of New Jersey, Hudson County, located at Hudson County Courthouse, 583 Newark

Avenue, Jersey City, New Jersey 07306, on Friday, May 25, 2012 at 9:00 a.m., or as soon

thereafter as counsel may be heard, for an Order granting Plaintiff's Motion for to Amend the

Complaint pursuant to R. 4:9-1 to join the individual claims of Relators Luis Santiago, Sr. and

John Peck for disposition in the instant litigation, and to include claims for retaliation by Relators Luis Santiago, Jr. and John Honsberger, Sr.

    Plaintiff shall rely upon the attached Letter Brief, Certification and exhibits.

    A proposed form of Order is annexed hereto.

    Oral argument is not requested unless opposition is timely.

    By: _____
              JOSHUA M. LURIE, ESQ.

Dated: May 8, 2012

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW
52 UPPER MONTCLAIR PLAZA
UPPER MONTCLAIR, NEW JERSEY 07043

HENRY F. FURST
——————
JOSHUA M. LURIE
——————
MARK J. CINTRON
*Of Counsel*

TELEPHONE: (973) 744-4000
FACSIMILE:  (866) 744-4483

May 8, 2012

**Via FedEx Overnight – 8697 4776 1183**

Clerk - Law Division
Superior Court of New Jersey
Hudson Vicinage - Civil Division
583 Newark Avenue
Jersey City, New Jersey 07306

>    Re:    State of New Jersey ex rel. Santiago, *et al.* v. Haig Service Corp. *et al.*
>           Docket No: HUD-L-4958-11

Dear Sir/Madam:

    This is Plaintiff/Relators, Luis Santiago, Sr., John Peck, Luis Santiago, Jr. and John Honsberger, Sr.'s letter brief in support of their Motion to Amend the Complaint pursuant to R. 4:9-1.

**Factual and Procedural History**

    This is a case arising under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.* ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq.* ("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq.* ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq.* ("NJWPL").

    As set forth at length in the Complaint and the Certification of Henry F. Furst, dated May 8, 2012, which is filed contemporaneously with this Motion; two of the Relators in this matter, Luis Santiago, Sr. and John Peck, while employed by the Defendants, signed an employment agreement.  Mr. Peck and Mr. Santiago, Sr. agreed that all employment matters would be adjudicated through arbitration before the American Arbitration Association.

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Support of Motion to Amend Complaint
May 8, 2012
Page 2 of 6

After service of the Complaint which had been under seal pursuant to N.J.S.A. 2A: 32C-5 for an extended period, counsel for the Plaintiffs/Relators attempted to have the Defendants agree to waive the arbitration clause to avoid piecemeal, bifurcated litigation. The basic premise argued was the desire to avoid piecemeal litigation. Here, both the litigation and any employment arbitrations arise out of the same core of operative facts. It is more convenient and cost efficient for all parties to litigate this matter in one forum. In addition, counsel for the Plaintiffs/Relators are concerned about the potential for inconsistent or varying decisions between the Court and any arbitrator. For example, if the Court ruled that discovery of certain documents was not permitted, but the arbitrator ruled differently, then counsel could obtain documents which were denied in the other forum. The risk of inconsistency is great. Thus, Plaintiffs/Relators request that the Court permit them to file the Amended Complaint to assert the individual claims of Mr. Santiago, Sr. and Mr. Peck, and allow the matter to proceed in one forum without the risks asserted above.

Further, the proposed Amended Complaint raises claims for retaliation because the two Plaintiffs/Relators still employed by the Defendants have been retaliated against after the service of the Complaint by the Defendants.

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Support of Motion to Amend Complaint
May 8, 2012
Page 3 of 6

## **Legal Argument**

1.    Standard for Amending Complaints.

The standard for amending a complaint filed is set forth in R. 4:9-1 which states, in relevant part, that when a party filed a motion to amend a complaint by leave of Court, it "shall be granted freely given in the interest of justice." The motion for leave to amend is to be liberally granted and without consideration of the ultimate merits of the amendment. Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 500-501 (2006); (internal citations omitted). Further, a motion to amend may be challenged as attempting to set forth a claim upon which relief may not be granted. When this is done, the Court must review the Complaint pursuant to R. 4:6-2(e). Maxim Sewerage v. Monmouth Ridings, 273 N.J. Super. 84, 90 (Law. Div. 1993); (internal citations omitted).

2.    The Retaliation Claims.

The Amended Complaint sets forth claims for retaliation against the Defendants on behalf of the Plaintiffs/Relators, Luis Santiago, Jr. and John Honsberger, Sr. There should be no legal challenge to this amendment because the issues are factual, and these Plaintiffs/Relators should have every right to assert these claims.

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Support of Motion to Amend Complaint
May 8, 2012
Page 4 of 6

3.   The Claims Subject to the Arbitration Clauses.

The Amended Complaint also asserts the individual claims of Relators Luis Santiago, Sr.
and John Peck who, pursuant to the employment agreements which they signed with the
Defendants, must submit their individual employment claims to arbitration.  However, the Courts
look disfavorably on piecemeal, bifurcated litigation in the trial courts and arbitration.

There are two major reasons why the Court should permit the Plaintiffs/Relators to
include the individual claims of Relators Luis Santiago, Sr. and John Peck.  The first is because
without joinder in one forum this matter would quickly become unduly complex and costly in
contravention of the command of R. 1:1-2(a).  Further, the Supreme Court of New Jersey has
time and time again ruled against such bifurcation.

a.   Rule 1:1-2(a) requires that this matter be litigated in one forum.

R. 1:1-2(a) sets forth, in relevant part, that the Court Rules:

> [s]hall be construed to secure a just determination, simplicity in
> procedure, fairness in administration and the elimination of
> unjustifiable expense and delay... In the absence of rule, the court
> may proceed in any manner compatible with these purposes and, in
> civil cases, consistent with the case management/trial management
> guidelines set forth in Appendix XX of these rules.

As set forth above, the bifurcation creates serious risks of undue complexity, unfairness
and increased expense in this litigation.  Inconsistent rulings could plague both the litigation in
the trial court and in arbitration.  Discovery may be permitted in one forum, and excluded in
another.  Further, the final rulings and/or judgments may be divergent and inconsistent.  The

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Support of Motion to Amend Complaint
May 8, 2012
Page 5 of 6

costs could be astronomical, not just the large filing and arbitrator fees for the arbitrations, but motions filed in the Court to resolve possible inconsistencies. Thus, in order to effectuate the principles of R. 1:1-2(a), the Court should allow this matter to proceed in a single forum.

b.   Piecemeal litigation between arbitration and the trial courts should be avoided and litigated in a single forum.

In Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191 (1981), the New Jersey Supreme Court reviewed what happenes when matters are bifurcated into litigation before a trial court and arbitration. The Court held that "[j]ust as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration." Id. at 199.

The issue in Ohio Cas. Ins. Co. concerned the interpretation of an arbitration clause in an uninsured motorist claim. However, the principle of halting bifurcated litigation between the courts and arbitration has been applied by the Supreme Court and Appellate Division in many other contexts. See e.g. Garfinkel v. Morristown Obstetrics & Gynecology Assoc., P.A., 168 N.J. 124 (2001) (applying the principle in Ohio Cas. Ins. Co. to Law Against Discrimination claims); Zirger v. General Accident Ins. Co., 144 N.J. 327 (1996) (applying the principle in Ohio Cas. Ins. Co. to personal injury/underinsured motors matters); Allstate New Jersey Insurance Co. v. Neurology Pain Associates, 418 N.J. Super. 246 (App Div. 2011) (applying the principle in Ohio Cas. Ins. Co. to Personal Injury Protection benefits).

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Support of Motion to Amend Complaint
May 8, 2012
Page 6 of 6

Here, given the interconnectivity of the core issues, there is no reason for piecemeal

litigation and its attendant risk of disparate adjudications and additional costs.

## Conclusion

As the facts and circumstances behind both the claims in the trial court and those which

may be subjected to the arbitration clauses are indistinguishable except for the individual who

raises the claims, the risk of inconsistent rulings, and the fact that the Defendants have

apparently conceded that this matter should be handled in one forum by the propounding of

discovery upon Relators Luis Santiago, Sr. and John Peck which goes only to their individual

claims which would be subject to the arbitration provisions, the Court should permit the

Plaintiffs/Relators to file the propose Amended Complaint.

Further for the same reasons, the Court should find that the arbitration clauses from the

employment contracts of Relators Luis Santiago, Sr. and John Peck with Defendants have been

waived for the purposes of this litigation in order to allow all maters which arise out of the same

core of operative facts to be litigated in a single forum.

Respectfully Submitted,

Henry F. Furst, Esq.

HFF:rdh

cc:     Ebonee' N. Hamilton Lewis, Esq. (via Email and Regular Mail)
        DAG Lorena Salzmann (via Email and Regular Mail)

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | | |
|---|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | : : : : : | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY |
| Plaintiffs, | : : | Docket No. HUD-L-4958-11 |
| vs. | : : : | CIVIL ACTION |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | : : : : | **ORDER** |
| Defendants. | : : : | |

THIS MATTER, having been opened to the Court by the Law Office of Henry F. Furst, co-counsel for the Plaintiffs/Relators, the STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), for an Order permitting the Plaintiffs/Relators to Amend the Complaint to include the individual claims of Relators Luis Santiago, Sr. and John Peck for disposition in this litigation and to include claims for retaliation, the Court having reviewed Plaintiffs/Relators moving papers, heard any opposition thereto by Plaintiff Defendants, and for good cause shown,

IT IS ON THIS ___ DAY OF _____, 2012,

-1-

**ORDERED**, that Plaintiffs/Relators may file an Amended Complaint, either in the exact form, or in a form similar to the proposed amended complaint attached as Exhibit C to the Certification of Henry F. Furst within 14 days of the entry of this Order to assert individual claims on behalf of Relators Luis Santiago, Sr. and John Peck, and to include claims for retaliation against Luis Santiago, Jr. and John Honsberger, Sr by the Defendants; and it is further

**ORDERED**, that the arbitration clauses contained within the employment agreements for Relators Luis Santiago, Sr. and John Peck are hereby waived for the purposes of the instant litigation so that the individual claims of Luis Santiago, Sr. and John Peck may joined with the instant litigation and it is further

**ORDERED**, that a copy of the within Order shall be served on all parties within seven (7) days.

_____
J.S.C.

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR.; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>Plaintiffs,<br><br>vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION<br><br>**CERTIFICATE OF SERVICE** |

    I hereby certify that an original and two copies of the within Notice of Motion to Amend the Complaint, Certification of Henry F. Furst, Esq. with Exhibits, Letter Brief and proposed form of Order have on this day been forwarded for filing to the Civil Motions Clerk, Hudson County Courthouse, 583 Newark Avenue, Jersey City, New Jersey 07306 via FedEx Overnight, and a copy has been served upon:

<div align="center">

Ebonee N. Hamilton Lewis, Esq.
Littler Mendelson, P.C.
One Newark Center
1085 Raymond Blvd, 8th Floor
Newark, New Jersey 07102

</div>

via Email and Regular Mail.

<div align="center">-1-</div>

A Copy of these documents has also been served upon the Attorney General of the State of New Jersey by sending a copy to Deputy Attorney General Lorena Salzmann, Department of Law, 124 Halsey Street, 5th Floor, Newark, New Jersey 07101 via E-mail and Regular Mail.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.


Dated: May 8, 2012                          By: _____
                                                Joshua M. Lurie, Esq.

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | | |
|---|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | : : : : : | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY |
| | : | Docket No. HUD-L-4958-11 |
| Plaintiffs, | : : : : | CIVIL ACTION |
| vs. | : : : | CERTIFICATION OF HENRY F. FURST IN SUPPORT OF MOTION TO AMEND COMPLAINT |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | : : : : : | |
| Defendants. | : : | |

Henry F. Furst, Esq. certifies as follows:

1.     I am an Attorney-at-Law of the State of New Jersey, the principal attorney at the Law Office of Henry F. Furst, attorneys for the Relators/Plaintiffs.

2.     I provide this certification in support of the Relators/Plaintiffs Motion to Amend the Complaint pursuant to R. 4:9-1

3.     I have personal knowledge of the facts contained herein.

4.     This is a case filed pursuant to the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.* ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq.*

-1-

("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq.* ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq.* ("NJWPL").

5.      After numerous meetings with the Relators/Plaintiffs, a Complaint was drafted and filed with the Court, under seal, as required by N.J.S.A. 2A:32C-5.  The seal was to lift 60 days after filing.

6.      After the complaint was filed under seal, there were discussions with the Attorney General for the State of New Jersey regarding this matter.

7.      The Attorney General requested that the seal continue for additional time in order to evaluate the matter and determine whether to intervene.

8.      On January 19, 2012, the Attorney General's Office advised us that it would not be intervening in this matter.  However, they requested that we continue this litigation and keep them advised of the litigation's progress because they may intervene at a later date.

9.      On January 31, 2012, the Court Ordered the seal lifted allowing the Relators/Plaintiffs to serve the Defendants in this matter.

10.     A copy of the Order lifting the seal is attached hereto as Exhibit A.

11.     After the seal was lifted, we served the Defendants personally via Guaranteed Subpoena Service.  Service was effectuated against Defendant Haig Service Corp. on February 7, 2012 and against Defendant Richard D Haig, Jr. on February 8, 2012.

12.     Copies of the Affidavits of Service on Haig Service Corp. and Richard D. Haig, Jr. are attached hereto as Exhibit B.

13.     Subsequent to the service on the Defendants, I had numerous discussions with counsel for the Defendants, Ebonee Hamilton Lewis, Esq., regarding the fact that the

employment agreements signed by Relators Luis Santiago, Sr. and John Peck with Defendant Haig Service Corp. required arbitration of any employment disputes.

14.     My argument to Ms. Hamilton Lewis was that it would be best to litigate this matter in a single forum as the facts and circumstances are the same as those brought in the instant litigation. Having bifurcated, piecemeal litigation would risk inconsistent rulings by the Court and the Arbitrator related to discovery and/or other matters.

15.     Ms. Hamilton Lewis delayed giving me a responsive answer regarding the arbitration issue. To date, she has not advised me of the Defendants' position.

16.     Notwithstanding the delay in providing a substantive decision on the arbitration issue, Defendants served discovery upon the Plaintiffs/Relators, including Relators John Peck and Luis Santiago, Sr. which go straight to the heart of the claims not raised in the instant litigation, but which are relevant only to the discovery of facts which would be admissible in any arbitration related to overtime or the prevailing wage claims of the individual employees.

17.     Further, subsequent to the service on the Defendants, I was advised by Relators/Plaintiffs, Luis Santiago, Jr. and John Honsberger, Sr., the two Relators/Plaintiffs still currently employed by Defendant Haig Service Corp., that Defendant Haig Service Corp. has retaliated against them for their filing of the Complaint in this matter.

18.     On April 18, 2012, I filed an Order to Show Cause related to the retaliation which occurred against the Plaintiffs/Relators.

19.     On April 20, 2012, the Order to Show Cause was denied by the Hon. Peter F. Bariso, P.J.Civ.

20.     A copy of Judge Bariso's Order denying the Order to Show Cause is attached hereto as Exhibit C.

21.     Thereafter, on April 23, 2012, I attended a case management conference with my partner, Joshua M. Lurie, Esq. and Ms. Hamilton Lewis before the Hon. Martha T. Royster, J.S.C.

22.     During the case management conference, I discussed with Ms. Hamilton Lewis and Judge Royster the pending issue regarding arbitration clauses contained within the employment agreements between Relators Luis Santiago, Sr. and John Peck and Haig Service Corp.

23.     I raised the issue that <u>R.</u> 1:1-2, the rules should be relaxed in the interest of justice, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay and that all matters should be brought in a single forum.

24.     Ms. Hamilton Lewis did not object to my argument but was not authorized to waive the arbitration clause at that time.

25.     I then advised that I would  file the instant motion to amend the complaint to include the individual claims of Mr. Santiago, Sr. and Mr. Peck and allow Defendants to challenge the amendment based upon the arbitration clause if they desired.

26.     Attached hereto as Exhibit D is Plaintiffs/Relators proposed Amended Complaint.

27.     I request that the Court permit the Plaintiffs/Relators to file this Amended Complaint within 14 days of the entry of this Order because the causes of action are meritorious and litigation in one forum will avoid the problems associated with piecemeal litigation.

28.     The exhibits attached hereto are true and accurate copies of what they purport to be.

-4-

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Henry F. Furst, Esq.

Dated: May 8, 2012

**EXHIBIT A**

**EXHIBIT A**

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY
DIVISION OF LAW
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, New Jersey 07102

**FILED**

JAN 31 2012

PETER F. BARISO, JR., P.J.Cv.

    BY:  Lorena L. Salzmann
        Deputy Attorney General
        (973) 648-3183

| | |
|---|---|
| STATE OF NEW JERSEY, ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO JR., JOHN PECK AND JOHN HONSBERGER, SR., LUIS SANTIAGO, JR. (INDIVIDUALLY) AND JOHN HONSBERGER, SR. (INDIVIDUALLY), Plaintiffs, vs. HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPPORATION; RICHARD D. HAIG, Jr. and CHRISTOPHER BERNARD, Defendants. | SUPERIOR COURT OF NEW JERSEY- LAW DIVISION HUDSON COUNTY CIVIL ACTION DOCKET NO. HUD-L-4958-11 **UNSEALING ORDER** (FILED UNDER SEAL OF N.J.S.A. 2A:32C-5) |

    The State of New Jersey ("New Jersey") through its counsel, Jeffrey S. Chiesa, Attorney General of New Jersey ("the Attorney General") (Lorena L. Salzmann, Deputy Attorney General, appearing), having filed its Notice of Election to Decline Intervention pursuant to N.J.S.A. 2A:32C-5(g)(2), the Court rules as follows:

IT IS on this  31st  day of _____Jan._____, 2012;

    ORDERED that the Complaint, New Jersey's Notice of Election to Decline Intervention, and this Order be unsealed and served upon the defendants by the Relator; and it is further

    ORDERED that the Clerk of the Court shall administratively reopen the above action; and it is further

ORDERED that the seal be lifted as to all other matters occurring in this action after the date of this Order; and it is further

ORDERED that Relator may maintain the instant action in the name of the State of New Jersey; provided, however, that the action may be *voluntarily* dismissed only if ~~the Court and~~ the Attorney General of New Jersey give written consent to the dismissal and their reasons for consenting; and it is further

ORDERED that pursuant to N.J.S.A. 2A:32C-6(f), all subsequent pleadings, including supporting memoranda, filed in this action must be served upon the Attorney General; *by Pl's Counsel* and it is further

ORDERED that New Jersey may order any deposition transcript or intervene in this action, for good cause, at any time; and it is further

ORDERED that all Orders of this Court in this action shall be *served upon* ~~sent to~~ the Attorney General; *by Pl's Counsel* and it is further

ORDERED that should either the Relator or the defendants propose that this action be dismissed, settled, or otherwise discontinued, ~~the Court will solicit~~ *Pl's Counsel shall solicit* the written consent of the Attorney General before/ruling *any* ~~on granting its approval.~~ *by the Court.*

Honorable Peter F. Bariso, P.J.Civ.

RECEIVED

JAN 27 2012

CIVIL CASE
MANAGEMENT OFFICE

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY
DIVISION OF LAW
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, New Jersey 07102

**FILED**
TEAM #2

JAN 27 2012

BY: Lorena L. Salzmann
Deputy Attorney General
(973) 648-3183

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #5

```
------------------------------------:
STATE OF NEW JERSEY, ex rel. LUIS    :
SANTIAGO, SR., LUIS SANTIAGO JR.,    :
JOHN PECK AND JOHN HONSBERGER,       :
SR., LUIS SANTIAGO, JR. (INDIVIDUALLY):
AND JOHN HONSBERGER, SR. (INDIVIDUALLY),:
          Plaintiffs,                :
                                     :
     vs.                             :
                                     :
HAIG'S SERVICE CORPORATION (a New    :
Jersey Corporation) d/b/a HAIG SERVICE:
CORPPORATION; RICHARD D. HAIG, Jr. and:
CHRISTOPHER BERNARD,                 :
          Defendants.                :
                                     :
------------------------------------:
```

SUPERIOR COURT OF NEW
JERSEY- LAW DIVISION

HUDSON COUNTY
CIVIL ACTION
DOCKET NO. HUD-L-4958-11

**NOTICE OF ELECTION
TO DECLINE INTERVENTION**

(FILED UNDER SEAL OF
N.J.S.A. 2A:32C-5)

Pursuant to the New Jersey False Claims Act, N.J.S.A. 2A:32C-5(g)(2), the State of New Jersey ("New Jersey") hereby notifies the Court of its decision not to intervene in this action; therefore, "the seal shall be lifted and the person bringing the action shall have the right to conduct the action."

Although New Jersey declines to intervene, it respectfully refers the Court to N.J.S.A. 2A:32C-5(b) and (c) and 2A:32C-6(f), which allow the Relator to maintain the action in the name of New Jersey; providing, however, that "the action may be voluntarily dismissed by the person bringing the action if the Attorney General gives written consent to the dismissal along with the reason for

consenting, and the court approves the dismissal." <u>N.J.S.A.</u>
2A:32C-5(c).

Therefore, New Jersey requests that, should either the Relator
or the defendants propose that this action be dismissed, settled,
or otherwise discontinued, this Court solicit the written consent
of the Attorney General before ruling or granting its approval.

Furthermore, pursuant to <u>N.J.S.A.</u> 2A:32C-6(f), New Jersey
requests that all pleadings filed in this action be served upon the
Attorney General; New Jersey also requests that Orders issued by
the Court be sent to the Attorney General. Additionally, New
Jersey reserves its right to order any deposition transcripts and
to intervene in this action, for good cause, at a later date.

A proposed order accompanies this Notice.

Respectfully submitted,

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY

By:  Lorena L. Salzmann
     Lorena L. Salzmann
     Deputy Attorney General

E
X
H
I
B
I
T

B

**EXHIBIT B**

201202031 01232

STATE OF NEWJERSEY EX REL., ET AL

Plaintiff

vs.

HAIG'S SERVICE CORPORATION, A NJ CORPORATION D/B/A HAIG
SERVICE CORPORATION, ET AL

Defendant

Person to be served (Name and Address):
HAIG'S SERVICE CORPORATION, A NJ CORPORATION D/B/A HAIG
SERVICE CORPORATION
211A US HWY 22 EAST
GREEN BROOK TWP.  NJ  08812
By serving: HAIG'S SERVICE CORPORATION, A NJ CORPORATION D/B/A
HAIG SERVICE CORPORATION

Attorney: HENRY F FURST, ESQ

Papers Served: SUMMONS, COMPLAINT, CIS, EXHIBITS

Service Data:    [X] Served Successfully        [ ] Not Served

Date/Time:    02/06/2012  12:56PM    _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age
residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

Superior Court Of New Jersey

HUDSON Venue

Docket Number: HUD L 4958 11

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ ___.___

Attempts:    Date/Time: _____
             Date/Time: _____
             Date/Time: _____

Name of Person Served and relationship/title:

ATISHA BETHEA _____

AUTHORIZED AGENT _____

Description of Person Accepting Service:

SEX: F   AGE: 21-35   HEIGHT: 5'4"-5'8"   WEIGHT: 131-160 LBS.   SKIN: BLACK   HAIR: RED   OTHER: _____

Unserved:
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] No response on:    Date/Time: _____
                       Date/Time: _____
                       Date/Time: _____

Other:

Served Data:
Subscribed and Sworn to me this

___07___ day of _____, 20_12_

Notary Signature: _____

JACKELINE GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 15, 2015

_____
Commission Expiration

I, NUNO VEIGA,
was at the time of service a competent adult, over
the age of 18, and not having a direct interest in the
litigation. I declare under penalty of perjury that the
foregoing is true and correct.

_____    02/07/2012
Signature of Process Server    Date

Name of Private Server: NUNO VEIGA  Address: 2009 Morris Avenue UNION, NJ 07083  Phone: (800) PROCESS



```
2 0 1 2 0 2 0 3 1 0 1 3 0 5
```

STATE OF NEWJERSEY EX REL., ET AL

                                                    Plaintiff
                        vs.
HAIG'S SERVICE CORPORATION, A NJ CORPORATION D/B/A HAIG
SERVICE CORPORATION, ET AL

                                                    Defendant

Superior Court Of New Jersey

HUDSON Venue

Docket Number: HUD L 4958 11

Person to be served (Name and Address):
RICHARD D HAIG, JR
11 PRESIDENTS DR
BRIDGEWATER NJ 08807
By serving: RICHARD D HAIG, JR

Attorney: HENRY F FURST, ESQ

Papers Served: SUMMONS, COMPLAINT, CIS, EXHIBITS

Service Data:   [X] Served Successfully        [ ] Not Served

Date/Time:   02/07/2012 06:25PM        _____

[X] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age
residing therein (indicate name & relationship at right)

[ ] Left a copy with a person authorized to accept service, e.g. managing agent,
registered agent, etc. (indicate name & official title at right)

## AFFIDAVIT OF SERVICE
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.___

Attempts:      Date/Time: 02/06/2012 05:22PM
               Date/Time: _____
               Date/Time: _____

Name of Person Served and relationship/title:

RICHARD D HAIG, JR _____

SELF _____

**Description of Person Accepting Service:**

SEX: M   AGE: 36-50   HEIGHT: 5'4"-5'8"   WEIGHT: 131-160 LBS.   SKIN: WHITE   HAIR: BROWN   OTHER: _____

Unserved:
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[X] No response on:       Date/Time: 02/06/2012 05:22PM
                          Date/Time: _____
                          Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this
___08___ day of ___Feb___ , 20 _12_

Notary Signature: _____

JACKELINE GONZALEZ
Name of Notary
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Dec. 15, 2015

_____
Commission Expiration

I, NUNO VEIGA,
was at the time of service a competent adult, over
the age of 18 and not having a direct interest in the
litigation. I declare under penalty of perjury that the
foregoing is true and correct.

_____        02/08/2012
Signature of Process Server    Date

Name of Private Server: NUNO VEIGA Address: 2009 Morris Avenue UNION, NJ 07083 Phone: (800) PROCESS



E
X
H
I
B
I
T

C

**EXHIBIT C**

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

**FILED**

APR 2 0 2012

PETER F. BARISO, JR., A.J.S.C.

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR.; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>Plaintiffs,<br><br>vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION<br><br>*Order Denying*<br><br>ORDER TO SHOW CAUSE WITH RESTRAINTS PURSUANT TO R. 4:52 |

THIS MATTER being brought before the Court by The Law Office of Henry F. Furst,

attorneys for Plaintiffs/Relators, STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR.,

LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR.,

(individually); and JOHN HONSBERGER, SR. (individually) (hereafter referred to collectively

as "Relators"), seeking relief by way of temporary restraints pursuant to R. 4:52, based upon the

facts set forth in the Certification of Henry F. Furst, Esq., the Certification of John Honsberger,

Sr., the Certification of Luis Santiago, Jr., and Letter Brief filed herewith; and it appearing that

the Defendants have notice of this application ~~and for good cause shown~~;

It is on this 10th day of ~~April~~, 2012

-1-

**ORDERED** that Defendants HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and their employees and agents (hereafter referred to collectively as "Defendants"), appear and show cause before the Superior Court at the Hudson County Courthouse in Jersey City, New Jersey at _____ o'clock in the forenoon or as soon thereafter as counsel can be heard, on the ___ day of April, 2012 or as soon as possible, why an order should not be issued preliminarily enjoining and restraining Defendants, from:

A. Retaliating against Relators for filing a Complaint in the Superior Court of New Jersey alleging violations of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 et seq. ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq. ("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 et seq. ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a et seq. ("NJWPL");

B. Reducing Relators' hours, removing assistants, taking away corporate vehicles, and other acts changing their conditions of employment as a result of their filing a Complaint in the Superior Court of New Jersey alleging violations of the NJFCA, NJPWA, FLSA and NJWPL.

C. Granting such other relief as the court deems equitable and just.

And it is further **ORDERED** that pending the return date herein, Defendants are enjoined and restrained from:

A. Retaliating against Relators for filing a Complaint in the Superior Court of New Jersey alleging violations of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 et seq. ("NJFCA"), the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq. ("NJPWA"), Federal Fair Labor Standards Act, 29 U.S.C. § 601 et seq. ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a et seq. ("NJWPL");

-2-

B.  Reducing Relators' hours, removing assistants, taking away corporate vehicles, and other acts changing their conditions of employment as a result of their filing a Complaint in the Superior Court of New Jersey alleging violations of the NJFCA, NJPWA, FLSA and NJWPL.

C. Granting such other relief as the court deems equitable and just.

And it is further **ORDERED** that:

1. The Defendants may move to dissolve or modify the temporary restraints herein contained on two (2) days notice to Relators' Attorney.

2. A copy of this order to show cause, and supporting certifications submitted in support of this application be served upon the Defendants within ____ days of the date hereof, in accordance with R. 4:4-3 and R. 4:4-4, this being original process.

3. Relators must file with the court their proof of service of the pleadings on the Defendants no later than three (3) days before the return date.

4. Defendants shall file and serve a written response to this order to show cause and the request for entry of injunctive relief and proof of service by _____, 20__. The original documents must be filed with the Clerk of the Superior Court in the county listed above. A list of these offices is provided. You must send a copy of your opposition papers directly to Judge _____, whose address is _____, New Jersey. You must also send a copy of your opposition papers to Relators' attorney whose name and address appears above. A telephone call will not protect your rights; you must file your opposition and pay the required fee of $ _____ and serve your opposition on your adversary, if you want the court to hear your opposition to the injunctive relief the plaintiff is seeking.

5. Relators must file and serve any written reply to the Defendants' order to show cause opposition by _____, 20__. The reply papers must be filed with the Clerk of the

-3-

Superior Court in the county listed above and a copy of the reply papers must be sent directly to the chambers of Judge _____.

6. If Defendants do not file and serve opposition to this order to show cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that Relators file a proof of service and a proposed form of order at least three days prior to the return date.

7. If Relators have not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than three (3) days before the return date.

8. If you cannot afford an attorney, you may call the Legal Services office in the county in which you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

9. The Court will entertain argument, but not testimony, on the return date of the order to show cause, unless the court and parties are advised to the contrary no later than ____ days before the return date.

IT IS FURTHER ORDERED THAT A COPY OF THIS ORDER BE SERVED ON ALL PARTIES WITHIN __2__ DAYS OF THE DATE OF THIS ORDER.

_opposed_

PETER F. BARISO, JR., A.J.S.C.

_for $ reasons placed on the record on 4/20/12._

–4–

E
X
H
I
B
I
T

D

**EXHIBIT D**

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, SR. (individually); JOHN PECK (individually); LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>Plaintiffs,<br><br>vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; JAMES O'NEAL; and CHRISTOPHER BERNARD<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

The Plaintiffs, the State of New Jersey, ex rel. Luis Santiago, Sr., Luis Santiago, Jr., John Peck, and John Honsberger, Sr.; Luis Santiago, Sr., Luis Santiago, Jr., John Peck and John Honsberger, Sr., by way of Amended Complaint against the Defendants, Haig's Service Corporation d/b/a Haig Service Corporation, Richard D. Haig, Jr., James O'Neal and Christopher Bernard, say:

-1-

## **INTRODUCTION**

1.    This is an action to recover damages and civil penalties on behalf of the State of New Jersey arising from false statements and claims made and presented by the Defendants or their agents and/or employees in violation of the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.* ("NJFCA").

2.    The violations consist of misrepresentations, knowing omissions of material facts and failure to apply funds for their sole intended purpose in connection with State funds provided the Defendants.

3.    The NJFCA is the State of New Jersey's equivalent of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*  The NJFCA provides that any person who knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval shall be liable for a civil penalty of between $5,000 and $10,000 for each such claim submitted or paid, plus three times the amount of the damages sustained by the State.

4.    This Complaint is filed under seal for 60 days (without service on the Defendants during that period) to enable the State: (a) to conduct its own investigation without the Defendants' knowledge, and (b) to determine whether to join the action.

5.    The essence of the false claims fraud discovered by Plaintiffs/Relators is that the Defendants bid for and received fire and/or burglar protection service contracts from various governmental entities in the State, which received State funds.  Pursuant to the contracts, the Defendants were to pay their employees "prevailing wages" as required by contract and the Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq.*

6. The Defendants certified that they were, in fact, paying their employees who performed work on these contracts, such as the Plaintiffs/Relators, prevailing wages. However, Defendants concocted an illegal compensation system and otherwise diverted the State funds to themselves instead of paying their employees, including Plaintiffs/Relators, thereby defrauding the State of New Jersey.

7. Not only was this fraud perpetuated against the named Plaintiffs/Relators, this scheme has been ongoing for many years and the Defendants have perpetuated the fraud against the State by failing to pay prevailing wages to other employees.

8. Pursuant to the NJFCA, Plaintiffs/Relators seek to recover, on behalf of the State of New Jersey, damages and civil penalties arising from the Defendants' fraudulent acts.

9. The Plaintiffs/Relators also bring individual claims because they have not been paid their prevailing wages as required pursuant to N.J.S.A. 34:11-56.40.

10. In addition to the NJFCA claims and individual prevailing wage claims, Plaintiffs/Relators have worked hours in excess of 40 per workweek without being paid all their over time hours at time and one half as required by the Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq.* ("FLSA") and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq.* ("NJWPL").

11. Rather than paying the time and a half rate required by the FLSA and NJWPL, Defendants promised to provide "comp time" and apply the additional hours to the following week's work. However, this alternative method of payment is a violation of both the FLSA and NJWPL.

12.   Rather than even provide "comp time", in these subsequent weeks, Plaintiffs/Relators were not provided time off or paid the required additional hours and often worked additional time beyond 40 hours in the subsequent workweek.

## PARTIES

13.   Plaintiff and Relator, Luis Santiago, Sr. ("Santiago, Sr."), was a technician for the Defendants.  He was terminated in early 2012.  As part of his employment, he worked on prevailing wage and non-prevailing wage jobs.  He was to be paid a base salary of $60,000.00 per year and was underpaid as set forth in detail below.  In addition, on numerous occasions, he worked in excess of 40 hours in a workweek without being paid all overtime as required by law.  Further, he voluntarily waived his health insurance in return for a payment of $250.00 per month which was not received.

14.   Plaintiff and Relator, John Peck ("Peck"), was a technician for the Defendants.  He was terminated in early 2012.  As part of his employment, he worked on prevailing wage and non-prevailing wage jobs.  In addition, on numerous occasions, he worked in excess of 40 hours in a workweek without being paid overtime as required by law.

15.   Plaintiff and Relator, Luis Santiago, Jr. ("Santiago, Jr."), is a technician for the Defendants.  As part of his employment, he works on prevailing wage and non-prevailing wage jobs.  In addition, on numerous occasions, he worked in excess of 40 hours in a workweek without being paid overtime as required by law.

16.   Plaintiff and Relator, John Honsberger, Sr. ("Honsberger"), is a technician for the Defendants.  As part of his employment, he works on prevailing wage and non-prevailing wage jobs.  In addition, on numerous occasions, he worked in excess of 40 hours in a workweek without being paid overtime as required by law.

17.  Defendant Haig's Service Corporation d/b/a Haig Service Corporation ("Haig Service Corp.") is a privately held company, incorporated in, and pursuant to the laws of, the State of New Jersey, with its principal headquarters located at 211A US Hwy 22 East, Green Brook, New Jersey 08812.

18.  Defendant Richard D. Haig, Jr. ("Haig, Jr.") is a private citizen and is the owner and Chief Executive Officer of Defendant Haig Service Corp.  He resides at or is otherwise servable at 11 Presidents Drive, Bridgewater, New Jersey 08807.

19.  Defendant Christopher Bernard ("Bernard") is a private citizen and is the Vice President of Defendant Haig Service Corp.  He is servable at 211A US Hwy 22 East, Green Brook, New Jersey 08812.

20.  Defendant James O'Neal ("O'Neal") is a private citizen and the new President of Defendant Haig Service Corp.  He is servable at 211A US Hwy 22 East, Green Brook, New Jersey 08812.

## FACTUAL BACKGROUND

21.  At all relevant times, Defendant Haig's Service Corp. operated and continues to operate a fire and security/burglar alarm corporation which supplies the following services to their customers:

      a.  Integrated Building Systems;

      b.  Fire/Life Safety Systems;

      c.  Video Detection/CCTV Systems;

      d.  Intrusion Alarm Systems;

      e.  Central Station Monitoring;

      f.  Access Control Systems;

      g.  IP-Based Systems;

      h.  Secure Date Management;

      i.  Web Services; and

      j.  The related Service and Maintenance for these services.

22.  A copy of Defendant Haig Service Corp.'s website stating the services that Haig provides is attached hereto as Exhibit A.

23.  Plaintiffs/Relators are all/were technicians for the Defendants and paid an hourly wage, some pursuant to oral agreement, while others work pursuant to a written signed, contract.

24.  As set forth in detail below, Santiago, Sr. was not supposed to be paid an hourly rate, rather his contract stated that he would be paid a base salary of $60,000.00 per year.  However, he was paid hourly.

25.  The work provided by the Plaintiffs/Relators requires significant skills and knowledge of the systems serviced by Haig Service Corp.

26. Plaintiffs/Relators have not invested any capital into Haig Services Corp., nor do their duties include managerial responsibilities or the exercise of independent managerial judgment.

27. Rather, Plaintiffs/Relators are sent out on installation, maintenance or service calls on behalf of the Defendants and instructed to perform certain tasks on the Defendants' behalf.

28. Plaintiffs/Relators, Luis Santiago, Sr. and John Peck, were provided with a compensation program as part of their employment with Haig Service Corp. Later, after the filing of the original Complaint in this matter, Santiago, Jr. was provided with the same compensation program as part of his employment with Haig Service Corp.

29. Pursuant to the compensation program under which Santiago, Sr. and Peck were employed, they are paid a minimum wage, initially $7.15 per hour, and advanced additional amounts based upon anticipated work on prevailing wage jobs. The amounts are to be reconciled quarterly, as set forth in the Compensation Program at Paragraph B:

> B.     <u>Estimated Prevailing Wage Draw & Reconciliation</u>
>
> *Some* of the work you perform for *some* of the Company's customers (e.g. some public entities, such as schools) is subject to a higher wage rate – or *prevailing wage* – as mandated by State law. To avoid the extraordinary time and expense that would be required to review service tickets each pay period to determine the amount of your time spent on prevailing wage work, the Company provides each of its technicians, in advance, with an *estimated prevailing wage draw*. The *estimated prevailing wage draw* is calculated by multiplying the number of hours of prevailing wage work the Company anticipates (based on historical dates) you will bill in the quarter times the incremental wages you would earn for such work. Incremental wages are determined by subtracting from the applicable prevailing wage rate amounts paid to you in hourly wages, as well as allowable deductions for fringe benefits you receive, such as but not limited to paid sick and vacation time, holidays, etc. Thus, if the Company anticipates you will bill thirty (30) hours of prevailing wage work in the first quarter, and the incremental wages due to you equal $20.00 per hour, your total draw for that quarter would be $6,000, less taxes and applicable deductions. This amount would be paid in equal increments throughout that quarter.

**The Company will reconcile its prevailing wage draw program at the end of every quarter**. If you have performed more prevailing wage work than estimated, you will be paid in incremental wages due for prevailing wage hours billed. If you have worked less prevailing wage work than estimated, you are not required to return the difference. This amount will, however, be applied towards prevailing wage hours billed in subsequent quarters within the same calendar year. If appropriate, your draw amount may be raised in future pay periods to better reflect the number of prevailing wage hours likely to be billed. It is the Company's intention to manage the draw program in such a way as to minimize draw payments at the end of a quarter. (bold added.)

30. A copy of the Compensation Program is attached hereto as Exhibit B.

31. Plaintiff/Relator Santiago, Jr. was coerced into signing an employment agreement after the initial complaint in this matter was filed. He was informed that if he did not sign the agreement, he would be fired.

32. Plaintiff/Relator Honsberger has not signed an employment agreement and therefore is not subject to the compensation adjustment program set forth in ¶ 29 above.

33. The majority of work performed by the Plaintiffs/Relators during any given year is on prevailing wage jobs, including many on public schools throughout the State.

34. Notwithstanding this language as set forth in ¶ 29 above, Haig Service Corp. never provides the promised reconciliation along with the additional wages due to or from the Plaintiffs/Relators to its employees.

35. Rather, the Plaintiffs/Relators are paid a set salary which never changes, except for minor, occasional adjustments for some overtime work which are not ordinarily paid at the time and a half as required pursuant to the FLSA and NJWPL. As examples: Plaintiff/Relator Peck was paid a gross salary of $1,884.62 per pay period; Plaintiff/Relator Santiago, Jr. is paid $15.00 per hour and when he works overtime, it is most often paid at a flat rate, not time and a half; and

-8-

Plaintiff/Relator Honsberger is paid $21.50 per hour, occasionally is paid overtime, but usually at a flat rate, but during most pay periods is paid a net salary of $1,331.67 per pay period. These amounts paid do not vary quarter to quarter, as it should, if a reconciliation of the wages due to prevailing wage rates is undertaken.

36. Plaintiffs/Relators brought the failure to pay prevailing wages and underpayment of overtime directly to Defendant Haig, Jr. who told them that he will look into it.

37. Despite the request to review the underpayments and the promise he made to investigate it, Defendant Haig, Jr. never provided a substantive response to Plaintiffs/Relators about the prevailing wages or overtime pay due to them.

38. Notwithstanding the representation of Haig, Jr. that he will investigate the failure to account for the prevailing wages not being paid, no reconciliation of the prevailing wage draw and no additional payment due was ever provided to Plaintiffs/Relators.

### Special Issues Related to Santiago, Sr.

39. As discussed above, Plaintiff/Relator Santiago Sr. agreed to forgo his health insurance with Defendant Haig in return for $250.00 per month in compensation which he never received.

40. Between the years of 2008 and 2010, he was not paid the $250.00 monthly.

41. Santiago Sr. brought this underpayment to the attention of Defendant Haig, Jr. numerous times and was told that Haig, Jr. would look into the issue.

42. In 2011, the matter was corrected going forward, but the back payments of $250.00 per month were never made.

43.   Also, pursuant to the employment agreement which he had with Haig, Santiago, Sr. was to be a "Field Service Supervisor" and was to be paid a base salary of $60,000.00 per year.

44.   During each pay period (biweekly), Santiago, Sr. was paid a bass salary of $2,076.92.

45.   When this amount is multiplied by 26 to cover the entire year, Santiago, Sr. was only paid $53,999.92 or more than $6,000.00 less than he was to be paid pursuant to his contractual base salary.

46.   Notwithstanding that he was identified on his employment agreement as a supervisor, he was never given any supervisory responsibilities and was identified on certified payrolls and other company documents as a technician.

47.   Santiago, Sr.'s employment agreement states that he is to be paid $60,000.00 per year as a base salary, yet in other places it states that he is to be paid $7.15/per hour and receive prevailing wages.

## The Contracts For Prevailing Wage Jobs

48.   Haig Service Corp. provides services to many public entities in New Jersey that receive State Funds as defined in the NJFCA, including, but not limited to, the following, each of which is typical of the manner in which Haig Service Corp. perpetrated the scheme to defraud the State of New Jersey by failing to pay prevailing wage to its employees:

A.   Burlington County Freeholder's Office.

49.   On or about March 30, 2010, Defendants signed an agreement with the County of Burlington Freeholder's Office to provide services to their Human Services Building and associated labor.

50.   A copy of the Agreement with the County of Burlington Freeholder's Office is attached hereto as Exhibit C.

51.   The agreement, Exhibit C, required that prevailing wages be paid to Plaintiffs/Relators at a rate of $80.00/hour.

52.   Haig Service Corp. employees who worked on this job did not receive all of their prevailing wages from this contract with the County of Burlington Freeholder's Office.

53.   There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages from the County of Burlington Freeholder's Office

54.   No reconciliation of the payment of prevailing wages for this job was ever provided to the Haig employees who performed work on it for Haig Service Corp.

-11-

B.      Carteret Board of Education

55.   On June 30, 2010, the Carteret Board of Education hired Defendants to provide the "Replacement of the Fire Alarm System at Carteret Middle School."

56.   A copy of the Carteret Board of Education agreement to hire Defendants is attached hereto as Exhibit D.

57.   As part of the bid proposal, Defendants agreed that they would pay its employees who performed work on this job prevailing wage.

58.   A copy of Defendants' bid for the Carteret Board of Education job is attached hereto as Exhibit E.

59.   Defendants certified to the State of New Jersey that they were paying their employees prevailing wages for work at the Carteret Board of Education.

60.   Copies of certifications to the State of New Jersey falsely certifying that Defendants were paying prevailing wages to Employees of the Defendants is attached hereto as Exhibit F.

61.   These false Certifications are signed by Defendant Haig, Jr.

62.   There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages from this job for the Cartaret Board of Education provided to Haig employees who performed work on this job.


C.      Montclair Township Board of Education:

63.   On May 3, 2011, Defendants entered into a contact with the Montclair Township Board of Education to perform services.

64.   A copy of the contact with the Montclair Township Board of Education is attached hereto as Exhibit G.

-12-

65. Pursuant to Article 13 of the contract with the Montclair Township Board of Education, Defendants agreed to pay prevailing wages.

66. Defendants certified to the State of New Jersey that they were paying their employees prevailing wages.

67. Copies of certifications to the State of New Jersey indicating that Defendants were paying prevailing wages to its employees who worked on this job are attached hereto as Exhibit H.

68. The certifications are signed by Defendant Bernard.

69. Haig Service Corp. employees did not receive all of their prevailing wages from this job for the Montclair Township Board of Education.

70. There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages provided to Haig Service Corp. employees who performed work on this job for the Montclair Township Board of Education.


D.    Plainfield Board of Education:

71. On February 15, 2010, Defendants bid, and eventually were awarded a contract to provide their services to the Plainfield Board of Education.

72. A copy of the Bid cover sheet for the bid with the Plainfield Board of Education is attached hereto as Exhibit I.

73. As part of the agreement with the Plainfield Board of Education, Defendants agreed to pay prevailing wages to their employees, such as Plaintiffs/Relators.

74. Defendants certified to the State of New Jersey that they were paying their employees prevailing wages.


-13-

75.  Copies of certifications to the State of New Jersey indicating that Defendants were paying prevailing wages to its employees are attached hereto as Exhibit J.

76.  The certifications are signed by Defendants Haig, Jr. and Bernard.

77.  Haig Service Corp. employees did not receive all of their prevailing wages from this job for the Plainfield Board of Education.

78.  There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages from this job for the Plainfield Board of Education provided to Haig employees who performed work on this job.

E.    Other Contracts where Prevailing Wages were not paid:

79.  In addition to the aforesaid municipalities where Defendants had contracts to provide services and agreed to pay prevailing wages, there have been numerous other public contracts which Defendants entered into in which Defendants agreed to provide services and pay their employees at a prevailing wage.  These include, but are not limited to:

    a.  The Woodbridge, New Jersey Board of Education;

    b.  The New Jersey Transit, Newark;

    c.  The Pleasantville, New Jersey public schools;

    d.  The Old Bridge, New Jersey Board of Education;

    e.  The South Brunswick, New Jersey public schools;

    f.  The Paterson, New Jersey Public Schools;

    g.  The Township of Middletown, New Jersey public schools;

    h.  The Morris County building containing the New Jersey Courts;

    i.  The Burlington County building containing the New Jersey Courts; and

      j.   The Jersey City, New Jersey Housing Authority.

80.   Attached hereto as Exhibit K are copies of various contracts, bid proposals, and other associated documents which evidence that Defendants entered into agreements with these public entities whereby they would be required to pay prevailing wages.

81.   Haig Service Corp. employees did not receive all of their prevailing wages from these jobs.

82.   There was no reconciliation of the prevailing wage draw to compensate for the prevailing wages for these jobs provided to Haig employees who performed work on them.

83.   A more complete list of contracts and submissions falsely certifying that Haig Service Corp. paid its employees prevailing wages are contained on the internal computer network maintained by Haig Service Corp. to which Haig employees are provided limited access.

84.   Defendants place numerous bids for work with governmental entities that receive State funds on the website "Educational Data Services" which has a URL of http:// www.ed-data.com/.  Additional bids where the Defendants promised and/or contracted that they would provide prevailing wages, but failed to do so, can be found on this website.

85.   Defendants utilize a software program called "Sedona" which allows its employees, including Plaintiffs/Relators, to enter their time and ascertain how much is spent on prevailing wage jobs and non-prevailing wage jobs.

**Retaliation by Haig**

86.   The initial Complaint in this matter was filed under seal, pursuant to N.J.S.A. 2A:32C-5 (c) on September 28, 2011.

87.   On January 31, 2012, the Hon. Peter F. Bariso, Jr., P.J.Civ. entered an Order lifting the seal and allowing Plaintiffs/Relators to serve a copy of the Complaint upon the Defendants.

88.   The Complaint was served upon the Defendants by Personal Service on February 7 and February 8, 2012.

89.   Thereafter, the Defendants began retaliation against the Plaintiffs/Relators who were still employed by the Defendants – Honsberger and Santiago, Jr.

90.   Initially, shortly after the Complaint was served, Honsberger and Santiago, Jr., who had been working as technicians during the day shift for nearly their entire careers with Haig were told that they were being transferred to the night shift.   When they objected, Haig eventually relented.

91.   Later, Defendant O'Neal berated Honsberger with the use of foul language, specifically stating the retaliation was because he had filed the Complaint in this matter while still employed by Haig.

92.   Defendants have been begun attempting to limit the hours of work available for Honsberger by attempting to send him home early in the day on several occasions.

93.   Honsberger was demoted after the complaint was served.   Initially, he was a technician for Haig.   Then, after the service of the Complaint, he was informed that he did not deserve the prevailing wages and overtime because he was "an exempt employee."   Later, he was told that he was now a "helper" and that he would work on jobs with Santiago, Jr. who is now the "lead technician."

-16-

94.   Santiago, Jr. and Honsberger were informed that they would no longer be working service calls.  Santiago, Jr. and Honsberger were informed that they have been removed from the "on call" list.   When on call for a week, Santiago, Jr. and/or Honsberger would receive an additional $50.00 in compensation for being on call and then overtime payments for the time spent performing "on call" work.

95.   Santiago, Jr. and Honsberger were informed that one of them needed to return their company vehicles because of a "restructuring" occurring at Haig.  Honsberger has had his company vehicle for his entire tenure at Haig and Santiago, Jr. has had his company vehicle for a long time as well.

96.   Santiago, Jr. and Honsberger are the only "team" at Haig who were told that they needed to return their company vehicle.  There are other "teams" where each member still retains their company vehicle.

97.   Santiago, Jr. was informed by O'Neal that it should be Honsberger who should return his vehicle because he is now a "helper" and Santiago, Jr. is now the "lead technician."

98.   Honsberger returned his company vehicle, and has been told to utilize his own private vehicle for work related purposes.  He does not get compensation for using his private vehicle for work related purposes.

99.   Honsberger was ordered by Haig to return his company laptop which allowed him to access what jobs he was scheduled for and the rate he is to be paid for each job.  He complied with the order from Haig on April 26, 2012.

100.  He was told to return his computer because he is now a "helper."

101.  Without the work computer, he is unable to access his assignments, review the Sedona system, or enter time for the work performed.

102.  All of these actions by the Defendants have been done for the purpose of retaliating against Santiago, Jr. and Honsberger for their participation in this matter.  Mr. O'Neal stated these Plaintiffs/Relators are "F***ing stupid" for bringing this matter to the Courts while they are still employed.

## COUNT ONE
### (Violations of the NJFCA)
### (All Relators against All Defendants)

103. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 103 of this Complaint.

104. This is a claim for treble damages and forfeitures, interest and counsel fees under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.*

105. Through the acts described above, Defendants and their agents and employees knowingly:

    a.  Presented and caused to be presented fraudulent claims, records, and statements certifying payment of prevailing wages on multiple public jobs for public entities that received funds from the State of New Jersey; and

    b.  Failed to pay Plaintiffs/Relators prevailing wages for all hours worked pursuant to contracts with government entities requiring payment of prevailing wages

106. Through the acts described above and otherwise, Defendants and their agents and employees knowingly:

    a.  Made, used, or caused to be made or used false records and statements in order to get such false and fraudulent claims paid and approved by the State of New Jersey, County or municipal entities who are recipients of State Funds as defined in the NJFCA;

    b.  Made, used, and caused to be made or used false records and statements to conceal, avoid, and/or decrease Defendants' obligation to the Plaintiffs/Relators.

107. Defendants failed to disclose to the Government material facts – i.e., facts that had a natural tendency to influence or were capable of influencing the decision of government officials

whether to pay the submitted claims, that if disclosed would have resulted in substantial repayments by them to government entities as a result of the failure to pay prevailing wages.

108. The government entities were unaware of the falsity of the records, statements, and claims made or submitted by Defendants and their agents, and employees paid and continued to pay Defendants for claims that would not have been paid if the truth were known.

109. The governmental entities and their agents were unaware of Defendants' failure to disclose material facts that would have reduced government obligations, and they would not have not recovered funds but for Plaintiffs/Relators' disclosures.

110. By reason of the Defendants' false records, statements, claims, and omissions and the failure to make timely payments of the prevailing wages to the Plaintiffs/Relators, the government entities to which Haig Service Corp. provided services and false certifications have been damaged.

**WHEREFORE,** Plaintiffs/Relators pray for judgment against Defendants as follows:

a. That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the State of New Jersey and other governmental entities have sustained as a result of Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each violation of N.J.S.A. 2A:32C-1 *et seq.*;

b. That Plaintiffs/Relators be awarded the maximum amount allowed pursuant to N.J.S.A 32C-3;

c. That Plaintiffs/Relators be awarded all costs and expenses of this action, including attorneys' fees; and

d. That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT TWO
### (Failure to Pay the Prevailing Wage)
### (All Plaintiffs/Relators against All Defendants)

111. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 111 of this Complaint.

112. N.J.S.A. 34:11-56.40 concerning Wages on Public Work provides, in pertinent part, that "if any workman is paid less than the prevailing wage to which such workman is entitled under the provisions of this act, such workman may recover in a civil action the full amount of such prevailing wage less any amount actually paid to him or her by the employer, together with costs and such reasonable attorneys' fees. . ."

113. The Defendants willfully paid the Plaintiffs/Relators less than the prevailing wages and supplemental benefits to which Plaintiffs/Relators were entitled for the labor that they furnished to the Defendants.

114. As set forth above, rather than pay the prevailing wages, Defendants concocted a system to falsely certify that such payments were being made in order to deprive Plaintiffs/Relators of their prevailing wages and failed to reconcile and pay the prevailing wages in a timely manner.

115. Defendants continue to fail to pay the prevailing wages to the Plaintiffs/Relators.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.   An award of unpaid prevailing wages due under the Prevailing Wage Law;

b.   An award of prejudgment and post judgment interest;

c.   An award of reasonable attorney's fees and costs of suit;

d.   That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT THREE
### (Violations of the FLSA)
### (All Plaintiffs/Relators against All Defendants)

116. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 116 of this Complaint.

117. At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

118. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs/Relators within the meaning of the FLSA.

119. Upon information and belief, at all relevant times, Defendants have had annual gross revenue in excess of $500,000.00.

120. At all relevant times, the Defendants had a policy and practice of failing to pay overtime compensation to its technicians for their hours worked in excess of forty hours per workweek.

121. As a result of the Defendants' willful failure to compensate its employees, including the Plaintiffs/Relators, at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, the Defendants have violated, and continue to violate, the FLSA, including 29 U.S.C. §§ 207(a)(1) and 215(a).

122. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a)

123. Due to the Defendants' FLSA violations, the Plaintiffs/Relators are entitled to recover from the Defendants their unpaid overtime compensation, an additional amount equal as

liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorney's fees, and costs of suit pursuant to 29 U.S.C. § 216(b).

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.  An award of unpaid overtime compensation due under the FLSA;

b.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

c.  An award of prejudgment and post judgment interest;

d.  An award of reasonable attorney's fees and costs of suit;

e.  That the State of New Jersey and other governmental entities and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

### COUNT FOUR
#### (Violations of the NJWPL)
#### (All Plaintiffs/Relators against All Defendants)

124.  Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 124 of this Complaint.

125.  At all relevant times, Plaintiffs/Relators were employed by the Defendants within the meaning of the NJWPL.

126.  Defendant willfully violated Plaintiffs/Relators' rights by failing to pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

127.  Due to the Defendants' NJWPL violations, Plaintiffs/Relators are entitled to recover from the Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs of suit pursuant to the NJWPL.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a. An award of unpaid overtime compensation due under the NJWPL;

b. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to NJWPL;

c. An award of prejudgment and post judgment interest;

d. An award of reasonable attorney's fees and costs of suit;

e. That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT FIVE
### (Breach of Contract)
### (Plaintiff/Relator Santiago, Sr. against Haig and Haig, Jr.)

128. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 128 of this Complaint.

129. Defendants Haig Jr. and Haig breached the contract with Santiago, Sr. as set forth at length above.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a. An award of compensatory damages for the amounts owed to Santiago, Sr. from Haig for failing to pay all wages owed and the amounts in back pay for health insurance premiums which Santiago, Sr. agreed to forgo in return for additional compensation;

b. An award of punitive damages; and

c. That the Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT SIX
### (Retaliation in Violation of the New Jersey False Claims Act)
### (Plaintiffs/Relators Santiago, Jr. and Honsberger against All Defendants)

130. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 130 of this Complaint.

131. The Plaintiffs/Relators brought this instant action against the Defendants.

-24-

132.  Subsequent to the service of the Complaint, the Defendants began retaliating against Honsberger and Santiago, Jr. as set forth above.

133.  Pursuant to N.J.S.A. 2A:32C-10(b):

> No employer shall discharge, demote, suspend, threaten, harass, deny promotion to, or in any other manner discriminate against an employee in the terms and conditions of employment because of lawful acts done by the employee on behalf of the employee or others in disclosing information to a State or law enforcement agency or in furthering a false claims action, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this act.

134.  Due to these acts of retaliation by the Defendants, Santiago, Jr. and Honsberger have been damaged or otherwise harmed.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.  A reinstatement of Honsberger to his senior position;

b.  Reinstatement of all fringe benefits of employment, including a return of the corporate vehicle;

c.  An award of back pay and interest on any compensation lost as a result of the retaliation;

d.  An award of Punitive Damages;

e.  An award of prejudgment and post judgment interest;

f.  An award of reasonable attorney's fees and costs of suit;

g.  That the Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT SEVEN
### (Retaliation in Violation of the New Jersey Prevailing Wage Act)
### (Plaintiffs/Relators Santiago, Jr. and Honsberger against All Defendants)

135. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 135 of this Complaint.

136. The Plaintiffs/Relators brought this instant action against the Defendants.

137. Subsequent to the service of the Complaint, the Defendants began retaliating against Honsberger and Santiago, Jr. as set forth above.

138. Pursuant to N.J.S.A. 34:11-56.39:

> Any employer who discharges or in any other manner discriminates against any worker because the worker has made any complaint to his employer, to the public body or to the commissioner that he has not been paid wages in accordance with the provisions of this act, or because the worker has caused to be instituted or is about to cause to be instituted any proceeding under or related to this act, or because the worker has testified or is about to testify in any such proceeding shall be guilty of a disorderly persons offense and shall, upon conviction therefor, be fined not less than $100 nor more than $1,000.

139. Due to these acts of retaliation by the Defendants, Santiago, Jr. and Honsberger have been damaged or otherwise harmed.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a. A reinstatement of Honsberger to his senior position;

b. Reinstatement of all fringe benefits of employment, including a return of the corporate vehicle;

c. An award of back pay and interest on any compensation lost as a result of the retaliation;

d. An award of prejudgment and post judgment interest;

e. An award of reasonable attorney's fees and costs of suit;

f. That the Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT EIGHT
### (Retaliation in Violation of the Fair Labor Standards Act)
### (Plaintiffs/Relators Santiago, Jr. and Honsberger against All Defendants)

140. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 140 of this Complaint.

141. The Plaintiffs/Relators brought this instant action against the Defendants.

142. Subsequent to the service of the Complaint, the Defendants began retaliating against Honsberger and Santiago, Jr. as set forth above.

143. Pursuant to 29 U.S.C. § 215 (a)(3):

> [I]t shall be unlawful for any person . . .
>
> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;

144. Due to these acts of retaliation by the Defendants, Santiago, Jr. and Honsberger have been damaged or otherwise harmed.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a. A reinstatement of Honsberger to his senior position;

b. Reinstatement of all fringe benefits of employment, including a return of the corporate vehicle;

c. An award of back pay and interest on any compensation lost as a result of the retaliation;

d. An award of prejudgment and post judgment interest;

e. An award of reasonable attorney's fees and costs of suit;

f. That the Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT NINE
### (Retaliation in Violation of the New Jersey Wage and Payment Law)
### (Plaintiffs/Relators Santiago, Jr. and Honsberger against All Defendants)

145. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 145 of this Complaint.

146. The Plaintiffs/Relators brought this instant action against the Defendants.

147. Subsequent to the service of the Complaint, the Defendants began retaliating against Honsberger and Santiago, Jr. as set forth above.

148. Pursuant to N.J.S.A. 34:11-56a24:

> Any employer who discharges or in any other manner discriminates against any employee because such employee has made any complaint to his employer, to the commissioner, the director or to their authorized representatives that he has not been paid wages in accordance with the provisions of this act, or because such employee has caused to be instituted or is about to cause to be instituted any proceeding under or related to this act, or because such employee has testified or is about to testify in any such proceeding, or because such employee has served or is about to serve on a wage board, shall be guilty of a disorderly persons offense and shall, upon conviction therefor, be fined not less than $100 nor more than $1,000. Such employer shall be required, as a condition of such judgment of conviction, to offer reinstatement in employment to any such discharged employee and to correct any such discriminatory action, and also to pay to any such employee in full, all wages lost as a result of such discharge or discriminatory action, under penalty of contempt proceedings for failure to comply with such requirement.

149. Due to these acts of retaliation by the Defendants, Santiago, Jr. and Honsberger have been damaged or otherwise harmed.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.   A reinstatement of Honsberger to his senior position;

b.   Reinstatement of all fringe benefits of employment, including a return of the corporate vehicle;

-28-

   c.  An award of back pay and interest on any compensation lost as a result of the retaliation;

   d.  An award of prejudgment and post judgment interest;

   e.  An award of reasonable attorney's fees and costs of suit;

   f.  That the Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

<div align="center">

**COUNT TEN**
**(Retaliation in Violation of the New Jersey Conscientious Employee Protection Act)**
**(Plaintiffs/Relators Santiago, Jr. and Honsberger against All Defendants)**

</div>

150. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 150 of this Complaint.

151. The Plaintiffs/Relators brought this instant action against the Defendants.

152. Subsequent to the service of the Complaint, the Defendants began retaliating against Honsberger and Santiago, Jr. as set forth above.

153. Due to these acts of retaliation by the Defendants, Santiago, Jr. and Honsberger have been damaged or otherwise harmed.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

   a.  Injunctive Relief restraining Defendants from any violations of CEPA;

   b.  A reinstatement of Honsberger to his senior position;

   c.  Reinstatement of all fringe benefits of employment, including a return of the corporate vehicle;

   d.  An award of back pay and interest on any compensation lost as a result of the retaliation;

   e.  An award of prejudgment and post judgment interest;

   f.  An award of reasonable attorney's fees and costs of suit;

   g.  That the Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT ELEVEN
### (Unjust Enrichment)
### (All Plaintiffs/Relators against All Defendants)

154. Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 154 of this Complaint.

155. Defendants received remuneration from the State of New Jersey or other government entities which receive funds from the State of New Jersey which included funds that should have been paid to the Plaintiffs/Relators as prevailing wages.

156. Instead of paying the prevailing wages, Defendants kept the monies which should have been paid to the Plaintiffs/Relators.

157. The retention by Defendants of that monetary benefit without paying prevailing wages to Plaintiffs/Relators is unjust.

158. In addition, Defendants failed to pay the overtime to Plaintiffs/Relators at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek in violation of the FLSA and NJWPL.

159. Defendants should be caused to divest all unjustly and illegally gained funds which should have been paid to the Plaintiffs/Relators.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a. An award of actual and consequential and punitive damages in an amount to be determined at trial; and

b. That the State of New Jersey and other governmental entities that are recipients of state funds and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT TWELVE
### (Breach of Fiduciary Duty)
### (All Plaintiffs/Relators against All Defendants)

160.  Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 160 of this Complaint.

161.  New Jersey law imposes a trust on all monies paid to contractors, pursuant to public works contracts, for the benefit of workers and materialmen who provide labor and materials on such public work projects cover within the public works contracts.

162.  Consequently, Defendants, both individually and jointly, have a fiduciary responsibility to Plaintiffs/Relators to ensure the payment of prevailing wages.

163.  The Defendants have diverted the monies received from the State of New Jersey, or other governmental entities, pursuant to the public works contracts, and allocated such funds for improper purposes or purposes other than the payment of prevailing wages due to the Plaintiffs.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.  An award unpaid prevailing wages due under the Prevailing Wage Law;

b.  An award of prejudgment and postjudgment interest;

c.  An award of reasonable attorney's fees and costs of suit;

d.  That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## COUNT THIRTEEN
### (Constructive Trust)
### (All Plaintiffs/Relators against All Defendants)

164.  Plaintiffs/Relators reallege and incorporate by reference the allegations made in Paragraphs 1 through 164 of this Complaint.

165. Defendants have committed numerous wrongful acts against the Plaintiffs/Relators and the State of New Jersey, including fraud by failing to pay prevailing wages after certifying that they are paying same, and resulting in the transfer of property for the benefit of the Defendants.

166. Those wrongful acts have resulted in an unjust enrichment to Defendants.

167. Such wrongdoing by the Defendants resulted in significant injury to the Plaintiffs/Relators and the State of New Jersey.

168. By reason of aforesaid acts and conduct, a constructive trust should be imposed on all real property and/or personal/corporate property owned by the Defendants.

**WHEREFORE,** Plaintiff/Relators pray for judgment against Defendants as follows:

a.   The imposition of a constructive trust on all real property and/or personal/corporate property owned by the Defendants; and

b.   That the State of New Jersey and Plaintiffs/Relators receive all such other relief as the Court deems just and proper.

## DEMAND PURSUANT TO R. 1:5-1(a) and R. 4:17-4(c)

Plaintiffs/Relators demands that each party serving pleadings and discovery and receiving answers thereto, serve copies of all such pleadings and discovery received from any party upon the undersigned attorney, and take notice that this is a continuing demand.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, the Court is advised the Henry F. Furst, Esq. is hereby designated as trial counsel on behalf of the Plaintiffs/Relators.

## CERTIFICATION PURSUANT TO R. 4:5-1

Henry F. Furst, Esq., of the Law Office of Henry F. Furst, attorneys for Plaintiffs/Relators, certifies that at this time, upon information and belief, this matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated at this time.

## CERTIFICATION OF COMPLIANCE R. 1:38-7(c).

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

HENRY F. FURST, ESQ.
LAW OFFICE OF HENRY F. FURST
Attorney for Plaintiffs/Relators

By:_____
           Henry F. Furst

Dated: May __, 2012

HUDSON SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY NJ 07306

TELEPHONE: (201) 217-5163
8:30 AM - 4:30PM

MAY 09, 2012

CV0155

DOCKET: HUD - L -004958-11
STATE OF NEW JERSEY VS HAIG'S SERVICE CORP

A CASE MANAGEMENT CONFERENCE IS SCHEDULED FOR THIS CASE
ON JULY 09, 2012 AT 08:30AM BEFORE JUDGE MARTHA T ROYSTER.

PLAINTIFF IS HEREBY ORDERED TO SERVE A COPY OF THIS ORDER ON ALL PARTIES WHO
HAVE APPEARED IN THIS CASE WITHIN 7 DAYS OF THE DATE HEREOF; AND UPON ALL

LEMONEE HAMILTON LEWIS
LITTLER MENDELSON PC
ONE NEWARK CENTER
8TH FLOOR
NEWARK NJ 07102

COPY

TEAM #2

MAY 17 2012

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION

STATE OF NEW JERSEY, ex rel. LUIS
SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN
PECK AND JOHN HONSBERGER, SR., LOUIS
SANTIAGO, SR. (INDIVIDUALLY) AND JOHN
HONSBERGER, SR. (INDIVIDUALL),

|  | SUPERIOR COURT OF NEW JERSEY |
| Plaintiffs, | LAW DIVISION: HUDSON COUNTY |

DOCKET NO. HUD-L-4958-11

vs.

**Civil Action**

HAIG'S SERVICE CORPORATION (a New
Jersey Corporation) d/b/a HAIG SERVICE
CORPORASTION, RICHARD D. HAIG, JR. and
CHRISTOPHER BERNARD,

**FILED**
TEAM #2

MAY 17 2012

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #11

Defendants.

---

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS/RELATORS' MOTION TO AMEND THE COMPLAINT

---

Littler Mendelson, P.C.
One Newark Center - 8th Floor
Newark, New Jersey  07102
973.848.4700
Attorneys for Defendants

Ebonee Hamilton Lewis, Esq.
*Of Counsel and on the Brief*
Shannon A. Morales, Esq.
*On the Brief*

# <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ................................................................................1

II.  LEGAL ARGUMENT ..........................................................................................2

   A. Standard Applied to Motions to Amend ..........................................................2

   B. The Court Should Deny Plaintiffs/Relators Motion to Amend ...............................2

      1. Honsberger and Santiago, Jr.'s Retaliation Claims Lack
         Substantive Merit and Should Be Rejected ..............................................3

      2. Peck and Santiago, Sr.'s Claims Are Subject to Arbitration,
         Making Plaintiffs' Proposed Amendment Futile........................................6

   C. There Has Been No Waiver of Defendants' Right to Enforce the
      Arbitration Provisions in Peck and Santiago, Sr.'s Agreements .............................10

IV.  CONCLUSION ................................................................................................11

i

## <u>**TABLE OF AUTHORITIES**</u>

*Borwarski v. Henderson,*
    265 F.Supp. 2d 475 (D.N.J. 2003)..................................................................3

*Cohen v. Allstate Insurance Co.,*
    231 N.J. Super. 97, 100-101 (App. Div. 1989)............................................7

*Cokus v. Bristol Meyers Squibb, Inc.,*
    362 N.J. Super. 366 (Law Div. 2002), *aff'd,* 362 N.J. Super. 245
    (App. Div. 2003)............................................................................................3

*Garfinkle v. Morristown Obstetrics & Gynecology Assocs.,*
    158 N.J. 124, 135 (2001) .............................................................................9

*Hefland v. CDI Corp.,*
    2012 N.J. Super. Unpub. LEXIS 90 (App. Div. Jan. 13, 2012) ...................10

*Hudik-Ross v. 1530 Palisade Avenue Corp.,*
    131 N.J. Super. 159, 167 (App. Div. 1974)..................................................11

*In re Arbitration Between Grover & Universal Underwriters Ins. Co.,*
    80 N.J. 221, 229 (1979) ...............................................................................9

*Interchange State Bank v. Rinaldi,*
    303 N.J. Super. 239, 257 (App. Div. 1997)..................................................2

*Karimi v. Trenton Psychiatric Hosp.,* No. A-2295-04T1, 2006 WL 1302245
    (N.J. Super. App. Div. May 12, 2006)...........................................................3

*Kernan v. One Washington Park Urban Renewal Assocs.,*
    154 N.J. 437, 456-57 (1998) .......................................................................2

*Lucier v. Williams,*
    366 N.J. 485 (App. Div. 2004) ....................................................................10

*Martindale v. Sandvik, Inc.,*
    173 N.J. 76 (2002) ...................................................................................8,9

*McKeeby v. Arthur,*
    7 N.J. 174, 181 (1951) ................................................................................8

*Mills v. Marjam Supply Co., Inc.,*
    2009 U.S. Dist. LEXIS 6760, *6 (D.N.J. Jan. 30, 2009)..............................7

*Notte v. Merchants Mut. Ins. Co.,*
    185 N.J. 490, 501 (2006) ...................................................................2

*Spaeth v. Srinivasan,*
    403 N.J. Super. 508, 514 (App. Div. 2008)......................................10

*Tartaglia v. USB Paine-Webber,*
    197 N.J. 81, 125 (2008) ....................................................................3

*United Services Automobile Association v. Turck,*
    156 N.J. 480, 486 (1997) .................................................................7,9

*Zubryck v. ASA Apple Inc.,*
    381 N.J. Super. 162 (App. Div. 2005) ................................................4

## RULES CITED

R. 4:9-1         .......................................................................................2

Pressler & Verniero, Current N.J. Court Rules, comment 2.21 on R. 4:9-1 (2012) ....................2

## STATUTES CITED

N.J.S.A. §34:19-8 ...................................................................................1

N.J.S.A. 34:19-2e ...................................................................................3

N.J.S.A. 2A:24-1 ....................................................................................8

N.J.S.A. 2A:24-3 ....................................................................................8

## I.   PRELIMINARY STATEMENT

Defendants respectfully request that the Court deny Plaintiffs/Relators Motion to Amend. Plaintiffs/Relators' Motion should be denied because the claims they seek to add to the Complaint are substantively without merit and lack futility for several reasons.

First, Honsberger and Santiago, Jr.'s retaliation claims fail because they cannot articulate a *prima facie* case of retaliation under the New Jersey Conscientious Employee Protection Act (CEPA)[1]. Indeed, Plaintiffs/Relators cannot offer any proof (other than their own self-serving assertions), let alone any case law, establishing that Defendants subjected either Honsberger or Santiago, Jr. to any adverse employment action.

Second, during their employment, Peck and Santiago, Sr. each signed an employment agreement ("Agreement") in which each agreed, among other things, to submit all claims arising between himself and Haig arising out of his employment to the American Arbitration Association (AAA) for arbitration. The express terms of the Agreement specifically provide for arbitration of the claims that Plaintiffs now attempt to assert in this action, including those against the individual defendants.

Peck and Santiago Sr.'s contention that Defendants "have apparently conceded that this matter should be handled in one forum by propounding of discovery upon Relators Luis Santiago, Sr. and John Peck" and that the arbitration clauses of their respective Agreements have been waived has no merit. As important, counsel for Plaintiffs is well aware, and so acknowledges in his certification dated May 8, 2012, Defendants have never waived the arbitration clauses at issue. (See Certification of Henry Furst (hereinafter, "Furst Cert.") at ¶¶ 15, 24).

---

[1] Because Honsberger and Santiago, Jr.'s additional retaliation claims under various other state and federal statutes are based on the same factual and legal issues that underlie their purported CEPA claim, their retaliation claims are also subject to CEPA's waiver provision. See N.J.S.A. § 34:19-8.

Suffice it to say, Peck and Santiago, Sr. consented, in writing, to arbitration of their claims against Defendants.  Now attempting to expressly violate the agreements that each made concerning the forum in which their claims would be heard, they should be barred from proceeding in this Court and the motion to amend to include their individual claims should be dismissed with prejudice.

## II.   LEGAL ARGUMENT

### A.   Standard Applied to Motions to Amend

Plaintiffs/Relators correctly set forth the general proposition that leave to amend a complaint "shall be freely given in the interest of justice."  R. 4:9-1; see also Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456-57 (1998).  Plaintiffs/Relators' moving papers do not address, however, that the trial judge's "exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile."  Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006).  The motion judge is "'free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law.  In other words, there is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted.'"  Id. at 501-02 (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 257 (App. Div. 1997)); see also Pressler & Verniero, Current N.J. Court Rules, comment 2.2.1 on R. 4:9-1 (2012).

### B.   The Court Should Deny Plaintiffs/Relators' Motion to Amend

In the First Amended Complaint, Plaintiffs/Relators seek to add entirely new employment-related causes of action on behalf of Peck and Santiago, Sr. against Defendants, as well as retaliation causes of action on behalf of Honsberger and Santiago, Jr. against Defendants and James O'Neal.  As explained below, the proposed addition of such causes of action should be denied as legally insufficient and because granting such amendment would be futile as the

additional claims would not survive a motion to dismiss.  Accordingly, Defendants respectfully request that the Court deny Plaintiffs/Relators' Motion to Amend.

### 1. Honsberger and Santiago, Jr.'s Retaliation Claims Lack Substantive Merit and Should Be Rejected

Plaintiffs/Relators allege that Defendants have subjected Honsberger and Santiago, Jr. to retaliation.  To the contrary, there are no facts to support that Defendants have subjected Honsberger and Santiago, Jr. to any "adverse action."  To prove a *prima facie* case of retaliation, Honsberger and Santiago, Jr. must prove the following elements: (1) each exercised a protected activity; (2) Defendants took adverse employment action against each of them; and (3) there exists a causal connection between the two.  See Tartaglia v. UBS Paine-Webber, 197 N.J. 81, 125 (2008).

In New Jersey, it is well-settled law that proof of an adverse employment action requires that Honsberger and Santiago, Jr. demonstrate that they suffered a "retaliatory action," such as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  N.J.S.A. 34:19-2e (definition under CEPA).  Retaliatory action has therefore been held limited to formal personnel actions that have an effect on either compensation or job rank.  See Borwarski v. Henderson, 265 F.Supp. 2d 475 (D.N.J. 2003) (alleged harassment that included denying use of an office disseminating a memorandum and attempting to impose lengthy suspensions for minor infractions did not constitute retaliation under CEPA); Karimi v. Trenton Psychiatric Hosp., No. A-2295-04T1, 2006 WL 1302245 (N.J. Super. App. Div. May 12, 2006) (suspension of clinical privileges that did not impact compensation or job rank was not adverse action); Cokus v. Bristol Meyers Squibb, Inc., 362 N.J. Super. 366 (Law Div. 2002) (alleged harassment that did not meet *Lehmann* standards did not constitute retaliation), aff'd, 362 N.J. Super. 245 (App. Div. 2003);

see also Zubryck v. ASA Apple Inc., 381 N.J. Super. 162 (App. Div. 2005) (failure to pay overtime, without more, does not constitute constructive discharge).

As set forth below, Plaintiffs/Relators have not pleaded any facts sufficient to demonstrate such an adverse action to state retaliation claims, and the proposed First Amended Complaint confirms that Defendants did not subject either Honsberger or Santiago, Jr. to any such retaliatory action. For these reasons, Plaintiffs/Relators' motion to amend to add retaliation claims should be denied.

With respect to retaliation, Honsberger and Santiago, Jr. allege in the proposed First Amended Complaint that:

- Initially, shortly after the Complaint was served, Honsberger and Santiago, Jr., who had been working as technicians during the day shift for nearly their entire careers with Haig were told that they were being transferred to the night shift. *When they objected, Haig eventually relented.* (Furst Cert., Exh. D., ¶ 90) (emphasis added)

- Later, Defendant O'Neal *berated* Honsberger with the use of foul language[.] (Furst Cert., Exh. D., ¶ 91) (emphasis added)

- Defendants have begun *attempting* to limit the hours of work available for Honsberger by *attempting* to send him home early in the day on several occasions. (Furst Cert., Exh. D., ¶ 92 (emphasis added)

- Honsberger was demoted after the complaint was served. (Furst Cert., Exh. D., ¶ 93)

- Santiago, Jr. and Honsberger were informed that they would no longer be working service calls. Santiago, Jr. and Honsberger were informed that they have been removed from the "on call list." (Furst Cert., Exh. D., ¶ 94)

- Santiago, Jr. and Honsberger were informed that one of them needed to return their company vehicles. (Furst Cert., Exh. D., ¶ 95)

Plaintiffs/Relators have pleaded no set of facts upon which relief can be granted for them on their retaliation claims. Neither Honsberger nor Santiago, Jr. can demonstrate that he was subjected to an adverse employment action in the terms and conditions of their employment by

4

Defendants. None of their allegations constitute adverse or retaliatory action that Defendants took in response to the complaint.

It bears emphasis that, through amendment of the Complaint, Plaintiffs/Relators again attempt to ignore their own self-serving statements and contradictions. Despite their continued efforts to characterize Haig's business decisions as retaliatory and obfuscate the inconsistencies in their position, they have ultimately already admitted to the following:

- "I *prefer* a normal daytime work schedule so that I [can] spend time with my step son who is 12 years old and my step daughter who is 10 years old. As a result, Haig shifted my hours to only day time work." (Certification of Luis Santiago, Jr. in support of order to show cause with temporary restraints, undated, ("Santiago Cert."), at ¶ 6) (emphasis added)

- "If I was only working nights, I would not necessarily work the forty hour or more work week that I had been performing since I started working for Haig." (Santiago Cert. at ¶ 11)

- "Shortly after I complained about the nighttime schedule, I learned that I was being taken off the on-call list[.]" (Santiago Cert. at ¶ 14)

- "I was informed by Mr. O'Neal that Haig was running out of daytime inspection work and I would have to work the night shift. I told Mr. O'Neal that *I did not want to work* the night shift, I had never worked the night shift, and was not about to start." (Certification of Luis Santiago, Jr. in support of order to show cause with temporary restraints, dated April 17, 2012 ("Honsberger Cert."), at ¶ 10) (emphasis added)

- "Later that same day, Mr. O'Neal called me again and said that I did not have to work the night shift." (Honsberger Cert. at ¶ 11)

- "I [ ] told Mr. O'Neal that if I was not going to be allowed to perform service calls, *I should be removed from the 'on call' list.*" (Honsberger Cert. at ¶ 21) (emphasis added)

- "Beyond being too large physically to enter the crawl space, there should be *two* people present for jobs such as this in case anything dangerous occurs." (Honsberger Cert. at ¶ 22)

Plaintiffs/Relators cannot "have their cake and eat it too." They cannot maintain on the one hand that they prefer to work a daytime schedule, do not want to work the "night shift,"

cannot work alone but need to work on a team and each be provided with a company vehicle, ask to be removed from the on call list, and then claim on the other hand that Defendants retaliated against them by acquiescing to their requests and preferences to work a daytime schedule, not scheduling them to work the "night shift," not assigning diagnostic work to Honsberger without help due to his admitted physical limitations, removing them from the on call list, assigning them to work together, and giving them the choice to decide amongst themselves as to who would return their company vehicle.

Indeed, it continues to escape Defendants as to how and why Honsberger and Santiago, Jr. believe that they should be paid an extra $50.00 for being on the on-call list, for example, when they both have admitted that they do not want to work at night, Honsberger even suggested that he be removed from the on-call list or how and why they should be treated differently, i.e., "specially," for having filed this lawsuit when they admit that Haig has acquiesced to their requests and accommodated their "preferences." For Plaintiffs/Relators to now turn around and claim that Defendants' actions are retaliatory is specious at best. Because Plaintiffs/Relators cannot present any set of facts demonstrating any adverse action, let alone any change in the terms and conditions of their employment, their *prima facie* retaliation action fails on its face and the causes of action should not be allowed because of their futility.

> **2.    Peck and Santiago, Sr.'s Claims Are Subject to Arbitration, Making Plaintiffs' Proposed Amendment Futile**

Plaintiffs fail to demonstrate that amendment of the Complaint to include the additional claims of Peck and Santiago, Sr., which they concede are subject to arbitration because "[Messrs.] Peck and Santiago, Sr. agreed that *all* employment matters would be adjudicated through arbitration before the American Arbitration Association[,]" is proper in this case. (Mov. Br., p. 1)  Plaintiffs assert that they are entitled to amendment simply because "this matter would

quickly become unduly complex and costly[,]" and "bifurcation creates serious risks of undue complexity, unfairness and increased expense in this litigation." (Mov. Br., p. 4) However, Plaintiffs fail to address the established law that where a plaintiff seeks to amend the complaint to assert claims that are subject to an arbitration agreement, the motion to amend should be denied as futile. A number of courts have concluded that where a plaintiff seeks to amend the complaint to assert claims that are subject to an arbitration agreement, the motion to amend should be denied as futile. See, e.g., Mills v. Marjam Supply Co ., Inc., 2009 U.S. Dist. LEXIS 6760, *6 (D.N.J. Jan. 30, 2009) (denying plaintiff's motion to amend complaint and reasoning that "justice does not require allowing Plaintiff to amend the Complaint because any possible claim Plaintiff could plead would be subject to arbitration rend[er]ing the Amended Complaint futile.").

It is beyond dispute that Peck and Santiago, Sr. each entered into a written agreement with Haig pursuant to which they expressly agreed that "Any civil legal dispute *relating to or arising out employment with [Haig] which would otherwise be resolved by a court of law will be resolved through binding arbitration. . . .*" (Complaint, Exh. B, p. 11) (emphasis added) Indeed, Peck and Santiago, Sr. each signed a Binding Arbitration Policy Acknowledgment Form where they agreed and acknowledged that they had *reviewed carefully* and *understand* the terms of the Binding Arbitration Policy (the "Policy"), and that their continued employment served as the consideration for their agreement to be bound by the provisions of the Policy. (Complaint, Exh. B, p. 13) (emphasis added).

It is well-settled in New Jersey that such agreements are binding and enforceable according to their terms. See United Services Automobile Association v. Turck, 156 N.J. 480, 486 (1997) (quoting Cohen v. Allstate Insurance Co., 231 N.J. Super. 97, 100-101 (App. Div.

1989) ("[T]he parties have the right to stand upon the precise terms of their contract.")); McKeeby v. Arthur, 7 N.J. 174, 181 (1951) ("arbitration agreement is a contract, and is subject, in general, to the legal rules governing the construction of contracts.") (internal citation omitted). See also N.J.S.A. 2A:24-1 ("[A] provision in a . . . written agreement to submit . . . any existing controversy to arbitration . . . shall be valid, enforceable and irrevocable").

The New Jersey Supreme Court held, in Martindale v. Sandvik, Inc., 173 N.J. 76 (2002), "it is well established that an employee may be bound by an agreement to waive his or her right to pursue a statutory claim in a judicial forum in favor of arbitration." Id. at 85, 92.

These legal principles are codified in N.J.S.A. 2A:24-3, which provides:

> Where a party is aggrieved by the failure, neglect or refusal of another to perform under a written agreement providing for arbitration, the superior court may in a summary action direct that the arbitration proceed in the manner provided for in the agreement.

N.J.S.A. 2A:24-3.

Under this principle, Defendants' right to insist that Peck and Santiago, Sr. pursue their claims in accordance with the Agreement that each signed is both fully established and contractually protected.  Indeed, Peck and Santiago, Sr.'s failure to commence the arbitration process by filing a written demand for arbitration with AAA, and instead choosing to file a motion to amend the complaint in order to assert their claims in this Court, warrants denial of the motion.

The Agreement that Peck and Santiago, Sr. each signed provides unequivocally that if the employee chooses to pursue any claims against Haig or its officers, directors, employees, or agents, he must do so in accordance with the Policy and procedures as set forth therein. (Complaint, Exh. B, p. 13)  Moreover, the Policy unambiguously states that both Peck and Santiago, Sr. waive their right to sue in court on claims under the New Jersey Wage and Hour

8

Law, the New Jersey Wage Payment Law, and any other federal state, or local statute, . . . pertaining to employment, wages, benefits, or other compensation, such as Peck and Santiago's failure to pay the prevailing wage (Count Two), violations of the Fair Labor Standards Act (Count Three), the New Jersey Wage Payment Law (Count Four), unjust enrichment (Count Eleven), breach of fiduciary duty (Count Twelve), and constructive trust (Count Thirteen) defamation and tortious interference claims. (Furst Cert., Exh. D)

In light of these provisions, to which Peck and Santiago, Sr. assented in writing, there can be no dispute that their agreement to arbitrate was sufficient to constitute a knowing and voluntary waiver of their right to a jury trial in connection with the above-referenced claims. See Martindale, 173 N.J. at 94, 95 (provision in arbitration agreement stating "all disputes relating to my employment with [employer] or termination thereof" shall be subject to arbitration clearly put plaintiff on notice that she was waiving her right to a jury trial under the NJLAD); Garfinkle v. Morristown Obstetrics & Gynecology Assocs., 158 N.J. 124, 135 (2001) (provision providing that "employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination" would be a sufficient waiver of right to jury trial).

The New Jersey Supreme Court has left no doubt that, "[I]n New Jersey, the guiding principle governing the scope of an arbitration agreement is that 'those issues may be arbitrated which the parties have agreed shall be.'" Turck 156 N.J. at 486, 487 (quoting In re Arbitration Between Grover & Universal Underwriters Ins. Co., 80 N.J. 221, 229 (1979)). See also, Martindale, 173 N.J. at 92; Grover, 80 N.J. at 229 (holding that when determining the arbitrability of a dispute, "[t]he answer is found simply by analyzing what the parties have agreed should be submitted to arbitration.").

It is beyond dispute that the allegations of the proposed First Amended Complaint are

covered by the Agreement that Peck and Santiago, Sr. each signed.  Plaintiffs do not allege otherwise in their motion.  Rather, Plaintiffs claim that "[i]t is more convenient and cost efficient . . . to litigate the matter in one forum," "Plaintiffs/Relators are concerned about the *potential* for inconsistent or varying decisions," the arbitration clauses at issue have been waived and that Defendants "have apparently conceded that this matter should be handled in one forum by propounding of discovery upon Relators Luis Santiago, Sr. and John Peck." (Mov. Br., pp. 2, 4, 6) (emphasis supplied)  None of these allegations is supportable, in fact or law.  Because Peck and Santiago, Sr.'s claims are plainly subject to arbitration and, as such, are futile with respect to this action, the motion to amend should be denied.

### C.    There Has Been No Waiver of Defendants' Right to Enforce the Arbitration Provisions in Peck and Santiago, Sr.'s Agreements

Moreover, there is a strong presumption against waiver of the right to arbitrate, "which can only be overcome [ ] by clear and convincing evidence that the party asserting [arbitration] chose to seek relief in a different forum." Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008).  Indeed, the key to determining waiver is the absence or presence of prejudice to the party objecting to the arbitration.  Id. at 515.  Mere participation in litigation by filing an answer or even engaging in limited discovery does not constitute waiver of the right to arbitrate.  See Hefland v. CDI Corp., 2012 N.J. Super Unpub. LEXIS 90 (App. Div. Jan. 13, 2012) (finding defendants had not waived their right to compel arbitration seven months after Plaintiff filed the original complaint, even though the parties had engaged in limited written discovery); Lucier v. Williams, 366 N.J. Super 485 (App. Div. 2004) (finding no waiver of the right to invoke arbitration where the defendant answered the complaint, filed a partial motion for summary judgment, which was granted, and only then filed a motion for summary judgment on the basis that the contract required arbitration).

10

At no time have Defendants ever acted in a manner that even remotely suggests that they have waived the arbitration clauses. Contrary to Plaintiffs/Relators' argument, Defendants have not waived their right to enforce the arbitration clauses found in Peck and Santiago, Sr.'s Agreements when they propounded discovery on Peck and Santiago, Sr.

Defendants have merely sought to engage in limited written discovery until such time as either a demand for arbitration is made or Defendants waive arbitration. They have not sought any form of adjudication on the merits or otherwise created "ostensible prejudice" to the Plaintiffs/Relators. See Hudik-Ross v. 1530 Palisade Avenue Corp, 131 N.J. Super. 159, 167 (App. Div. 1974). Accordingly, Defendants remain entitled to have this Court enforce the arbitration clauses at issue.

## III.   CONCLUSION

For the reasons explained above, the Court should deny Plaintiffs/Relators' Motion to Amend their Complaint.

Respectfully submitted,

LITTLER MENDELSON, P.C.
Attorneys for Defendants

By: _____
       Ebonee Hamilton Lewis

Dated:  May 17, 2012

Firmwide:111707974.1 060197.1001

**LITTLER MENDELSON**
A Professional Corporation
One Newark Center, 8th Floor
Newark, New Jersey  07102
973.848.4700
Attorneys for Defendants
  *Haig Service Corp., Richard D. Haig, Jr.*
  *and Christopher Bernard*

FILED
TEAM #2

MAY 17 2012

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #11

| | |
|---|---|
| STATE OF NEW JERSEY, ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK AND JOHN HONSBERGER, SR., LOUIS SANTIAGO, SR. (INDIVIDUALLY) AND JOHN HONSBERGER, SR. (INDIVIDUALLY),<br><br>          Plaintiffs,<br><br>vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORASTION, RICHARD D. HAIG, JR. and CHRISTOPHER BERNARD,<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: HUDSON COUNTY<br><br>DOCKET NO. HUD-L-4958-11<br><br>**CERTIFICATION OF EBONEÉ HAMILTON LEWIS** |

Eboneé Hamilton Lewis, of full age, hereby certifies as follows:

1.      I am an attorney admitted to practice law before the courts of the State of New Jersey and I am a Shareholder with the law firm of Littler Mendelson, P.C., attorneys for defendants Haig Service Corp., Richard D. Haig, Jr. and Christopher Bernard in the above-captioned matter.

2.      Attached hereto as Exhibit A is a true and correct copy of Hefland v. CDI Corp., 2012 N.J. Super Unpub. LEXIS 90 (App. Div. Jan. 13, 2012).

3.      Attached hereto as Exhibit B is a true and correct copy of Mills v. Marjam Supply Company, Inc., No.08-CV-5726 (DMC), 2009 U.S. Dist. LEXIS 6760 (D.N.J. Jan. 30, 2009).

4.      Attached hereto as Exhibit C is a true and correct copy of Karimi v. Trenton

Psychiatric Hosp., No. A-2295-04T12295-04T1, 2006 WL 1302245 (App. Div. May 12, 2006).

    I certify that the foregoing statements made by me are true to the best of my knowledge.  I understand that if any of the above statements are willfully false I am subject to punishment.

By: _____
      Ebonee Hamilton Lewis

Dated:  May 17, 2012

Firmwide:111750034.1 060197.1001

2

# EXHIBIT A



**EILEEN S. HELFAND, Plaintiff-Respondent, v. CDI CORPORATION and BARRY O'DONNELL, Defendants-Appellants.**

**DOCKET NO. A-3230-10T1**

**SUPERIOR COURT OF NEW JERSEY, APPELLATE DIVISION**

*2012 N.J. Super. Unpub. LEXIS 90*

**November 16, 2011, Argued**
**January 13, 2012, Decided**

**NOTICE:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY *RULE 1:36-3* FOR CITATION OF UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1]
On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4363-10.

**COUNSEL:** Thomas J. Barton argued the cause for appellants (Drinker Biddle & Reath L.L.P., attorneys; Mr. Barton, Daniel H. Aiken and Aaron M. Moyer, on the briefs).

Richard P. Flaum argued the cause for respondent (DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, P.C., attorneys; Mr. Flaum and Thomas R. Basta, on the brief).

**JUDGES:** Before Judges Fuentes, Harris and Koblitz.

**OPINION**

PER CURIAM

Plaintiff, Eileen S. Helfand, an employee of defendant CDI Corporation (CDI), brought suit in the trial court alleging violations of the New Jersey Law Against Discrimination (NJLAD), *N.J.S.A. 10:5-1 to -42*. Approximately eight months after plaintiff filed her complaint, defendants filed a motion to compel arbitration pursuant to an arbitration clause in plaintiff's employment contract. The trial court denied defendants' motion, finding they waived their right to arbitration by participating in litigation. Defendants appeal this decision.

Plaintiff, on appeal, maintains that the trial court was correct in its waiver analysis. In addition, plaintiff asserts that the arbitration clause is unenforceable and, in any event, [*2] does not waive NJLAD claims. After reviewing the record in light of the contentions advanced on appeal, we hold that the arbitration clause is enforceable and was not waived. We therefore reverse.

On January 30, 1998, plaintiff was hired by CDI as a salesperson. She signed an employment agreement, which contained the terms and conditions of her employment. The employment agreement contained a section entitled "Arbitration," which stated,

> You and we agree that it would be mutually beneficial to obtain prompt and cost effective resolutions of any controversies, claims or disputes which may arise out of, or relate to, your employment with us or the termination of such employment, or this Employment Agreement or an alleged breach thereof, or the relations between you and us, arising either during or after the employment relationship. Accordingly, you and we agree that, to the extent permitted by law, all such controversies, claims and disputes will be decided by arbitration in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association, and not by a court of law, and you and we specifically waive all rights to a jury trial of such issues .... [*3] Claims covered by this agreement to arbitrate include . . . claims for discrimination . . . and claims for violation of any federal,

state or other governmental law, statue, regulation or ordinance.

The agreement also contained a choice-of-law provision stating that the agreement "will be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania (without regard to the principles of conflicts of law therein)." The agreement stated the arbitration provision (section 11) "will survive, and be enforceable following, termination of [the] Agreement or [plaintiff's] employment [there]under." Finally, the agreement explained that if plaintiff's compensation is changed during the terms of the agreement, "the compensation provision in the Information Section will be deemed to have been amended to reflect the different compensation." Plaintiff and defendants initialed each page of the agreement.

During her time with CDI, plaintiff changed positions several times. Each time, plaintiff signed a new "compensation" or "commission" plan. These documents pertain only to compensation of employees.

On May 28, 2010, plaintiff filed a complaint alleging discriminatory practices   [*4] in violation of NJLAD against defendants CDI and Barry O'Donnell. Defendants' answer did not raise arbitration as a defense. The answer included a "reservation of rights" section where "[d]efendants reserve[d] the right to plead any additional separate defenses, the availability of which may come to light as the action progresses."

Neither defendants nor plaintiff took any depositions during the litigation, although they did exchange written discovery. On December 21, 2010, defendants notified plaintiff in an e-mail of their intention to enforce the arbitration clause in the employment agreement. Shortly after this e-mail was received, the parties engaged in mediation, which unfortunately was not successful.

On January 19, 2011, defendants filed a motion to compel arbitration pursuant to plaintiff's employment agreement. The motion judge found that under "the totality of the circumstances the [d]efendants have waived their right to [] arbitration." He determined the delay in invoking the arbitration provision prejudiced plaintiff by causing her to spend six months pursuing the case in the court system, including court-ordered mediation, settlement discussions and interrogatories, while   [*5] incurring significant legal fees.

On appeal, defendants argue that the motion judge erred in finding that their delay in seeking arbitration constituted a waiver of the contract arbitration agreement. We agree.

We "review the denial of a request for arbitration de novo." *Frumer v. Nat'l Home Ins. Co., 420 N.J. Super. 7, 13, 18 A.3d 225 (App. Div. 2011).* "[O]rders compelling or denying arbitration are deemed final and appealable as of right as of the date entered." *GMAC v. Pittella, 205 N.J. 572, 587, 17 A.3d 177 (2011).*

Where a contract contains a choice-of-law provision, we apply the substantive laws of the chosen state. *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 568, 730 A.2d 843 (1999)* (citing *Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341, 614 A.2d 124 (1992)).* Notwithstanding the application of the substantive laws of that state, we apply our own procedural rules. *See Heavner v. Uniroyal, Inc., 63 N.J. 130, 135, 305 A.2d 412 (1973).*

Waiver, in this context, is based on the conduct of the parties during litigation, not the conduct of the parties before litigation. Thus, the procedural rules of the forum state govern. Whereas the Pennsylvania Civil Procedure rules require a defendant to raise arbitration   [*6] as an affirmative defense to avoid waiver, *see Pa. R. Civ. P. 1032(a)*; *Teodori v. Penn Hills Sch. Dist. Auth., 413 Pa. 127, 196 A.2d 306, 310 (Pa. 1964)*; *Samuel J. Marranca Gen. Contracting Co. v. Amerimar Cherry Hill Assocs. Ltd. P'ship, 416 Pa. Super. 45, 610 A.2d 499, 501 (Pa. Super. Ct. 1992)*, New Jersey does not mandate such action. *See, e.g., Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 333 N.J. Super. 291, 295-96, 755 A.2d 626 (App. Div. 2000), rev'd on other grounds, 168 N.J. 124, 773 A.2d 665 (2001).*

Plaintiff initially alleges that defendants waived arbitration when they failed to raise it in their answer. Plaintiff adopts this position based on the inclusion of arbitration as an affirmative defense under *Rule 4:5-4*, and her assertion that an affirmative defense is waived unless pleaded. However, we have recognized that the failure to raise arbitration as an affirmative defense is not dispositive on the issue of waiver. *See Spaeth v. Srinivasan, 403 N.J. Super. 508, 516-17, 959 A.2d 290 (App. Div. 2008)* (finding the defendant did not waive arbitration despite not raising arbitration as an affirmative defense); *Garfinkel, supra, 333 N.J. Super. at 296* ("'[T]he mere filing of a complaint or an answer to the complaint is not a waiver   [*7] of arbitration. . . .'") (quoting *Wasserstein v. Kovatch, 261 N.J. Super. 277, 290, 618 A.2d 886 (App. Div.), certif. denied, 133 N.J. 440, 627 A.2d 1145 (1993))), rev'd on other grounds, 168 N.J. 124, 773 A.2d 665 (2001).*

Plaintiff also alleges that defendants waived their right to arbitration through their litigation conduct. A party can waive its right to arbitration either expressly or by implication. *Spaeth, supra, 403 N.J. Super. at 514.* Whether a party waives arbitration implicitly depends on

the totality of the circumstances. *Ibid.* ("There is no single test for the type of conduct that may waive arbitration rights."). Instead, "[t]here is a presumption against waiver of an arbitration agreement, which can only be overcome[] by clear and convincing evidence that the party asserting [arbitration] chose to seek relief in a different forum." *Ibid.* (citing *Am. Recovery Corp. v. Computerized Thermal Imaging, 96 F.3d 88, 92 (4th Cir. 1996)).*

Because "'[n]ot every foray into the courthouse effects a waiver of the right to arbitrate,'" *Lucier v. Williams, 366 N.J. Super. 485, 500, 841 A.2d 907 (App. Div. 2004)* (alteration in original) (quoting *Shevlin v. Prudential Commercial Ins. Co., 256 N.J. Super. 691, 700, 607 A.2d 1062 (Law Div. 1991)),* it is "the presence [*8] or absence of prejudice [that] has been deemed determinative of the issue of waiver." *Spaeth, supra, 403 N.J. Super. at 515.* Citing a decision of the Second Circuit, we recognized that "simply wasting a party-opponent's time and money [is] insufficient to constitute prejudice . . . ." *Ibid.* (citing *Rush v. Oppenheimer & Co., 779 F.2d 885, 888 (2d Cir. 1985)).* However, when it is a defendant seeking to compel arbitration, it is more likely that arbitration is waived when a defendant "use[s] the litigation process improperly, such as to gain pretrial disclosure not generally available in arbitration." *See Lucier, supra, 366 N.J. Super. at 500* (citing *Shevlin, supra, 256 N.J. Super. at 700-01).*

In *Farese v. McGarry, 237 N.J. Super. 385, 394, 568 A.2d 89 (App. Div. 1989),* we found that the plaintiff waived his right to compel arbitration where he affirmatively filed a complaint and then filed an answer to a counterclaim without alleging arbitration. When the plaintiff did finally raise arbitration in an amended answer filed nine months after the complaint, it was a mere two weeks before trial was set to begin. *Ibid.*

In *Lucier v. Williams, supra, 366 N.J. Super. at 490-91,* we found no waiver of the right [*9] to invoke arbitration where the defendant answered the complaint, filed a partial motion for summary judgment, which was granted, and only then filed a motion for summary judgment on the basis that the contract required arbitration. We determined that answering a complaint is "an acceptable effort to preserve the status quo pending arbitration . . . ." *Id. at 500.*

Likewise, in *Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J. Super. 138, 146, 150-51, 952 A.2d 1140 (App. Div. 2008),* we found no waiver where the defendants filed a motion to strike the plaintiff's demand for a jury trial, and then, four months later filed a motion to compel arbitration. We concluded that plaintiff suffered no prejudice because it "did not actively litigate th[e] case during the four-month interval between the filing of his

complaint and the filing of defendants' motion to compel arbitration." *Id. at 150-51.*

In *Spaeth, supra,* a case with similar facts, the plaintiff filed a complaint on December 15, 2006 after voluntarily dismissing a complaint filed four months earlier on August 10, 2006. *403 N.J. Super. at 512.* On February 9, 2007, the defendant filed an answer, in which it did not raise the defense of arbitration, and [*10] also filed counterclaims. *Ibid.* The parties engaged in "[m]inimal discovery" and mediation in May 2007. *Ibid.* Then, on June 25, 2007, the defendant "assert[ed] for the first time, just six months after the filing of the complaint, that [the] plaintiff's cause of action was barred by the contractual arbitration clause . . . ." *Ibid.* In support of the decision, we found

> [the d]efendant, who appeared pro se throughout, asserted her right to arbitration only six months after [the] plaintiff filed his Superior Court complaint, well before any meaningful exchange of discovery-much less the discovery end date-and well in advance of fixing a trial date. Indeed, the litigation had not even reached the point of noticing and taking depositions or filing dispositive motions, save, of course, for [the] defendant's efforts to dismiss the lawsuit. And when [the] defendant did assert her right to arbitration-twice in very short order-she acted thereafter in accordance with her intention to seek arbitration.

[*Id. at 516.*]

Here, defendants notified plaintiff of their intention to compel arbitration seven months after plaintiff filed the original complaint (five months after plaintiff filed an amended complaint). [*11] One month later, defendants filed a formal motion to compel arbitration. The parties engaged in limited discovery. They took no depositions, they exchanged only one set of written discovery, and plaintiff produced no documents.[1] The only motion filed by defendants was the motion to compel arbitration.

> 1   Defendants also credibly maintain that the limited discovery exchange was necessary for mediation.

Based on the limited litigation that occurred prior to the defendants' motion, the trial court erroneously concluded that defendants waived their right to arbitration through litigation conduct.

Plaintiff further argues that defendants are judicially estopped from asserting their right to arbitration. Judicial estoppel, an "extraordinary remedy," applies only when a party "'advocates a position contrary to a position it successfully asserted in the same or a prior proceeding.'" *Ali v. Rutgers*, 166 N.J. 280, 288, 765 A.2d 714 (2000) (quoting *Kimball Int'l, Inc. v. Northfield Metal Prods.*, 334 N.J. Super. 596, 608, 760 A.2d 794 (App. Div. 2000), *certif. denied*, 167 N.J. 88, 769 A.2d 1051 (2001)). Courts recognize the doctrine of judicial estoppel "'to protect the integrity of the judicial process.'" *Ibid.* (quoting *Kimball Int'l, Inc., supra*, 334 N.J. Super. at 608). [*12] For judicial estoppel to apply, "'[a party must] have convinced the court to accept its position in the earlier litigation.'" *Ibid.* (alteration in original) (quoting *Kimball Int'l, Inc., supra*, 334 N.J. Super. at 608)). Here, defendants at no point advocated before the trial court that it was the proper forum. The only affirmative motion defendants filed was a motion to compel arbitration. Thus, defendants' conduct does not trigger this "extraordinary remedy."

Plaintiff further contends that the arbitration clause is unenforceable because the contract is one of adhesion. Because the contract contains a choice-of-law provision, Pennsylvania contract law should be used.

Plaintiff argues that this contract was non-negotiable and thus the arbitration clause should not be enforced. In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038, 1044 (2006), the Supreme Court held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Here, the challenge is to the arbitration clause and is therefore properly before the court.

In Pennsylvania, a contract [*13] of adhesion is not per se unconscionable. *See Thibodeau v. Comcast Corp.*, 2006 PA Super 346, 912 A.2d 874, 882 (Pa. Super. Ct. 2006). Instead, an adhesion contract "is only unconscionable if it unreasonably favors the drafter." *Ibid.* Here, plaintiff does not allege unconscionable terms, but rather complains simply that the contract is "take it or leave it." Plaintiff did not present any evidence to show that the terms of the employment agreement unreasonably favor defendants. Under Pennsylvania law, therefore, the arbitration clause is not unenforceable as a contract of adhesion.

Plaintiff also maintains that the original employment agreement was no longer enforceable because the subsequent actions of the parties and subsequent signed documents superseded that agreement.

Under Pennsylvania law, the primary concern in interpreting any contract is determining the intent of the contracting parties. *Hutchison v. Sunbeam Coal Corp.*,

513 Pa. 192, 519 A.2d 385, 389 (Pa. 1986). When a contract is "clear and unambiguous," the contract itself will determine the parties' intent. *Id. at* 390. Here, the contract language is clear and unambiguous as to the parties' intent to arbitrate any and all disputes that may arise from their [*14] relationship. Therefore, the contract's language applies unless the contract was either terminated or superseded.

Plaintiff alleges that the arbitration contract was superseded because she signed several compensation plans after signing the original employment agreement, none of which discussed arbitration.[2] However, the original agreement anticipated such new contracts. The employment contract expressly stated:

> If at any time during the term of this Agreement you and we agree that compensation different from the compensation set forth in the Information Section should be paid to you, and we pay you and you accept such different compensation, then the compensation provision in the Information Section will be deemed to have been amended to reflect the different compensation.

Therefore, the parties contemplated that plaintiff's position and compensation would change during her employment with the company.

2   Plaintiff also signed an inventions confidentiality document.

The employment agreement further gave CDI "the right to modify [plaintiff's] duties or position by giving [plaintiff] one week's notice of such modification." Lastly, the contract stated that plaintiff "agree[s] that, from time [*15] to time as [CDI] may request, [plaintiff] will sign all documents and do all other things (at [CDI's] cost) which may be necessary to secure or establish [CDI] or [CDI's] customers' ownership of such inventions." The express provisions of the contract contemplated every document signed by plaintiff during her time with CDI. No subsequent document superseded the original arbitration provision.

Plaintiff also asserts that her NJLAD claim does not fall within the scope of the arbitration agreement. All parties agree that the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-14, governs this employment contract. However, plaintiff and defendants disagree as to which law covers the issue of arbitrability.

In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353,

*87 L. Ed. 2d 444, 455 (1985))*, the Supreme Court held that courts should "apply[] the 'federal substantive law of arbitration, applicable to any arbitration agreement within the coverage of the Act.'" (quoting *Moses H. Cone Mem'l Hos. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 785 (1983))*. Because the Supreme Court found in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 476, 109 S. Ct. 1248, 1254, 103 L. Ed. 2d 488, 498 (1989)*, [*16] that the FAA was meant "to ensure the enforceability, according to their terms, of private agreements to arbitrate," courts have found that contracts can displace the federal law of arbitrability using a choice-of-law provision. *See, e.g., Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 919 (9th Cir. 2011); Ford v. NYLCare Health Plans of the Gulf Coast, Inc., 141 F.3d 243, 248-49 (5th Cir. 1998); Sea Bowld Marine Grp., LDC v. Oceanfast Pty., Ltd., 432 F. Supp. 2d 1305, 1311-12 (S.D. Fla. 2006)*. The issue then becomes how to determine whether or not the choice-of-law provision displaces the FAA.

The Third Circuit has held that federal law governs the issue of arbitrability for agreements covered by the FAA. *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 43 (3d Cir. 1978)* ("[W]hether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law."). The *Becker* court provides an example, in a footnote, analogous to the situation here.

> For example, consider the case where a contract containing an arbitration clause provides that the law of state X shall govern the agreement. Assume that the [*17] law of state X will not enforce, or gives very limited effect to arbitration clauses, such that under X law the dispute would not be submitted to arbitration. If one party sues on the contract in federal court, and the contract involves "commerce", the federal district court, in deciding a motion to stay the proceedings and compel arbitration under *9 U.S.C. § 3*, would look to federal law in determining the scope of the arbitration clause.[3]

[*Ibid.*] Here, the choice-of-law provision is general, and under the Third Circuit's analysis, federal law would govern the question of arbitrability.

3    Although the example specifically references claims brought in federal court, the Supreme

Court has since decided that the FAA applies in state court. *See Southland Corp. v. Keating, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)*.

Under federal law, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone, supra, 460 U.S. at 24, 103 S. Ct. at 941, 74 L. Ed. 2d at 785*. Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ." *Id. at 24-25, 103 S. Ct. at 941, 74 L. Ed. 2d at 785*. "[A]n order to arbitrate   [*18] the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Commc'ns. Workers of Am., 475 U.S. 643, 650, 106 S. Ct. 1415, 1419, 89 L. Ed. 2d 648, 656 (1986)* (internal quotations omitted).

Here, the arbitration clause was broad. It covered

> any controversies, claims or disputes which may arise out of, or relate to, your employment with us or the termination of such employment, or this Employment Agreement or an alleged breach thereof, or the relations between you and us, arising either during or after the employment relationship . . . . Claims covered by this agreement to arbitrate include . . . *claims for discrimination . . .* and *claims for violation of any federal, state or other governmental law, statue, regulation or ordinance.*

[(Emphasis added).]

As the contractual language expressly delineated claims for both discrimination and state statutes, the parties clearly contemplated that NJLAD claims would be resolved through arbitration. An NJLAD claim is therefore an arbitrable claim under the original employment contract.

Finally, plaintiff [*19] argues that if this case is referred to arbitration, we should award attorney's fees to plaintiff because defendants did not raise arbitration as a defense. New Jersey has "generally adhered to the so-called 'American Rule,' meaning that 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" *N. Bergen Rex. Transp., supra, 158 N.J. at 569* (quoting *Rendine v. Pantzer, 141 N.J. 292, 322, 661 A.2d 1202 (1995))*. Notwithstanding this general rule, "'a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract.'" *Litton Indus., Inc. v. IMO Indus., Inc.,*

*200 N.J. 372, 385, 982 A.2d 420 (2009)* (quoting *Pack-ard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 440, 771 A.2d 1194 (2001)).* The NJLAD explicitly allows for a prevailing party to recover attorney's fees. *N.J.S.A. 10:5-27.1.* Should plaintiff prevail on her claim in arbi-tration, she might then be entitled to an award of counsel fees.

Reversed.

# EXHIBIT B

LEXSEE

⚠
Caution
As of: May 17, 2012

**CURTIS MILLS, Plaintiff, v. MARJAM SUPPLY COMPANY, INC., Defendant.**

Civil Action No.08-CV-5726 (DMC)

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

2009 U.S. Dist. LEXIS 6760

January 29, 2009, Decided
January 30, 2009, Filed

**NOTICE:** NOT FOR PUBLICATION

**CORE TERMS:** amend, arbitration, arbitration clause, arbitration agreement, employment agreement, failure to state a claim, responsive pleading, favorable, alleging violations, employment relationship, employment contract, termination, terminated, arbitrator, freely

**COUNSEL:** [*1] For **CURTIS MILLS, Plaintiff:** RAYMOND L. HAMLIN, *LEAD ATTORNEY*, HUNT, HAMLIN & RIDLEY, ESQS., NEWARK, NJ; **TERRY RIDLEY**, *LEAD ATTORNEY*, HUNT, HAMLIN & RIDLEY, NEWARK, NJ.

For **MAR-JAM SUPPLY COMPANY, INC.**, *its employees, agents, and/or aervants*, **Defendant:** HARRY AARON HORWITZ, *LEAD ATTORNEY*, STEVENS & LEE, CHERRY HILL, NJ.

**JUDGES:** Hon. Dennis M. Cavanaugh, U.S.D.J.

**OPINION BY:** Dennis M. Cavanaugh

**OPINION**

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Plaintiff Curtis Mills ("Plaintiff") to amend the Complaint; and upon motion by Defendant Marjam Supply Company, Inc. ("Defendant") to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(1) and (6). No oral argument was heard pursuant to FED. R. CIV. P. 78. After carefully considering the submissions of the parties

and based upon the following, it is the finding of the Court that Plaintiff's motion to amend the Complaint is denied and Defendant's motion to dismiss is **granted.**

**I. BACKGROUND** [1]

> 1  The facts set forth in this Opinion are taken from the statements in the parties' respective papers.

**A. Factual Background**

Plaintiff was hired by Defendant on or about August 25, [*2] 2006, as a forklift operator. Plaintiff was terminated on December 4, 2006. During his three month tenure with Defendant, Plaintiff who is African American complained that his supervisor often referred to African Americans as "stupid" and on two occasions referred to Plaintiff as a "Nigger." Plaintiff complained about these incidents but no action was taken. Defendant claims that it terminated Plaintiff for leaving work early without permission. Plaintiff asserts that this never occurred.

**B. Procedural Background**

Plaintiff initially filed for relief before the New Jersey Division on Civil Rights ("DCR") alleging violations of the New Jersey Law Against Discrimination ("LAD") on January 23, 2007. The DCR investigated Plaintiff's claims and concluded that they were not supported by the facts. On August 11, 2008, Plaintiff filed a Complaint in the Superior Court of New Jersey, Essex County. On November 20, 2008, Defendant filed a motion to remove Plaintiff's Complaint to federal court. On November 25, 2008, Defendant filed a motion to dismiss. In response,

on December 17, 2008, Plaintiff filed a motion to remand which had a state court motion to amend attached as an exhibit. Plaintiff attempted [*3] to file a motion to amend the Complaint in state court despite the fact that the state court no longer had jurisdiction. Plaintiff filed a motion to amend the Complaint before this Court on January 15, 2009.

## II. STANDARD OF REVIEW

When deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. Pension Benefit Guar. Corp. V. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). While under the liberal notice pleading standard a party is not required to plead facts sufficient to prove its case, there still must be an underlying claim for relief before the court. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir 2004). Moreover, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' [*4] when deciding a motion to dismiss." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982).

When considering motions seeking dismissal for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1), "no presumpti[on of] truthfulness attaches to a plaintiff's allegations." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J.1995) (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction motion need not be limited; conflicting written and oral evidence may be considered and a court may 'decide for itself the factual issues which determine jurisdiction." Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.) Cert. denied, 454 U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981)). [*5] "When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction

rests with the plaintiff." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176, 178 (3d Cir. 2000)). Nonetheless, "[w]here an attack on jurisdiction implicates the merits of plaintiff's [F]ederal cause of action, the district court's role in judging the facts may be more limited." Martinez, 875 F. Supp. at 1071 (citing Williamson, 645 F.2d at 413 n.6).

## III. DISCUSSION

Defendant seeks to dismiss the LAD aspect of Plaintiff's Complaint because of a claim preclusion provision within the statute. Defendant seeks to dismiss all other aspects of Plaintiff's Complaint pursuant to a mandatory arbitration clause in the employment contract signed by Plaintiff and Defendant. Plaintiff responded to Defendant's motion to dismiss in part by filing a motion to amend the Complaint.

### A. Plaintiff's Motion to Amend and Remand

A plaintiff has a right to amend its complaint once as a matter of course until the defendant has filed a responsive pleading. FED. R. CIV. P. 15(a). Once a responsive pleading has been [*6] filed, a plaintiff may amend its complaint only with the opposing party's written consent or after obtaining leave of the court. Id. Here, Plaintiff has not obtained the Defendant's consent, which means he must obtain leave from the Court.

Leave to amend a complaint should be given freely "when justice so requires." Id. Here, justice does not require allowing Plaintiff to amend the Complaint because any possible claim Plaintiff could plead would be subject to arbitration rending the Amended Complaint futile. Therefore, the Court denies Plaintiff's motion to amend the Complaint.

### B. Plaintiff's LAD claims

New Jersey's LAD statute contains a provision that precludes a claimant from seeking relief by utilizing the procedure set forth in LAD and then subsequently by filing a complaint. Specifically, LAD holds that "the procedure herein provided shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned." Chugh v. Western Inventory Services, 333 F. Supp. 2d 285, 290 (D.N.J. 2004).

Here Plaintiff initiated a proceeding before the DCR alleging violations of LAD on January 23, [*7] 2007. Plaintiff now seeks to have the Court address the same claims. In accordance with the provisions of LAD, Plaintiff's attempt to pursue his LAD claims here is precluded.

Therefore, Plaintiff's LAD claims are claims upon which relief cannot be granted and are dismissed.

### C. Plaintiff's Other Claims

Plaintiff and Defendant entered into an employment agreement on or about August 25, 2006, wherein both parties agreed to resolve all disputes relating to Plaintiff's employment with Defendant by arbitration. When deciding whether a matter must be submitted to arbitration, courts must make two inquiries: (1) whether the parties have agreed to arbitrate their claims, and (2) whether the specific dispute falls within the scope of the arbitration agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28, 105 S. Ct. 3346, 87 L. Ed. 2d 444. (1985); Hilinski v. Gordon Terminal Serv. Co. of N.J., Inc., 265 Fed. Appx. 66, 68-69 (3d Cir. N.J. 2008). In making these determinations, courts must be mindful of the federal policy favoring arbitration of disputes. Moses H. Cohen Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Where a contract contains an arbitration clause, a presumption of validity [*8] arises which can be overcome only if the court can determine with positive assurance that the clause does not cover the dispute at issue. AT&T Technologies v. Communications Workers of America, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Moreover, if a plaintiff seeks relief in federal court for a claim that is subject to an arbitration agreement, the defendant is entitled to a stay of the court proceeding pending arbitration, and to an order compelling arbitration. If the plaintiff's entire action is subject to an arbitration agreement, a court may dismiss the action instead of staying it. See Dancu v. Coopers & Lybrand, 778 F. Supp. 832, 835 (E.D. Pa. 1991), aff'd, 972 F.2d 1330 (3d Cir. 1992).

The arbitration clause contained in the employment agreement signed by both parties provides that:

> The parties agree that all disputes arising hereunder regarding this Agreement

and the employment relations in general between [e]mployer and [e]mployee shall be submitted to independent and binding arbitration, to be conducted with the rules of the American Arbitration Association. The decision of the arbitrator(s) shall be final, both parties acknowledge and agree that the arbitrator(s) decision shall not be appealable [*9] to a court of competent jurisdiction. This provision shall survive the termination of this Agreement, regardless of the reason for the termination.

The employment agreement demonstrates that Plaintiff agreed to pursue all claims arising out of his employment relationship with Defendant by arbitration before the American Arbitration Association. Plaintiff's claims in the instant matter appear to fall within the arbitration clause as they arise out of his employment relationship with Defendant. Plaintiff does not address the arbitration clause. Plaintiff does not raise any objection to or argument against the application of the arbitration clause. Therefore, this Court concludes that the parties freely entered into an employment contract containing an arbitration clause and that said arbitration clause precludes the Court from adjudicating the remaining claims.

### IV. CONCLUSION

Based on the foregoing, Plaintiff's motion to amend the Complaint is denied; and Defendant's motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) is granted. An appropriate Order accompanies this Opinion.

/S/ Dennis M. Cavanaugh

Dennis M. Cavanaugh, U.S.D.J.

Date: January 29, 2009

# EXHIBIT C

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2295-04T1

ABBAS KARIMI, M.D.,

      Plaintiff-Appellant,

vs.

TRENTON PSYCHIATRIC HOSPITAL,
DEPARTMENT OF HUMAN SERVICES,
STATE OF NEW JERSEY, JOSEPH
JUPIN, JR., and NILA A.
SHETH, M.D.,

      Defendants-Respondents.

_____

Argued: April 24, 2006 - Decided: May 12, 2006

Before Judges Cuff, Parrillo,[1] and Holston,
Jr.

On appeal from the Superior Court of New
Jersey, Law Division, Mercer County, Docket
No. L-1341-00.

Bennet D. Zurofsky argued the cause for
appellant (Reitman Parsonnet, attorneys; Mr.
Zurofsky, on the brief).

Saju C. Mathew, Deputy Attorney General,
argued the cause for respondents (Zulima V.
Farber, Attorney General, attorney; Patrick
DeAlmeida, Assistant Attorney General, of
counsel; Mr. Mathew, on the brief).

_____

[1] Judge Parrillo was not present for oral argument but has
reviewed the tape recording of the session.

PER CURIAM

Plaintiff Abbas Karimi, a medical doctor employed by defendant Trenton Psychiatric Hospital (TPH), appeals from summary judgment in favor of TPH and defendants Joseph Jupin, Jr. and Nila Sheth. We affirm.

Plaintiff's clinical privileges were suspended for nineteen days following the death of a nineteen-year-old patient under his care. Plaintiff filed a complaint alleging violations of his civil rights, namely the failure to afford him pre-suspension notice and a hearing, and a violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. He asserted that the temporary suspension of his clinical privileges was in retaliation for filing a CEPA claim in 1990.

By letter opinion dated December 9, 2004, Judge Andrew J. Smithson granted summary judgment to TPH. Judge Smithson held that plaintiff had not shown a whistle-blowing activity or an adverse employment action. He also ruled that plaintiff did not establish a due process violation. Judge Smithson recited the following facts derived from the record and viewed in the light most favorable to plaintiff, as required by Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995):

Plaintiff, Dr. Karimi, has been employed by TPH, as an internist since 1984.[2] In 1990, Dr. Karimi instituted a lawsuit against TPH for, among other things, retaliation in violation of CEPA. The lawsuit was dismissed pursuant to a settlement agreement entered into by the parties. Plaintiff, by his own account, did not encounter any further retaliatory action following the settlement until the incident from which the allegations of this current suit arise.

Specifically, plaintiff examined SG, a patient under his direct care, on April 6, 1999, in response to SG's complaints of nausea, abdominal discomfort and vomiting. At the time of this examination, though he signed off on SG's chart, plaintiff failed to note that she had an abnormal urinalysis on March 15, 1999, which showed a +3 glucose reading. Plaintiff was off duty from the evening of April 7th until the morning of April 8, 1999. Dr. Huq was the covering physician on duty during this time. By the morning of April 8, 1999, SG's condition had significantly worsened. The incoming physician had her transferred to an acute care facility, where she died of keto acidosis, a diabetes related condition, on April 15, 1999. After SG was transferred, Dr. Karimi noticed the abnormal urinalysis for the first time, and reported his error to his superior, Dr. Tattory, the Chief of Medicine at TPH at the time. Plaintiff admits that his oversight contributed to SG's death since she may not have died had she been properly treated for her diabetes.

The same day SG died, Ric Greenley, TPH's Complex Administrator, received a

---

[2] Although Dr. Karimi had been terminated [in 1990] . . ., his employment was restored [in 1994] and personnel records were changed to omit all reference to the termination as part of a settlement agreement entered into by Dr. Karimi and TPH. . . .

3

memorandum from the Drake West 1 Treatment
Team, plaintiff's coworkers/teammates,
stating[3]:

> The West 1 Treatment Team have
> many concerns regarding the
> medical treatment and care our
> patients are receiving under the
> care of Dr. Karimi. There is no
> adequate care and follow-up for
> our patients on West 1. Their
> complaints are not taken seriously
> and often ignored by Dr. Karimi.
> On April 7, 1999 Dr. Karimi was
> confronted by team members who
> questioned his treatment and lack
> of treatment of [SG]. Dr. Karimi
> responded that her physical was
> normal. We have patients who have
> complicated medical problems and
> need follow-up and care, Dr.
> Karimi does not have our
> confidence to provide the level of
> care needed for our patients.
> Team members are not comfortable
> relying on his judgment and
> medical expertise that he provides
> for our patients. We have had
> several incidents that we feel may
> have been avoided if Dr. Karimi
> had provided adequate medical
> treatment and follow-up for our
> patients.

Later that day, Joseph Jupin, CEO,
served plaintiff with a notice of
suspension, which stated:

> This will serve as official notice
> that I, as the governing body of
> Trenton Psychiatric Hospital, am

---

[3] Every patient at TOH is assigned a treatment team, generally
comprised of clinical psychiatrists, physician specialists, the
program coordinator, the RN, the psychologist and, possibly, the
occupational therapist.

A-2295-04T1

suspending your clinical privileges immediate[ly] for an indeterminate amount of time.

I regret that this action is necessary but I feel that it is prudent until the incident of clinical care involving patient is thoroughly investigated. I expect that the investigation will result in additional information and recommendations which will be considered by me in further addressing this issue.

TPH bylaw provides that "clinical privileges of medical staff members and medical staff membership may be temporarily affected by . . . [evidence of gross neglect/abuse after initial review] . . . until completion of the peer review process."

Although plaintiff continued to work in an administrative capacity at regular pay, and the suspension did not affect his seniority status or other benefits he contends that this course of action did, however, damage his personal pride and reputation. No other person was suspended regarding the SG matter.

On April 16, 1999, Jupin, in accordance with TPH's bylaws, formed a peer review committee, whereby committee members were charged with the following:

Your task is to evaluate the clinical care and treatment provided to patient by staff of Trenton Psychiatric Hospital during a relevant time period preceding her death which occurred on April 15, 1999. Specifically, your committee must advise the Governing Body whether prevailing standards of medical care were met in this case and if not, which staff, if any, bear responsibility

5

A-2295-04T1

for failure to meet the standard of care. I will expect a written report on your committee's methodology, finds and recommendations which will be submitted to me no later than Friday, April 23, 1999.

On April 23, 1999, the committee issued its report, which concluded:

It is the opinion of the committee from the facts available that the care rendered by Dr. Karimi during SG's stay at TPH the last three days was appropriate, however, there was an obvious lack of documentation on April 5 and 7, 1999. In addition, he failed to detect the 3+ glycosuria, even though he initialed the urinalysis report on March 15, 1999, a finding which may have permitted diagnosis and treatment of the underlying diabetes.

The committee's report was found to be deficient by Jupin in that it failed to make a recommendation as instructed. Thus, on April 26, 1999, Jupin created a second Peer Review Committee to "review issues related to the quality of care provided by one of our medical staff, Dr. Karimi." Plaintiff contends that Jupin should have "done nothing" when the first peer review committee neglected to make a recommendation, rather than form a second committee. The second committee submitted its report on April 30, 1999, recommending that plaintiff's clinical privileges be restored, but that he was to work under the supervision of the Chief of Medicine, until an Ad Hoc Committee, at the end of 90 days, made a further determination. Jupin accepted the committee's recommendation, and plaintiff's clinical privileges were restored with supervision by the Chief of

A-2295-04T1

Medicine on May 4, 1999, and fully restored on August 9, 1999. Plaintiff did not appeal the recommendation, as was his right under TPH's bylaws.

On May 11, 1999, Dr. Sheth, Clinical Director and President of Medical Staff at TPH, filed a report with the National Practitioner's Data Bank regarding plaintiff and the subsequent investigation of SG's death. The report stated:

> Patient evaluation and follow up to abnormal lab studies on a patient who later died were the issue under investigation and analysis by three physician panel composed of medical staff members. Privileges were temporarily suspended as a preventative measure effective 4/15/1999 to reduce the potential risk to other patients during investigation and determination of further action. Clinical privileges are restored effective 5/4/1999 as recommended by the peer review panel. Panel also recommended that his work be supervised by the Chief of Medicine for 90 days. Chief of Medicine will meet with him regularly and review sample records with him. His performance will be reviewed by a panel of physicians after 90 days to recommend further action.

Plaintiff filed a rebuttal statement, which is posted with the report made by TPH. His statement is as follows:

> The patient in question, SG died one month after I inadvertently missed 3+ glycosuria on her urinalysis report. On the day the patient became deathly sick she was examined by another doctor, as

A-2295-04T1

patient was reported to have fallen down a couple of times for no apparent reason. This doctor missed a severely volume depleted patient by neglecting to do a simple bedside diagnostic maneuver e.g. "tilt" test to look for or[th]ostatic hypotension which is the hallmark of an acidotic patient. Six hours later this patient went into a frank shock, vomited and aspirated. She ended up on mechanical ventilation and died 7 days later due to complications of ARDS or "shock-lungs." Yet the Adm here blamed me by suspending my clinical privileges, condoning at the same time, the doctor who failed to properly examine the patient, thereby missing a fatal diagnos[i]s. This patient would still be alive if she was diagnosed in a volume-depleted stage when he initially saw her. I would leave up to the good discretion of the Secretary, whether or not this damaging info should be in my file or not. I have neither broken any federal law nor committed any ethical violation.

On August 16, 1999, Dr. Sheth advised the NPDB that plaintiff's privileges were fully restored. After repeatedly attempting to appeal to Dr. Sheth to withdraw the report on the NPDB, plaintiff, almost three years after the filing of the report, appealed the TPH report to the Secretary of the Department of Human Services. On September 30, 2002, the NPDB voided the report. TPH did not oppose plaintiff's appeal or NPDB's decision to report.

A-2295-04T1

Judge Smithson addressed the CEPA claim first.    As to the issue of protected activity, he provided the following analysis:

> Plaintiff has not pointed to a whistle-blowing activity in which he was engaged. He bases his CEPA claim on the lawsuit he filed in 1990.    Though that lawsuit arose, at least in part, because he reported the inadequate medical care patients were receiving, the lawsuit itself does not serve as a whistle-blowing activity.    By definition a CEPA lawsuit is <u>based</u> on a whistle-blowing activity perpetrated by the plaintiff, it does not constitute <u>the</u> whistle-blowing activity.    Plaintiff admits that since the 1990 lawsuit he has not engaged in any whistle-blowing activity. Moreover, he does not claim that his pre-1990 report serves as the basis for the present complaint.    Consequently, plaintiff has not established a prima facie CEPA claim.

Then, Judge Smithson discussed the absence of an adverse employment action.    He stated:

> Even if this court were to allow that plaintiff's prior lawsuit met the first prong of a CEPA claim, plaintiff still cannot prevail, for he has offered no evidence of an adverse employment action. Finality is the trademark of an adverse employment action in a CEPA claim.    <u>See</u> <u>Hancock v. Oaklyn</u>, 347 <u>N.J. Super.</u> 350, 360 (App. Div. 2002)(citing <u>Keelan v. Bell</u> <u>Communications Research</u>, 289 <u>N.J. Super.</u> 531, 539 (App. Div. 1996)(wherein the court determined that there did not exist a retaliatory action until plaintiff's actual discharge, and concluded that "[t]he definition of retaliatory action speaks in terms of completed action).    "Discharge, suspension or demotion are final acts. 'Retaliatory action' does not encompass

9                                                    A-2295-04T1

action taken to effectuate the 'discharge, suspension or demotion.'" I[bi]d.

Despite plaintiff's argument to the contrary, the suspension of his clinical privileges does not equate to the suspension to which the court refers in its definition of retaliatory action quoted above. A disciplinary action is "virtually equivalent" to a final action, or discharge, only where such action impacts the employee's compensation or job rank. Pierce v. Ortho Pharm. Corp., 84 N.J. 58[, 75] (1980)(not every disciplinary action taken by the employer can support a retaliation claim, but rather only those actions that effect compensation or rank; see also Zamboni v. Stamler, 847 F.2d 73, 82 (3d Cir.), cert. denied, 488 U.S. 899 [109 S. Ct. 245, 102 L. Ed. 2d 233] (1988)(where the Court predicted that the New Jersey Supreme Court would limit unlawful retaliation claims to disciplinary actions that effect compensation or job rank).

Plaintiff's clinical privileges were suspended for approximately three weeks. He was still able to work at the hospital in an administrative capacity during this period. He was paid at the same [rate] throughout the investigatory proceedings, and he maintained his seniority status. The actions taken by defendants do not constitute an adverse employment action.

At oral argument, plaintiff argued that the loss of clinical privileges, even for a limited time, caused a loss of professional stature. This argument ignores the letter sent by plaintiff's treatment team to the Chief Executive Officer of TPH prior to his suspension. In the letter, the treatment team expressed its lack of confidence in his medical treatment of the

patients assigned to their team.   In other words, plaintiff had little, if any, professional standing to lose.

Judge Smithson also held that plaintiff received all the process that he was due.  He wrote:

> To determine whether due process requirements apply, the court must examine the nature, not the "weight" of the interests at stake.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-571 [92 S. Ct. 2701, 2706, 33 L. Ed. 2d 548, 557] (1972).  The procedural protections of the Due Process Clause are not invoked simply because a grievous loss has been visited upon a person by the State; the nature of the interest must be within the contemplation of the liberty or property language of the fourteenth amendment.  Jago v. Van Curen, 454 U.S. 14, 17 [102 S. Ct. 31, 34, L. Ed. 2d 13, 17] (1981).  The due process clause does not require a hearing in every conceivable case of government impairment of private interest.  Wolff v. McDonnell, 418 U.S. 539, 557 [94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935, 951] (1974).

> For claims of procedural due process violations, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.  Zinermon [v. Burch], supra, 494 U.S. [113] at 125 [110 S. Ct. 975, 983, 108 L. Ed. 2d 100, 113-14].  The constitutional violation actionable under §1983 is not complete unless and until the state fails to provide due process; an alleged deprivation itself is not actionable.  Id. at 126.  To determine whether a constitutional violation has occurred, it is necessary to ask what process the state provided, and whether it was constitutionally adequate.  I[bi]d.

A-2295-04T1

This inquiry involves the examination of the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law. I[bi]d. The due process analysis as to liberty parallels the accepted analysis for property deprivation. Wolff, supra, 418 U.S. at 557 [94 S. Ct. at 2975, 41 L. Ed. 2d at 951].

The minimum requirements of procedural due process are a matter of Federal law and are not diminished by the fact the state may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action. Layton v. Beyer, 953 F.[2]d 839, 849-850 (3d Cir. 1992). Due process requires that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. Armstrong v. Manzo, 380 U.S. 545, 550 [85 S. Ct. 1187, 1189, 14 L. Ed. 2d 62, 65] (1965). The opportunity to be heard must be granted at a meaningful time and in a meaningful manner. Id. at 552 [85 S. Ct. 1191, 14 L. Ed. 2d 66]. The formality and procedural requisites for the hearing can vary, depending on the importance of the interests involved and the nature of the subsequent proceedings. Boddie v. Connecticut, 401 U.S. 371, 378 [91 S. Ct. 780, 786, 28 L. Ed. 2d 113, 119] (1971). Also, due process is a flexible conception and calls for such procedural protections as the particular situation demands. Mathews v. Eldridge, 424 U.S. 319, 334 [96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 33] (1976). However, it is fundamental that a person be afforded opportunity for some kind of a hearing before being deprived of a protected interest, except for extraordinary situations where some valid government interest is at stake that justifies postponing the hearing until after the event. Board of Regents, supra, 408 U.S. at

A-2295-04T1

570 n.7 [92 S. Ct. at 2706 n.7, 33 L. Ed. 2d
at 557 n.7]; See also, Goss v. Lopez, 419
U.S. 565, 582 [95 S. Ct. 729, 740, 42 L. Ed.
2d 725, 739] (where the Court found that
students facing temporary suspension qualify
for due process protection, but noted that
"there are recurring situations in which
prior notice and hearing cannot be insisted
upon.   Student[s] whose presence poses a
continuing danger to persons or property or
an ongoing threat of disrupting the academic
process may be immediately removed from
school.").

The identification of the specific
dictates of due process generally requires
consideration of three distinct factors:

First, the private interest that
will be affected by the official
action; second, the risk of an
erroneous deprivation of such
interest through the procedures
used, and the probable value, if
any, of additional or substitute
procedural safeguards; and
finally, the Government's
interest, including the function
involved, and the fiscal and
administrative burdens that the
additional or substitute
procedural requirement would
entail.

[Mathews, supra, 424 U.S. at 335
96 S. Ct. at 903, 47 L. Ed. 2d at
33].

As to the due process claims against Jupin and Sheth, Judge

Smithson held that both were immune from liability.   He

presented the following analysis:

Plaintiff claims that both Joseph Jupin
and Dr. Sheth are personally liable for
violating his due process rights.

13                                    A-2295-04T1

Specifically, plaintiff asserts that Jupin is liable for (1) unilaterally deciding to suspend his clinical privileges without proper notice or a hearing and with total disregard for TPH's bylaws, rules and regulation, which authorize the medical staff to make such decisions; (2) forming a second peer review committee which is not authorized by the bylaws; and (3) for his continued failure to include other possible responsible parties in the investigation. As for Dr. Sheth, plaintiff alleges that she is personally liable under § 1983 for (1) filing a false report with the NPDB; and (2) failing to retract the false report at plaintiff's request, thereby negatively impacting plaintiff's reputation.

At this juncture it is unnecessary to address each of plaintiff's enumerated grievances because Jupin and Dr. Sheth are immune from individual liability.

It is an affirmative defense afforded to government officials sued for actions taken in the course of carrying out their official duty. Qualified immunity entitles a government official to avoid having to stand trial or face other burdens of litigation. Saucier v. Katz, 533 U.S. 194, 200 [121 S. Ct. 2151, 2155, 150 L. Ed. 2d 272, 281] (2001). The privilege is an immunity from suit rather than a defense to liability. I[bi]d. Like an absolute immunity, the privilege is effectively lost if a case is erroneously permitted to go to trial. Id. at 201 [121 S. Ct. at 2156, 150 L. Ed. 2d at 281].

If the official's actions at issue were undertaken while performing discretionary functions, such official is "generally shielded from liability for civil damages insofar as their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v.

14

<u>Fitzgerald</u>, 457 <u>U.S.</u> 800, 818 [102 <u>S. Ct.</u> 2727, 2738, 73 <u>L. Ed.</u> 2d 396, 410] (1982). Thus, when the law is clearly established at the time of a defendant's action, the qualified immunity defense is inapplicable. I[bi]d. But, where the court determines that "the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." <u>Id.</u> at 818 [102 <u>S. Ct.</u> at 2738, 73 <u>L. Ed.</u> 2d at 410].

In the instant matter, there were no clearly defined legal guidelines for Jupin to follow. Neither the bylaws nor legal precedent establish standards applicable to the circumstances Jupin faced. Jupin's decision to suspend plaintiff's clinical privileges [following] the death of a patient under his care was certainly a discretionary decision. Additionally, his decision to form a second peer review committee when the first "reneged on their duties" by not making a recommendation was also discretionary. Plaintiff claims that in forming this second committee, defendants acted in complete disregard for TPH's bylaws, rules and regulations. This court's reading of the bylaws is to the contrary. The bylaws do delegate the responsibility of ensuring "appropriate and quality care and services to all patients." <u>Trenton Psychiatric Bylaws</u>, Art. IV. However, the bylaws also state that the CEO is "ultimately responsible for the efficient and effective operation of the facility and to ensure that that quality patient care and services are consistently provided. <u>TPH Bylaws</u>, Art. IV. The bylaws also vest the CEO with the authority to create additional committees -- committees not specifically addressed in the Bylaws -- "on an as-needed basis." Considering that the bylaws as well as legal precedent are silent as to the

specific situation confronting Jupin, coupled with the fact that the bylaws may be read to support Jupin's actions, it follows that Jupin was perf[or]ming a discretionary function. There was simply no way for him to "know" whether he was acting in violation of the law. Because Jupin was performing a discretionary function, he is entitled to qualified immunity, and plaintiff's § 1983 claim must fail.

Dr. Sheth is also entitled to immunity. There is no indication that Dr. Sheth's report was false or fraudulent in any way. Plaintiff's argument to the contrary appears to be founded on mere semantics. For example, plaintiff takes issue with the fact that the report states that plaintiff has been suspended, pending further investigation, "to reduce potential risk to patients." Plaintiff argues that this is a false and inaccurate statement because there was never any finding that plaintiff posed a threat to patients. The report, however, does not say that he did pose a threat to patients, or that any such conclusion had been reached. Rather, the report states the reason for plaintiff's temporary suspension; i.e., until all the facts were ascertained, plaintiff's clinical privileges were suspended as a precautionary measure. Consequently, Dr. Sheth was under no obligation to withdraw the report, as it reasonably stated the circumstances surrounding SG's death and the ensuing investigation. Furthermore, Dr. Sheth explicitly included the fact that the investigatory committee restored plaintiff's privileges, albeit with supervision. She then followed up with another statement when plaintiff's privileges were fully restored. As a further aside, even if the court were to find Dr. Sheth's actions inappropriate, and qualified immunity inapplicable, plaintiff's claim against Dr. Sheth individually would still fail, as plaintiff

16

A-2295-04T1

did not name Dr. Sheth individually in his complaint.

Finally, the judge addressed plaintiff's remaining due process claims that he was suspended without notice and an opportunity to be heard and that TPH filed false reports with the NPDB. Judge Smithson resolved those claims as follows:

> As already discussed in reference to plaintiff's individual § 1983 claims, defendants did not violate any bylaws or state regulations, as there were no explicit rules governing the situation with which TPH was faced. Plaintiff has not offered any evidence to the contrary, and this court concludes that TPH cannot be held liable for making a discretionary decision that was within its power to make. Also, already discussed above, is the court's finding that Dr. Sheth's reports outlining the circumstances surrounding SG's death were appropriate and did not contain any false or fraudulent information. Therefore, only the issue notice and hearing issue remains.

> Plaintiff was SG's primary care physician, and shortly before SG went into diabetic shock plaintiff, by his own admission, failed to take note of a +3 glucose urinalysis. Coupled with the fact that Jupin received a letter stating that SG's treatment team, plaintiff's colleagues, were concerned with the care plaintiff was providing patients, it is evident that this was an extraordinary situation where defendants were justified in taking immediate action. Weighing plaintiff's interest in upholding his reputation against defendants' interest in protecting patients from possible harm, the patients' well being necessarily predominates. This is especially true given that protective measures were built into the investigatory/review process. The bylaws,

17                                                                    A-2295-04T1

which are promulgated by the medical staff, empower the medical staff to conduct investigations, form conclusions and make final recommendations. Moreover, the bylaws afforded plaintiff the right to appeal any final decision.

While plaintiff's reputation may have suffered to some degree, this court finds that he received adequate notice under the circumstances. In fact, defendants would have been suspect had they not taken immediate action, or if, as suggested by plaintiff, defendants "did nothing" when the first peer review committee failed to make a recommendation.

We have reviewed the record in its entirety and are satisfied that summary judgment was properly entered in favor of TPH. We affirm substantially for the reasons expressed in Judge Smithson's December 9, 2004 opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18                                    A-2295-04T1

**LITTLER MENDELSON**
A Professional Corporation
One Newark Center, 8th Floor
Newark, New Jersey  07102
973.848.4700
Attorneys for Defendants
  *Haig Service Corp., Richard D. Haig, Jr.*
  *and Christopher Bernard*



FILED
TEAM #2

MAY 1 7 2012

SUPERIOR COURT OF NEW JERSEY
COUNTY OF HUDSON
CIVIL DIVISION #11

---

STATE OF NEW JERSEY, ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK AND JOHN HONSBERGER, SR., LOUIS SANTIAGO, SR. (INDIVIDUALLY) AND JOHN HONSBERGER, SR. (INDIVIDUALL),

                    Plaintiffs,

vs.

HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORASTION, RICHARD D. HAIG, JR. and CHRISTOPHER BERNARD,

                    Defendants.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: HUDSON COUNTY

DOCKET NO. HUD-L-4958-11

**CERTIFICATION OF SERVICE**

---

I, EBONEÉ HAMILTON LEWIS, hereby certify as follows:

1.     I am an attorney-at-law associated with the law firm of Littler Mendelson, a Professional Corporation, counsel for Defendants, Haig Service Corp., Richard D. Haig, Jr. and Christopher Bernard (collectively "Defendants"), in connection with the above-captioned matter, and am familiar with the facts set forth in this Certification.

2.     On May 17, 2012, I caused the original and two copies of the following to be forwarded for filing with the Clerk of the Superior Court of New Jersey, Law Division, Hudson County Administration Building, 583 Newark Avenue, Jersey City, New Jersey via hand delivery, and a copy each to be served upon Joshua M. Lurie, Esq. and Henry F. Furst, Esq.,

counsel of record for Plaintiffs, Law Offices of Henry F. Furst, 52 Upper Montclair Plaza, Upper

Montclair, New Jersey  07043,via e-mail and Federal Express:

    (1)    Defendants' Brief in Opposition to Plaintiffs/Relators' Notice of Motion to Amend
Complaint;

    (2)    Certification of Eboneé Hamilton Lewis, Esq.; and

    (3)    this Certification of Service.

    I certify that the foregoing statements made by me are true to the best of my knowledge.  I

understand that if any of the above statements are willfully false I am subject to punishment.

By: _____
Eboneé Hamilton Lewis

Dated:  May 17, 2012

Firmwide:111729912.1 060197.1001

2

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW
52 UPPER MONTCLAIR PLAZA
UPPER MONTCLAIR, NEW JERSEY 07043

HENRY F. FURST

JOSHUA M. LURIE

MARK J. CINTRON
*Of Counsel*

TELEPHONE: (973) 744-4000
FACSIMILE:   (866) 744-4483

May 21, 2012

**Via FedEx Overnight – 8555 7283 7228**

Hon. Martha T. Royster, J.S.C.
Superior Court of New Jersey
Hudson Vicinage
Administration Building
585 Newark Avenue
Jersey City, New Jersey 07306

Re:   State of New Jersey ex rel. Santiago, *et al.* v. Haig Service Corp. *et al.*
Docket No: HUD-L-4958-11

Dear Judge Royster:

This is Plaintiff/Relators, Luis Santiago, Sr., John Peck, Luis Santiago, Jr. and John Honsberger, Sr.'s letter brief in further support of their Motion to Amend the Complaint pursuant to R. 4:9-1.

**Preliminary Statement**

On May 9, 2012, Plaintiffs/Relators moved to amend their Complaint to:

1.   Add proposed Defendant, James O'Neal, the new president of defendant Haig Service Corp. because of his retaliation against several Plaintiffs/Relators;

2.   Add claims for retaliation, under five separate statutes, against Plaintiffs/Relators John Honsberger, Sr. and Luis Santiago, Jr.; and

3.   Add individual employment and compensation based claims for Relators Luis Santiago, Sr. and John Peck who signed employment agreement that otherwise require arbitration before the American Arbitration Association.

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 2 of 17

On May 17, 2012, Defendants filed their opposition.   Defendants do not oppose the
amendment adding James O'Neal.  However, they argue that:

        1.    The retaliation claims should not be added because they are not
"meritorious;" and

        2.    The individual claims of Relators Luis Santiago, Sr. and John Peck should
not be added because arbitration is the exclusive remedy.

These positions are devoid of merit.

First, they essentially seek summary judgment on the contested retaliation claims by the
reference to certifications previously submitted to the court.   Second, they ignore the policy of
our Supreme Court, which has been implemented in numerous contexts, to forbid piecemeal
litigation between the courts and arbitration in just these kind of matters.

**Legal Argument**

1.    Legal Standard.

Both parties have properly set forth the legal standard for amending complaints.
Defendants, however, fail to apply the standard properly.

In their opposition, Defendants state that this matter should be determined pursuant to the
so-called "futility prong," which requires the Court to address the amendment as it would
pursuant to R. 4:6-2.  Notte v. Merchants Mutual Ins. Co., 185 N.J. 490, 501 (2006).  Thus, the
Court must "search[] the complaint in depth and with liberality to ascertain whether the

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 3 of 17

fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989); (internal citation omitted). The Court should not be concerned with whether the Plaintiff can prove the allegations in the complaint; rather, "the examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach." Id. (internal citations omitted). "[A]ll facts alleged in the complaint and legitimate inferences drawn therefrom are deemed admitted." Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987); (internal citations omitted). Based on these standards, every reasonable inference is afforded the plaintiff and the motion is only granted in rare instances, F.G. v. MacDonell, 150 N.J. 550, 556, (1997); Craig v. Suburban Cablevision, 140 N.J. 623, 625-626, (1995), and ordinarily without prejudice. Printing Mart-Morristown, supra at 772[1].

2.      The Claims for Retaliation.

        Defendants oppose the filing of the Amended Complaint regarding the claims for retaliation. Defendants claim that Plaintiffs/Relators John Honsberger Sr. ("Honsberger") and Luis Santiago, Jr. ("Santiago, Jr.") fail to meet their burden of proving a *prima facie* case of

---

[1] The Court must also consider whether evidence outside the complaint has been introduced, and if so, treat the challenge as a motion for summary judgment pursuant to R. 4:46. R. 4:6-2. While both parties have included evidence outside the proposed amended complaint, Plaintiffs/Relators believe that the use of the outside evidence is merely to give context to the proposed Amended Complaint, not to prove the truth of those facts. Thus, the Court should rule on this matter as it would a motion to dismiss pursuant to R. 4:6-2.

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, *et al.* v. Haig, *et al.*
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 4 of 17

retaliation.   In doing so, they make out of context factual averments, pieced together from already filed pleadings, to suggest a lack of retaliation. They reference only the Conscientious Employment Protection Act, N.J.S.A. 34:19-1 *et seq.* ("CEPA") and ignore the four other statutory retaliation claims upon which Plaintiffs/Relators rely.   As a result, their arguments remain unsupported, and thus the motion to amend the complaint to include the retaliation claims must be granted.

      a.    Honsberger and Santiago, Jr. have set forth a *prima facie* case of retaliation under CEPA.

Defendants correctly identify the tree part test to show a *prima facie* case of retaliation, under CEPA as required under the Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

> To establish a prima facie case of discriminatory retaliation, plaintiffs must demonstrate that: (1) they engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation.' Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 629-30, (1995) (citing Jamison v. Rockaway Twp. Bd. of Educ., 242 N.J. Super. 436, 445, (App. Div. 1990); Wrighten v. Metropolitan Hosps., Inc., 726 F.2d 1346, 1354 (9th Cir.1984)).

Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 125 (2008).   However, they fail to recognize that each of these three elements is satisfied in the text of the proposed Amended Complaint which, at this stage of the proceedings, is sufficient to justify the amendment.

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 5 of 17

     i.      Haig knew that Honsberger and Santiago, Jr. engaged in a protected activity

Honsberger and Santiago, Jr., invoked their rights as employees and filed a civil action authorized by four statutes: the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 *et seq.* ("NJFCA"); the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq.* ("NJPWA"); Federal Fair Labor Standards Act, 29 U.S.C. § 601 *et seq.* ("FLSA"); and the New Jersey Wage Payment Law, N.J.S.A. 34:11-56a *et seq.* ("NJWPL"). The Defendants knew about this protected activity because they were personally served with a copy of the Complaint. (See Certification of Henry F. Furst dated May 8, 2012, attached with the initial filing of the within motion, Ex. B).

     ii.     After being served with the Complaint, Haig began to retaliate against Honsberger and Santiago, Jr.

As set forth at length in the proposed amended complaint, as well as the Certifications which were filed with the Court regarding an Order to Show Case by Honsberger and Santiago, Jr. to stop the retaliation, Defendants began to retaliate against Honsberger and Santiago, Jr. after they were served.

In their Opposition to the instant motion, Defendants pull apart these documents, attempt to change context, deliberately fail to include language, skip paragraphs, and otherwise deliberately modify the notice-type pleading and certifications in an attempt to convey, as a matter of law, that no retaliation occurred because it was simply an effort by Haig, as the good

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 6 of 17

corporate citizens that they are, to placate Honsberger and Santiago, Jr., and give them everything that they want. However, a review of every example that Defendants utilize shows that they fail to include all pertinent facts that there has been no retaliation.

First, Defendants cite to the proposed Amended Complaint. They claim that each statement, taken on its own, does not show the retaliation (with the exception of the claim that Honsberger has been demoted, which alone supports the claim for retaliation). However, when the full text is viewed, and context is added, the paragraphs which Defendants cite actually demonstrate the existence of retaliation.

Below is a table showing the paragraphs from the Proposed Amended Complaint which Defendants suggest, on Page 4 of their opposition brief, support their contention that Plaintiffs/Relators have failed to make a *prima facie* showing of a claim of retaliation under CEPA side by side with the language ignored by the Defendants in full context.

| Language Cited by Defendants - Distortions | Complete Text of Language, Context, and Description – Facts |
|---|---|
| The first claim that no retaliation took place.<br><br>"Initially, shortly after the Complaint was served, Honsberger and Santiago Jr., who had been working as technicians during the day shift for nearly their entire careers with Haig, were told that they were being transferred to the night shift. When they objected, Haig eventually relented." (Proposed Amended Complaint at ¶ 90). | The language cited, when the full context is shown, indicates that this was a retaliatory act taken by the Defendants. While the retaliation was halted due to the acts of the Plaintiffs/Relators and their counsel, it is an example of the retaliatory acts of the Defendants due to the Plaintiffs/Relators filing the Complaint.<br><br>As set forth in Honsberger's Certification dated April 17, 2012, and filed along with the |

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 7 of 17

| | |
|---|---|
| In support, they claim that the Plaintiffs/Relators refused to work the night shift (Db at 5-6). This is factually inaccurate. | Order to Show Cause previously filed in this matter, Mr. Honsberger certified that "[a]fter the Complaint was served in this matter, I was called on the telephone by Jim O'Neal who is the new President of Haig. I was informed by Mr. O'Neal that Haig was running out of daytime inspection work and I would have to work the night shift. I told Mr. O'Neal that I did not want to work the night shift, I had never worked the night shift, and was not about to start. Mr. O'Neal then told me that if Haig runs out of daytime work that I would be sent home and called when work becomes available. In that event, I would lose pay for those hours. Later that same day, Mr. O'Neal called me again and said that I did not have to work the night shift. (Honsberger Cert. dated April 17, 2012, at ¶¶ 9-11). |
| | Similar facts occurred with Mr. Santiago, Jr. |
| | It is conspicuous that, for several years, Honsberger and Santiago, Jr. were on the day shift and only after the complaint was served, were they told that they would be switched to the night shift. They complained, called their attorneys who in turn called Defendants' counsel, and then they were informed that they were back on the day shift. |
| The second claim that no retaliation took place. | Defendants deliberately fail to include the rest of the paragraph which states "specifically stating the retaliation was because [Honsberger] had filed the Complaint in this matter while still employed by Haig." This attempt to hide the full language of the paragraph of the proposed Amended Complaint shows the attempts of the Defendants to contort the facts asserted in the |
| "Later, Defendant O'Neal berated Honsberger with the use of foul language [.]" (Proposed Amended Complaint at ¶ 91). | |
| Defendants claim that just the use of derogatory language in itself is not retaliatory. However, it was not just the use of the | |

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 8 of 17

| | |
|---|---|
| language which is important, but rather it shows that proposed Defendant O'Neal intended to retaliate against the Plaintiffs/Relators. | proposed Amended Complaint in a vain attempt to make the Court believe that no retaliation has taken place.<br><br>Further, as set forth in Mr. Honsberger's Certification dated April 17, 2012, Mr. O'Neal actually said when Mr. Honsberger went to inquire whether he was going to get paid as normal, was "call [your] lawyer" and then told him that he was "fucking stupid for suing the company while still working there." (Honsberger Certification dated April 17, 2012 at ¶¶ 17, 18.)<br><br>Thus, this paragraph of the proposed Amended Complaint, with context added, shows the intent of the Defendants to do everything that they could to retaliate against the Plaintiffs/Relators. |
| The third claim that no retaliation took place.<br><br>"Defendants have begun attempting to limit the hours of work available for Honsberger by attempting to send him home early in the day on several occasions." (Proposed Amended Complaint at ¶ 92).<br><br>The failure to include the full context of what occurred shows that the Defendants are attempting to distort the facts in an effort to hide the retaliation. | Once again, Defendants do not give the full context to the Court. This is another attempt by the Defendants to distort the facts in a failed attempt to assert that no retaliation has taken place against the Plaintiffs/Relators. Indeed, when the full context of the paragraph is taken with the associated proofs, it shows that Mr. Honsberger has had reduced hours and that Defendants have and have sent him home early on certain days. These are retaliatory acts done by the Defendants in an attempt to reduce the compensation of the Plaintiffs/Relators for the filing of this Complaint.<br><br>As set forth in Mr. Honsberger's Certification dated April 17, 2012, "On March 15, 2012, I finished before the end of the day. When I asked what job to work on next, I was told to go home at 1:30 p.m. by Tish. This was strange because there was usually more work for me to perform if I finished a job early. I |

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 9 of 17

| | |
|---|---|
| | asked Tish if I would be paid for the entire day, and she told me to 'ask Jim.' . . . . . I was informed that there was not enough work for me at this time, yet Haig has hired new technicians since the Complaint was served, and these new employees are performing work during the day that I normally performed. I have been told by my co-workers that they are so backed up, that certain customers have been waiting for service for two to three weeks. These are for service calls that I normally would have performed during my normal 40 hour work week." (Honsberger Cert. Dated April 17, 2012 at ¶¶ 15, 26-27). |
| The fourth claim that no retaliation took place.<br><br>"Honsberger was demoted after the Complaint was filed." (Proposed Amended Complaint at ¶ 93).<br>The suggestion of no retaliation is simply illogical. | This is clear retaliation under CEPA. CEPA states that an example of retaliation is the "suspension or demotion of an employee." N.J.S.A. 34:19-2e. This supports the retaliation claim against Mr. Honsberger. |
| The fifth claim that no retaliation took place.<br><br>"Santiago, Jr. and Honsberger were informed that they would no longer be working service calls. Santiago, Jr. and Honsberger were informed that they have been removed from the 'on call list.'" (Proposed Amended Complaint at ¶ 94).<br><br>Defendants go on to claim that the Plaintiffs/Relators have refused to work nights, and have requested to be removed from the "on call" list. (Db at 5-6). This is factually inaccurate. Rather, the Plaintiffs did not want to have their entire shift be changed from the | Defendants fail to fully detail the facts or state the entire paragraph in an attempt to sway the Court. This omission and distortion is done with the purpose of attempting to portray that no retaliation has been done, when in fact, not only have the Plaintiffs/Relators been retaliated against by being removed from doing service work and removed from the "on call" list, they have lost compensation as a result.<br><br>The following sentence in Paragraph 94 of the proposed Amended Complaint, which was deliberately omitted from the Defendants' opposition brief, states "[w]hen on call for a week, Santiago, Jr. and/or Honsberger would |

## LAW OFFICES OF HENRY F. FURST
### ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 10 of 17

| | |
|---|---|
| day shift to the night shift. It is inaccurate that they refused to work "on call." Further, it was the Defendants who had already removed them from performing service work and removed them from the "on-call" list. | receive an additional $50.00 in compensation for being on call and then overtime payments for the time spent performing "on call" work."<br><br>Further, as set forth in the Certification of Honsberger dated April 17, 2012 and the Certification of Santiago, Jr., dated April 18, 2012, both Plaintiffs/Relators detail what occurred.<br><br>When the Haig employees are on the "on-call" list, they receive an addition $50.00 per week in compensation, and overtime payments for the time spent on "on call" work. When Honsberger and Santiago, Jr. were suddenly informed, after the service of the Complaint upon the Defendants, that they were no longer allowed to do service work, and all the on call work is service work and not inspections, they said that they should be removed from the on call list. (Honsberger Cert. at ¶ 21). Mr. O'Neal told Mr. Honsberger that he and Santiago, Jr. were already removed from the list."<br><br>This is retaliatory because it is a loss of compensation which is an adverse employment action under CEPA. |
| The sixth claim no retaliation took place.<br><br>"Santiago, Jr. and Honsberger were informed that one of them needed to return their company vehicles." (Proposed Amended Complaint at ¶ 95).<br><br>Defendants further claim that they were given the choice as to who would be required to | The Defendants omit the subsequent paragraphs of the proposed Amended Complaint and otherwise fail to provide context for this paragraph in order to distort the facts to make it appear that there was no retaliation. However, in order to properly ascertain the context and the retaliation, it is important to review the following paragraphs from the proposed Amended Complaint. |

# LAW OFFICES OF HENRY F. FURST
## ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 11 of 17

| | |
|---|---|
| return the vehicle. (Db. at 6). However, this is not true, as the facts show. | While it is true that Santiago, Jr. was contacted by proposed Defendant O'Neal and told that Santiago, Jr. and Honsberger were informed that one of them needed to return their company vehicles because of a "restructuring" occurring at Haig. This, taken by itself would not amount to retaliation. However, there are additional pertinent facts omitted by the Defendants which support the assertion of retaliation.

Honsberger has had his company vehicle for his entire tenure at Haig and Santiago, Jr. has had his company vehicle for a long time as well.

Santiago, Jr. and Honsberger are the only "team" at Haig who were told that they needed to return their company vehicle. There are other "teams" where each member still retains their company vehicle.

Santiago, Jr. was informed by O'Neal that it should be Honsberger who should return his vehicle because he is now a "helper" and Santiago, Jr. is now the "lead technician."

Honsberger returned his company vehicle, and has been told to utilize his own private vehicle for work related purposes. He does not get compensation for using his private vehicle for work related purposes. (Proposed Amended Complaint ¶¶ 95-98).

These facts show that the requirement to return the vehicle was retaliatory and part of a demotion of Honsberger. Honsberger was not given the option of returning his car, a fringe benefit which he had for his entire tenure at |

**LAW OFFICES OF HENRY F. FURST**
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 12 of 17

|  | Haig. Further, Honsberger is now required to pay various costs for his vehicle because it is being used for work related purposes and not just personal use, and this causes him monetary damages. |
|---|---|

Defendants roam through other certified statements from Honsberger and Santiago, Jr. in an attempt to demonstrate a lack of retaliation. Without unduly burdening the Court by addressing every distortion made, as the issue of the switch to the night shift has already been discussed above[2], we address two points that typify the lack of merit to Defendants' opposition.

First, Plaintiffs/Relators did not refuse to work "on call" work. This is just factually inaccurate and, in any event, an issue left for trial. Rather, Plaintiffs/Relators certified that they did not want to be placed on the night shift. "On-call" work, in contrast, is performed during evenings, weekends, and holidays. Certification of John Honsberger, Sr. dated May 21, 2012 at ¶ 4(a) (hereafter Honsberger Cert. at ¶ ___). "On call" work is strictly emergency service work. Honsberger Cert at ¶ 4(b). The on-call list is posted three months in advance to ensure that Haig employees are given sufficient time to arrange their plans for their "on call" rotation. Honsberger Cert at ¶ 5. Santiago, Jr. and Honsberger have been performing on call work during their entire tenure with Haig, and have never complained about it. Honsberger Cert at ¶ 8. Rather, they were informed that they could no longer perform service work, were already

---

[2] "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Entrot v. The Basf Corp., 359 N.J. Super. 162, 188 (App. Div. 2003) (citing Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761(1998)) (emphasis added).

**LAW OFFICES OF HENRY F. FURST**
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 13 of 17

removed from the on call list by proposed Defendant O'Neal, and lost this supplemental income.

Honsberger Cert. at ¶¶ 11-12.

Second, the issue regarding the crawl space regards Haig ordering Honsberger to perform

a function which would violate the clear mandate of OSHA designed protection for workers.

Haig should take appropriate steps to ensure the safety of their employees, pursuant to 29 C.F.R.

§ 1910.146, in confined spaces.  Defendants, claim that Honsberger refused this simply because

of a physical limitation and no other reason and that's why they assigned him to work with Mr.

Santiago, Jr. (Db. at 6).  The fact is, Honsberger would not enter the confined space because of

fear for his safety.  Because he asserted his right not to be placed in physical jeopardy without

appropriate safeguards, Haig suggests that he refused work and demoted him to work as a helper

for Santiago, Jr. – a clear demotion.

        iii.    It was because Honsberger and Santiago, Jr. participated in this litigation
                that the retaliation occurred.

Plaintiffs/Relators allege that the retaliation occurred because of the filing of the

Complaint.  Defendants assert that it is just a reorganization of Haig.  This is a factual issue, and

thus the amendment cannot be denied because a question of fact, best left for the trier of fact to

decide, exists.

        b.    Defendants Fail to Address the Four Other Claims for Retaliation.

While the Defendants assert their opposition to the Amendment includes the CEPA

claims, they fail to address the four other causes of action for retaliation under the NJFCA,

NJPWA, NJWPL, and FLSA, each of which contain specific provisions against retaliation.  See

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 14 of 17

N.J.S.A. 2A:32C-10(b) ("No employer shall discharge, demote, suspend, threaten, harass, deny promotion to, or in any other manner discriminate against an employee in the terms and conditions of employment" for assisting or filing a claim under NJFCA); N.J.S.A. 34:11-56.39 ("Any employer who discharges or in any other manner discriminates against any worker" because they have filed a complaint under the NJPWA is liable for retaliation); 29 U.S.C. § 215 (a)(3) ("it shall be unlawful for any person . . . (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint" based upon a claim of violations of the FLSA); and N.J.S.A. 34:11-56a24 ("Any employer who discharges or in any other manner discriminates against any employee because such employee has" brought a claim under the NJWPL is liable for retaliation). Thus, these four causes of action should be allowed in the amended complaint without argument as Haig fails to suggest a reason the amendment is improper.

c.   Plaintiffs/Relators Should be Allowed to Amend the Complaint to Include the Retaliation Claims.

For the reasons set forth above, Plaintiffs/Relators have made a *prima facie* showing of retaliation under CEPA and have also brought several other retaliation claims which were not addressed in Defendants' opposition. Thus, the Court should allow the Complaint to be amended to include the retaliation claims as proposed.

LAW OFFICES OF HENRY F. FURST
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 15 of 17

3.       The Claims Subject to the Arbitration Agreement.

       Defendants fail to address the key case regarding the consolidation of the litigation and

arbitration claims.  They fail to address the clear mandate of our Supreme Court that in matters,

as here, where the facts are so intertwined Courts should "look with disfavor upon the

unnecessary bifurcation of disputes between judicial resolution and arbitration." (Ohio Cas. Ins.

Co. v. Benson, 87 N.J. 191, 197 (1981)).  The Court should "invalidate the contractual arbitration

clause" because "it requires an arbitration proceeding that duplicates the underlying litigation."

Zirger v. General Accident Ins. Co., 144 N.J. 327, 343 (1996).   The reason for this is that

resolution in one forum is favored when there would be duplicative litigation.  In this case, the

proper forum must be the Superior Court because: 1) of the public interest in having the

resolution of disputes concerning false claims against the State adjudicated in public; 2) the

arbitration provisions cannot and do not require the handling of the False Claims issues in

arbitration; and 3) the State of New Jersey, the party in interest of the False Claims case, is not a

party to the arbitration clause of the employment contracts.

       Defendants, rather than address Ohio Cas. Ins. Co. or its progeny, provide an exposition

concerning the law of arbitration.  While it may be accurate, it is also irrelevant instant motion.

       Further, Defendants fail to appreciate that their attempts to obtain discovery of issues

which would only be relevant to the arbitration claims demonstrate why bifurcation is improper

here.  Recently, in the matter of Cole v. Jersey City Medical Center, 425 N.J. Super. 48 (App.

Div. 2012), the Court was presented with a scenario that provides guidance on this issue.  There,

**LAW OFFICES OF HENRY F. FURST**
ATTORNEYS AT LAW

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 16 of 17

the employment agreement included an arbitration clause, as do the employment agreements at

issue here.  Id. at 52.  Cole brought a CEPA claim and other claims in the Superior Court, and the

Defendants litigated the matter there until shortly before trial when they attempted to enforce the

arbitration clause and remove the matter to Arbitration.  Id. at 55.  Among the reasons that the

Court denied the enforcement of the arbitration clause was that the parties actively participated in

the discovery process.  Id.  at 61.  In Spaeth v. Srinivasan, 403 N.J. Super. 508 (App. Div. 2008),

the Court did enforce the arbitration provision because only minimal discovery occurred.  Spaeth

at 512.

Here, we have a hybrid between Spaeth and Cole.  While it is true that discovery has only

began, the issues which Defendants seek to discover from Relators Peck and Santiago, Sr. go to

the essence of the claims that would otherwise be arbitrated.   This is not limited discovery as

Defendants assert in their opposition, rather it is substantive discovery with a purpose to discover

facts which are only to be used in other forums if Defendants are successful in preventing the

amendments.   Further, because the Court has reduced the time to respond to initial discovery

requests, Plaintiffs/Relators must either object at this time to these questions only to answer them

later, or else answer them now and waive any objections which they may have later.

Finally, Plaintiffs/Relators do not claim, anywhere, that the Defendants have waived their

rights to Arbitration.   Once again, all that the Plaintiffs/Relators have argued is that the

Defendants are attempting to litigate this matter piecemeal in the manner disfavored by Ohio

Cas. Ins. Co. and its progeny.   Thus, the Court should rule, strictly for the purposes of this

**LAW OFFICES OF HENRY F. FURST**
**ATTORNEYS AT LAW**

State of New Jersey ex rel. Santiago, et al. v. Haig, et al.
Letter Brief in Further Support of Motion to Amend Complaint
May 21, 2012
Page 17 of 17

litigation, that the compensation related arbitration claims should not be adjudicated before the

American Arbitration Association. This does not mean that for other matters, outside the scope

of the instant litigation, arbitration might be appropriate. Indeed, if we learn in the future that

Mr. Haig made derogatory comments to the Plaintiffs/Relators who are subject to an

employment agreement regarding their age, sex, race, national origin, etc., then those claims

would not be subject to this litigation and could brought only in arbitration (unless they were in

the context of retaliation for bringing the instant matter).

<u>Conclusion</u>

For the reasons set forth above, the Court should grant Plaintiffs/Relators motion to

Amend the Complaint to include the claims against Proposed Defendant James O'Neal for

retaliation, to include the retaliation claims, and to allow Relators Santiago, Sr. and Peck to bring

their individual claims in a single action in the Superior Court.

Respectfully Submitted,

Joshua M. Lurie, Esq.

JML:rdh

cc:    Ebonee' N. Hamilton Lewis, Esq. (via Email and Regular Mail)
       DAG Lorena Salzmann (via Email and Regular Mail)

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>Plaintiffs,<br><br>vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION<br><br>**CERTIFICATION OF JOHN HONSBERGER, SR. IN SUPPORT OF MOTION TO AMEND THE COMPLAINT TO INCLUDE RETALIATION CLAIMS AGAINST THE DEFENDANTS** |

John Honsberger, Sr. certifies as follows:

1.  I am a Plaintiff/Relator in the above matter.

2.  I am currently a technician for Defendant Haig Service Corp.

3.  I have personal knowledge of the facts contained herein.

4.  "On call" work is:

     a.  Additional work performed for Haig during the evenings, nights, weekends and holidays;

     b.  Entirely emergency service work, such as if an alarm is going off or something else goes wrong; and

     c.  Not inspection work.

5.      Haig posts the list for who will be on call three months in advance.  The purpose of this is to ensure that all employees who are on call can appropriately prepare and arrange their plans for when they are on call.

6.      When a Haig employee is on the "on call" list, the employee receives an additional $50.00 per week while "on call."   In addition, the employee receives additional compensation for the time spent performing on "on call" work.

7.      I have never refused "on call" work, and have performed it many times during my tenure with Haig.

8.      I have never complained to anyone about having to work evenings, nights, weekends or holidays because I was "on call" but at times had other individuals cover my "on call" shift.

9.      I have objected to my <u>entire</u> shift being switched to the night shift.

10.     Shortly after the Complaint in this matter was served, I was called by proposed Defendant James O'Neal and told that I was no longer going to be permitted to perform service work for Haig, and my work would be limited only to performing inspections.

11.     I told Mr. O'Neal that if I was no longer allowed to do service work, I should be removed from the "on call" list as well, since the "on call" work is only service work.

12.     Mr. O'Neal told me that I had already been removed from the "on call" list, as has been my co-Plaintiff/Relator, Luis Santiago, Jr.

13.     Notwithstanding that I have been officially removed from service calls, and recently informed after the service of the Complaint that I have been demoted to being a helper and only permitted to do inspections, I have in fact been sent to do service work on private customers of Haig.

-2-

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

John Honsberger, Sr.

Dated: May 20, 2012

−2−

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | | |
|---|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | : : : : : | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY |
| | : | Docket No. HUD-L-4958-11 |
| Plaintiffs, | : : | CIVIL ACTION |
| vs. | : : | **CERTIFICATE OF SERVICE** |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | : : : : | |
| Defendants. | : : | |

I hereby certify that an original and two copies of the within Letter Brief in Further Support of Motion to Amend Complaint and Certification of John Honsberger, Sr. have on this day been forwarded for filing to the Civil Motions Clerk, Hudson County Courthouse, 583 Newark Avenue, Jersey City, New Jersey 07306 via FedEx Overnight, and a copy has been served upon:

Ebonee N. Hamilton Lewis, Esq.
Littler Mendelson, P.C.
One Newark Center
1085 Raymond Blvd, 8th Floor
Newark, New Jersey 07102

via Email and Regular Mail.

-1-

A Copy of these documents has also been served upon the Attorney General of the State of New Jersey by sending a copy to Deputy Attorney General  Lorena Salzmann, Department of Law, 124 Halsey Street, 5th Floor, Newark, New Jersey 07101 via E-mail and Regular Mail.

A courtesy copy of this submission has also been served upon the Hon. Martha T. Royster, J.S.C. via FedEx Overnight.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment.

By: _____
Joshua M. Lurie, Esq.

Dated: May 21, 2012

-2-

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

| | | |
|---|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), | : : : : : | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION |
| Plaintiffs, | : : | |
| vs. | : : | **ORDER** |
| HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD | : : : : : | |
| Defendants. | : : | |

THIS MATTER, having been opened to the Court by the Law Office of Henry F. Furst, co-counsel for the Plaintiffs/Relators, the STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), for an Order permitting the Plaintiffs/Relators to Amend the Complaint to include the individual claims of Relators Luis Santiago, Sr. and John Peck for disposition in this litigation and to include claims for retaliation, the Court having reviewed Plaintiffs/Relators moving papers, the opposition filed by Defendants, oral argument, for good cause shown and the reasons set forth on the record on May 25, 2012,

IT IS ON THIS ___ DAY OF _____, 2012,

**ORDERED**, that Plaintiffs/Relators may file an Amended Complaint, within 14 days of the entry of this Order:

1.)     To include claims for retaliation against Luis Santiago, Jr. and John Honsberger, Sr. by the Defendants and to add the additional Defendant, James O'Neal; and

2.)     But not include the individual claims of Relators Luis Santiago, Sr. and John Peck.

and it is further

**ORDERED**, that a copy of the within Order shall be served on all parties within seven (7) days.

_____

J.S.C.

Law Office of Henry F. Furst
52 Upper Montclair Plaza
Montclair, New Jersey 07043
(973) 744-4000

Peter G. Caplan, Esq.
130 Pompton Avenue
Verona, New Jersey 07044
(973) 571-1868

Attorneys for Plaintiffs/Relators

**FILED**

**MAY 2 5 2012**

**MARTHA T. ROYSTER, J.S.C.**

| | |
|---|---|
| STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually),<br><br>      Plaintiffs,<br><br>    vs.<br><br>HAIG'S SERVICE CORPORATION (a New Jersey Corporation) d/b/a HAIG SERVICE CORPORATION; RICHARD D. HAIG, JR.; and CHRISTOPHER BERNARD<br><br>      Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION: HUDSON COUNTY<br><br>Docket No. HUD-L-4958-11<br><br>CIVIL ACTION<br><br>**ORDER** |

THIS MATTER, having been opened to the Court by the Law Office of Henry F. Furst, co-counsel for the Plaintiffs/Relators, the STATE OF NEW JERSEY ex rel. LUIS SANTIAGO, SR., LUIS SANTIAGO, JR., JOHN PECK and JOHN HONSBERGER, SR; LUIS SANTIAGO, JR. (individually); and JOHN HONSBERGER, SR. (individually), for an Order permitting the Plaintiffs/Relators to Amend the Complaint to include the individual claims of Relators Luis Santiago, Sr. and John Peck for disposition in this litigation and to include claims for retaliation, the Court having reviewed Plaintiffs/Relators moving papers, heard any opposition thereto by Plaintiff Defendants, and for good cause shown,

IT IS ON THIS 25 DAY OF May, 2012,

-1-

**ORDERED**, that Plaintiffs/Relators may file an Amended Complaint, either in the exact form, or in a form similar to the proposed amended complaint attached as Exhibit C to the Certification of Henry F. Furst within 14 days of the entry of this Order to assert individual claims on behalf of Relators Luis Santiago, Sr. and John Peck, and to include claims for retaliation against Luis Santiago, Jr. and John Honsberger, Sr by the Defendants; and it is further

**ORDERED**, that the arbitration clauses contained within the employment agreements for Relators Luis Santiago, Sr. and John Peck are hereby waived for the purposes of the instant litigation so that the individual claims of Luis Santiago, Sr. and John Peck may joined with the instant litigation and it is further

**ORDERED**, that a copy of the within Order shall be served on all parties within seven (7) days.

M.T. Ragster
J.S.C.