**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **STATE OF NEW JERSEY** *ex rel.* **LUIS SANTIAGO, SR., et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**HAIG'S SERVICE CORPORATION, et al.,**<br><br>**Defendants.** | Civ. No. 12-4797 (WJM)<br><br>**OPINION** |

This matter comes before the Court on Defendants Haig Service Corporation ("HSC"), Richard D. Haig, Jr. ("Haig"), James O'Neill ("O'Neill" and erroneously pled as "O'Neal"), and Christopher Bernard's (collectively, the "Defendants") motion for summary judgment and Plaintiffs' (also referred to as, the "Relators") cross-motion for partial-summary judgment. Relators, former employees of HSC, brought suit alleging violations of the New Jersey False Claims Act ("NJFCA"), failure to properly compensate Relators under the New Jersey Prevailing Wage Act ("NJPWA"), failure to pay overtime in contravention of the Fair Labor Standards Act ("FLSA") and the New Jersey Wage Payment Law ("NJWPL"), retaliation in violation of the NJFCA, NJPWA, FLSA, NJWPL, and the New Jersey Conscientious Employee Protection Act ("CEPA"), and common law counts associated with the claims for failing to properly pay wages. Relators' claims stem from a compensation plan setup by Haig, which they argue failed to pay prevailing wages in full when due, and the ensuing retaliation suffered as a result of bringing the instant action. The motions are decided without oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part** and Relators' cross-motion for partial-summary judgment is **DENIED**.

## I.   BACKGROUND

Defendant HSC creates, installs, monitors, and customizes integrated electronic safety and security systems. (Defs.' Statement of Undisputed Facts

1

("DSUF") ¶ 2, ECF No. 79-2.)  HSC conducts work for both private and public entities.  (*Id.*)  Defendant Haig is the CEO of the company and Christopher Bernard is his brother-in-law, consulting on IT matters.  (*See* Defs.' Br. Supp. Mot. Summ. J. ("Defs.' Br."), ECF No. 79-1, 2.)  Lastly, Defendant O'Neill is HSC's branch manager.  (DSUF ¶ 6.)  All three individual defendants signed certified payroll records related to prevailing wage work performed by the company's employees.  (*Id.* ¶ 8.)

Haig developed the Wage Payment Reconciliation Program (the "Compensation Plan") through which his employees received a fixed salary, which was allocated to both prevailing wage and non-prevailing wage work.  (DSUF ¶¶ 42-46.)  Employees would be paid the prevailing wage rate for all hours that fell under the NJPWA and the state minimum wage for all other hours.  (*Id.* ¶¶ 47-48.)  In describing the plan as an "advance," Hague states that he reviewed the records each quarter to ensure that employees were properly paid.  (Decl. Richard D. Haig, Jr. Supp. Defs.' Mot. Summ. J. ("Haig Decl.") ¶¶ 38-39.)  HSC would pay any unpaid wages if compensation was insufficient and overpaid amounts would roll over into the next quarter until year end.  (*Id.*)  Should an employee be overpaid at the end of the year or at termination, HSC asserts that the employee kept the extra compensation as a bonus.  (*Id.*)

Relators dispute that this is how the Compensation Plan actually functioned. Relators contend that the Plan did not accurately report or account for prevailing wages, overtime, or certain conditions where higher rates were owed.  (Relators' Statement of Disputed Facts ("RSDF") ¶ 48, ECF No. 81-7.)  Accordingly, any reconciliation depending on a review was inherently flawed and these discrepancies—resulting in underpayment instead of advancing salaries on many occasions—caused employees to never be paid in full.  (*See* RSDF ¶ 50.)

Relator Luis Santiago, Sr.—hired by HSC in July 2008 as a Field Service Supervisor—alleges that, while reviewing HSC's files as part of his job, he noticed that he was not being paid prevailing wages in full.  (Decl. Luis Santiago, Sr. Opp. Defs.' Mot. Summ. J. ("Santiago Decl.") ¶¶ 5, 10.)  He proceeded to inform other employees of his findings, including his son Luis Santiago, Jr. and co-plaintiff John Honsberger, Sr.  (*Id.* ¶ 13.)  Relators originally filed suit against the Defendants in the Superior Court of New Jersey, Law Division—the instant action. (Complaint, ECF No. 1-1, 1-22.)  Though the Complaint was filed under seal, this was lifted by the state court.  (Unsealing Order, ECF No. 1-1, 49.)  At this time,

Relators Honsberger and Santiago, Jr. were still employed by HSC.  (Declaration of John Honsberger, Sr. ("Honsberger Decl."), ECF No. 81-8, ¶ 27.)  Honsberger alleges that when the lawsuit became public knowledge HSC began retaliating against him.  (*See* Honsberger Decl. ¶ 26.)  In particular, Honsberger declares that his hours were reduced, along with his hourly wage.  (*Id.* ¶¶ 28-32.)  Honsberger also alleges that HSC attempted to transfer him to the night shift.  (*Id.* ¶ 35.)  When he inquired into the circumstances surrounding these changes, Honsberger states that O'Neill used foul language towards him and intimated that the changes were a result of the lawsuit.  (*Id.* ¶ 27.)  In addition, Honsberger asserts that he was informed that he would not be permitted to perform service work due to his status as a Relator.  (*Id.* ¶ 28.)

After this, Honsberger alleges that he was removed from the on-call list and was sent to perform service work by himself.  Santiago, Jr. was also removed from the on-call list.  (*Id.* ¶ 29.)  Honsberger states that HSC took away his individual company vehicle in retaliation as well.  (*Id.* ¶ 33.)  HSC asserts that this was necessary because of a shortage of vehicles, and that it only resulted in the team sharing a van.  (DSUF ¶ 59-61.)  All of this culminated in an allegedly retaliatory firing when HSC accused Santiago, Jr. and Honsberger of stealing iPads from one of the clients.  (Honsberger Decl. ¶¶ 36-40.)  While Santiago, Jr. was arrested, Honsberger denies that he was ever arrested or involved in the theft.  (*Id.* ¶ 41.)  Consequently, the Complaint was amended to add retaliation counts under the NJFCA, NJPWA, FLSA, NJWPL, and CEPA.  (First Amended Complaint ("FAC"), ECF No. 1-2, 22-26.)

The action was removed to this Court in July 2012.  After discovery, Defendants brought the instant motion for summary judgment and Relators cross-moved for partial-summary judgment.  Following the parties' submissions, the Court requested additional briefing as to specific undeveloped issues of fact and law.  (ECF No. 88.)  Subsequently, the Court requested further briefing based on the U.S. Supreme Court's recent decision regarding civil suits filed under the False Claims Act and its applicability to the instant action.  (ECF No. 95.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where the materials in the record, including the pleadings, the discovery and disclosure materials on file, and any affidavits, demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23 (1986); *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010); Fed. R. Civ. P. 56(c).  On a summary judgment motion, the moving party must demonstrate that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323.  A factual dispute is genuine if "a reasonable jury could return a verdict for the non-moving party," and is material if it could affect the outcome of the trial under governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).  However, the opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  If the non-moving party fails to demonstrate beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment.  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

The Court faces five issues in these cross-motions for summary judgment: (1) whether the Compensation Plan violated the NJPWA by failing to pay prevailing wages in full (Count 2), (2) whether Defendants in failing to abide by this statute submitted false or fraudulent claims in violation of the NJFCA (Count 1), (3) whether Haig failed to pay overtime in violation of the FLSA and the NJWPL (Counts 3-4), (4) whether Haig engaged in retaliation against Relators in violation of the above statutes and CEPA (Counts 5-9), and (5) whether the common law claims (Counts 10-12) or Defendants O'Neill and Bernard should be dismissed.  The first issue is also the basis for Relators' cross-motion for partial-summary judgment.  Prior to tackling any of these, the Court will first consider the admissibility of Relators' expert's reports.

### A.   Admissibility of Michael McCarthy's Expert Reports

Defendants raise four separate arguments regarding McCarthy's expert reports: (i) that they are unsworn; (ii) that they are inadmissible hearsay; (iii) that in his reports McCarthy renders opinions as to the legality of the Compensation Plan; and (iv) that they are inadmissible under the *Daubert* standard.  A "district court is justified in disregarding" new arguments raised in a reply brief.  *Gucciardi v. Bonide Products, Inc.*, 28 F. Supp. 3d 383, 393 (E.D. Pa. 2014).  Moreover, where a cross-motion is not "related to the subject matter of the original motion,"

the court has discretion to deny it.  L. Civ. R. 7.1(h); *see Travelodge Hotels, Inc. v. BO–ED Inc.*, No. 04–cv–4310 (HAA), 2007 WL 8053668, at *4 (D.N.J. Mar. 19, 2007).  Since Defendants' arguments regarding admissibility were put forth verbatim in the opposition to Relators' motion for partial-summary judgment, Relators had an opportunity to respond.  Defendants' cross-motion is also related to the underlying motions.  In light of this, the Court will consider Defendants' arguments to exclude the McCarthy reports for the purposes of the instant motions.  However, if Defendants wish to exclude McCarthy's testimony at trial based on his expert reports, they should file an appropriate *in limine* motion.

### i.   Excluding the McCarthy Reports

The Court can summarily dismiss Defendants' first three arguments.  In the reply to their motion for partial-summary judgment, Relators attach sworn copies of the expert reports, curing the first defect.  *See OFI Int'l, Inc. v. Port Newark Refrigerated Warehouse*, No. 2:11-CV-06376 WJM, 2015 WL 140134, at *4 (D.N.J. Jan. 12, 2015).  As for the second argument, while the expert reports would be inadmissible hearsay at trial, McCarthy would presumably testify at trial and the reports are provided by Relators to the Court in lieu of such testimony to allow for adjudication of the instant motions.  (*See* Defs.' Br. Opp. Mot. Partial Summ. J., ECF No. 82, 11 (citing a number of not-on-point district court decisions dealing with expert reports in the *in limine* context).)  Lastly, the Third Circuit has held that experts may not opine on "what the law required" or "testify as to the governing law."  *United States v. Leo*, 941 F.2d 181, 196–97 (3d Cir. 1991).  The Court agrees that McCarthy's reports include legal conclusions regarding the various statutes violated by the Compensation Plan, and will *sua sponte* disregard any such legal conclusions if and as necessary to its analysis.

### ii.   Daubert Analysis

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 570 (1993).  This rule requires the court to act as a "gatekeeper" to ensure that expert testimony is both relevant and reliable.  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).  In taking on this function, expert testimony must be assessed to determine admissibility based on:  (1) the expert's qualifications; (2) the reliability of the expert's methodology and the application of that methodology; and (3) whether the testimony fits the matters at issue in the case and will assist the trier of fact.  *Id.* at 806 (citing *In re Paoli R.R.*

*Yard PCB Litig. (Paoli II)*, 35 F.3d 717, 742 (3d Cir. 1994)); *Elock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).  Accordingly, it is settled law that "expert testimony that contains bare conclusions, unsupported by factual evidence" may be excluded.  *Holman Enters. v. Fid. Guar. Ins. Co.*, 563 F.Supp.2d 467, 471–72 (D.N.J. 2008).

Defendants do not raise any arguments as to McCarthy's qualifications or the fit of his reports.  They argue instead that McCarthy's reports lack reliability because he failed to allegedly: (i) consider the entire universe of produced documents; (ii) in particular, consider a letter from his former subordinate; and (iii) provide factual support in calculating underpayment amounts.  The argument is unavailing.  Contrary to Defendants' assertion, the portions singled out do not demonstrate a lack of cited evidence—referencing bates numbered documents as examples.  (*See, e.g.,* Decl. Michael McCarthy Further Supp. Mot. Partial Summ. J. ("McCarthy Decl.") Ex. 1, ECF No. 87-4, at 5.)  Moreover, the issues raised by Defendants—what McCarthy did and did not rely on in forming his opinion—go to the weight afforded his conclusions.  Such a determination is best left to the jury, falling outside the Court's gatekeeper role.  *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) (stating that "the credibility and weight of [an expert's] testimony is to be determined by the jury, not the trial judge"); *see also English v. Crown Equip. Corp.*, No. CV 3:13-0978, 2016 WL 614680, at *4 (M.D. Pa. Feb. 16, 2016).

Similarly, any admissions allegedly contradicting his reports that Defendants were able to obtain from McCarthy at his deposition would only affect his credibility and the corresponding weight a jury may give the testimony, failing to serve as grounds for exclusion.  *See M2M Sols. LLC v. Motorola Sols., Inc.*, No. CV 12-33-RGA, 2016 WL 70814, at *9 (D. Del. Jan. 6, 2016).  Consequently, should Defendants disagree with McCarthy's conclusions, they are free to cross-examine him or present contrary evidence—as they have done in their papers.  Therefore, the Court will consider McCarthy's reports for the instant motions.

## B.    Compensation Plan's Failure to Comply with the NJPWA (Count 2)

Since Relators' NJFCA claim (Count 1) is partly contingent on Defendants' failure to comply with the NJPWA (Count 2), the Court will tackle the latter count first.  Defendants' motion raises three arguments: (i) that Relators have not demonstrated an underpayment of prevailing wages; (ii) that Defendants did not violate the NJPWA by using a quarterly reconciliation and not always paying

prevailing wages in full on a bi-monthly basis; and (iii) that Defendants were not required to provide certified payrolls to the contracting public entities with claims for payment.  Although the second issue also appears to be the basis for Relators' cross-motion for partial-summary judgment, the last issue is one that feeds into Relators' NJFCA claim and will be discussed in that section.[1]

### i.   Underpayment of Wages

Defendants move for summary judgment on Count Two on the basis that Relators have not demonstrated an underpayment.  While Defendants argue that the Compensation Plan was an advance of prevailing wages, there appears to be a tacit acknowledgement in Defendants' Statement of Undisputed Facts and Haig's declaration that there were times when Relators were not fully paid for prevailing wage work in their salary.  (*See* Haig Decl. ¶ 38-41.)  This required Defendants to undertake a review and reconciliation on a quarterly basis to ensure that such unpaid amounts were compensated.  (*See id.*)  Though Defendants argue that this reconciliation was sufficient to ensure that employees were paid prevailing wages in full, McCarthy's analysis of the records, summarized in Relators' first supplemental brief, demonstrates a number of instances in 2010 and 2011 when prevailing wages were not completely paid and continue to remain unpaid.  (*See* Pls.' First Supplemental Br. ("First Br."), ECF No. 93, 3-5.)  Even though Defendants dispute McCarthy's calculation and conclusions, the Court finds that Relators have presented a genuine issue of material fact sufficient to deny summary judgment.

### ii.   Failure to Pay Prevailing Wages

In opposition to summary judgment and in support of their partial-summary judgment motion, Relators argue that—setting aside the still outstanding prevailing wages owed—the quarterly reconciliations were not sufficient and that the Compensation Plan violated the NJPWA by failing to ensure that prevailing wages

---

[1] There is substantial confusion by the parties as to the nature of Relators' motion for partial-summary judgment, which was not cleared up in the supplemental briefing.  Third Circuit precedent states that a court may not "allow partial summary judgment on only one portion of a claim."  *Avaya, Inc. v. Telecom Labs, Inc.*, No. CIV. A. 06-2490 GEB, 2009 WL 2928929, at *2 (D.N.J. Sept. 9, 2009) (citing *RePass v. Vreeland*, 357 F.2d 801, 805 (3d Cir. 1966)).  Accordingly, the Court will construe Relators' motion as seeking summary judgment on the NJPWA claim as a whole.

were paid in full at the end of each pay period, which is required to be on a bi-monthly basis.

The NJPWA is intended to "establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being." N.J.S.A. 34:11–56.25.  New Jersey state courts have stated that because the NJPWA "is remedial in nature, it is entitled to a liberal construction and application in order to effectuate the strong public policy of protecting those whose labor goes into public projects." *Bankston v. Hous. Auth. of City of Newark*, 342 N.J. Super. 465, 469, 777 A.2d 74, 76 (App. Div. 2001) (quotations and citations omitted).  The NJWPL directs when and how employee wages should be paid, including the regularity of such wages—bi-monthly.  *See* N.J.S.A. 34:11-4.2.

The argument brought by Relators is two-fold.  Relators first point to the penalties and civil action provisions of the NJPWA to argue that the statute requires payment of prevailing wages in full when due.  *See* N.J.S.A. § 34:11-56.35 ("Each week, in any day of which a worker is paid less than the rate applicable to him under this act and each worker so paid, shall constitute a separate offense"); N.J.S.A. § 34:11-56.40 (providing recovery for an individual workman if "paid by an employer less than the prevailing wage to which such workman is entitled.")  Second, Relators argue that such full payments were due on a bi-monthly basis by relying on the NJWPL.  N.J.S.A. § 34:11-4.2 (requiring that "every employer shall pay the full amount of wages due to his employees at least twice during each calendar month.")  From this, Relators come to their contention that Defendants' failure to pay prevailing wages in full every two weeks violated the NJPWA.

The Court is not persuaded by Relators' attempt to graft the NJWPL's requirements on to the NJPWA in order to find Defendants liable under the latter statute.[2]  Though nonbinding, the New Jersey Appellate Division considered a similar issue when analyzing the NJPWA and the NJWHL, a statute related to the NJWPL.  *Troise v. Extel Commc'ns, Inc.*, 345 N.J. Super. 231, 784 A.2d 748 (App.

---

[2] The Court notes that Relators' claim under the NJWPL (Count Four) is limited to requesting relief for Defendants' failure to properly compensate overtime and does not make mention of a failure to pay prevailing wages.  (*See* FAC ¶¶ 114-17.)  Accordingly, the Court will limit its analysis in this section to whether Defendants' alleged failure to pay prevailing wages in full on a bi-monthly basis violates the NJPWA alone.

Div. 2001), *aff'd*, 174 N.J. 375, 808 A.2d 96 (2002) (cited with approval in *Meyers v. Heffernan*, No. CIV.A. 12-2434 MLC, 2014 WL 3343803, at *5 (D.N.J. July 8, 2014)).  In *Troise*, the court rejected the defendant's argument that the two-year statute of limitations governing private causes of action in the NJWHL should be read into the NJPWA, which did not contain an explicit limitation.  The court noted that the NJWHL did not include any reference to the NJPWA and concluded that the NJPWA and the NJWHL are "separate and distinct legislative enactments," precluding such cross-application.  *Troise*, 345 N.J. Super. at 241; *See Meyers*, 2014 WL 3343803, at *6 (rejecting a similar attempt by defendant to impute the statute of limitations from the NJWHL to the NJWPL).  The court went on to state that just because the NJPWA and the NJWHL were both designed with the same purpose in mind, the doctrine of *in para materia* cannot be "invoked to engraft the terms of one statute into another."  *Troise*, 345 N.J. Super. at 240 (quoting *International Bhd. of Elec. Workers Local No. 1470 v. Gillen*, 174 N.J. Super. 326, 329, 416 A.2d 446 (App. Div. 1980)).

Relators do not explicitly invoke the *in para materia* doctrine, but that is in essence what they are asking this Court to do.  Based on Defendants' contention for how the Plan was intended to work, any outstanding amounts were reconciled quarterly and Relators were not foregoing any wages.[3]  (*See* Haig Decl. ¶ 39.)  As noted above, whether the Plan actually worked as intended is a matter of factual dispute.  Nevertheless, while it is axiomatic from Defendants' own description that the Compensation Plan did not always pay employee wages in full twice a month and thus runs afoul of the NJWPL, that is not the relief Relators seek here.  *See* N.J.S.A. § 34:11-4.2 (stating in broad language that the NJWPL governs all wages, including prevailing wages); *see also supra* n.2.  Consequently, in striving to go a step further, Relators' request that the Court should rule as a matter of law that the Compensation Plan violated the NJPWA—because prevailing wages were not paid in full every two weeks—based on the NJWPL's statutory requirement is unavailing.

Based on the above, the Court will deny the cross-motions for summary judgment with regards to the NJPWA claim.

---

[3] Relators' expert also argues that under the Compensation Plan if an employee is overpaid that amount is paid back in another pay period, asserting that the Compensation Plan violates the NJPWA by forcing employees to forego pay.  Since Relators have not demonstrated an instance of such overpayment and subsequent deduction, and because Defendants have argued that employees were never required to do this, the Court will not decide this issue bereft of facts.

## C.      Violation of the NJFCA (Count 1)

The Court must now determine whether Defendants violated the NJFCA. Relators argue that the Defendants violated the NJFCA by falsely certifying their compliance with the NJPWA—a legally false claim.  (*See* Relators' Br. Opp. Mot. Summ. J. ("Relators' Opp."), ECF No. 81, 17.)  An implied false certification allegedly took place when claims for payment were presented to the public entity without being accompanied by a certified payroll record.  (*Id.* at 18-19.)

### i.      Standard

A claim is legally false when "the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment"—"a false certification theory of liability."  *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011).  The Third Circuit has recognized two categories of legally false claims: express and implied. The "implied false certification theory of liability" attaches when a government payee makes a claim for payment and does not disclose that it has violated regulations that affect its eligibility for payment.  *Id.*  On June 16, 2016, the U.S. Supreme Court adopted the implied false certification theory of liability under the FCA.  *Universal Health Servs., Inc. v. U.S. ex rel Escobar, et al.*, 136 S. Ct. 1989, 1995 (2016).  The Court held that such liability can attach when (1) the defendant "does not merely request payment, but also makes specific representations about the goods or services provided," and (2) "the defendant's failure to disclose noncompliance with material legal requirements makes those representations misleading half-truths."  *Id.* at 2001.  Though such noncompliance need not be based on an express statutory, regulatory, or contractual condition of payment, the misrepresentation "must be material to the Government's payment decision"—a "demanding" standard.  *See id.* at 1996, 2003.

Neither New Jersey state nor federal courts have appeared to apply the implied false certification theory of liability to NJFCA claims.  However, the similarity of language between the federal FCA and the NJFCA allows for the conclusion that the NJFCA also proscribes "misrepresentations by omission." *Escobar*, 136 S. Ct. at 1999.  *Compare* 31 U.S.C.A. § 3729(a)(1)(A)-(B) *with* N.J.S.A. § 2A:32C-3(a)-(b).  *See also Druding v. Care Alternatives, Inc.*, No. CV 08-2126(JBS/AMD), 2016 WL 727116, at *9 (D.N.J. Feb. 22, 2016) (dismissing relators' claims arising under an implied false certification theory under the FCA and the NJFCA).

To establish a claim under the NJFCA, Relators must demonstrate that (i) Defendants presented or caused to be presented a claim for payment; (ii) the claim was false or fraudulent; and (iii) Defendants knew the claim was false or fraudulent. *See U.S. ex rel. Portilla v. Riverview Post Acute Care Ctr.*, No. CIV. 12-1842 KSH, 2014 WL 1293882, at *8 (D.N.J. Mar. 31, 2014) (setting forth FCA standard and noting that since the NJFCA closely resembles the pre-2009 version of the federal FCA the elements of a claim are the same).

## ii. Application

The Court finds that Relators' NJFCA claim fails as a matter of law.[4]  The parties do not contest that Defendants submitted claims for payment without certified payrolls, satisfying the first prong. However, Relators do not show how—under the rubric set forth by the Supreme Court—such an omission resulted in an implied false certification.

As for *Escobar*'s first criteria, the Court agrees that the claims attached by Relators are not the kind of bare requests that the Supreme Court distinguished. 136 S. Ct. at 2001 (noting the difference between a claim that merely requests payment and one that "makes specific representations about the goods or services provided.")  In this case, the invoices attached by Relators are specific as to the parts provided, along with their price, and a description and cost of the service labor.  (*See* Pls.' Second Supplemental Br. ("Second Br.") Ex. B and C, ECF No. 97.)  In their second supplemental briefing, Relators contend that the representations of the work done, and the fact that they are allegedly covered by the prevailing wage statute, misrepresent Defendants' compliance with the NJPWA under an implied liability theory.

---

[4] Relators make a passing reference in their opposition papers to a claim based on express false certification.  (*See* Realtors' Opp. at 17.)  However, the Court finds this argument undeveloped with no factual support—failing to cite to claims for payment in the record wherein Defendants expressly certify compliance with the NJPWA or a certified payroll requirement in particular—and is deemed waived.  *Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) ("We find this undeveloped argument has been waived.")  Relators also raise a false record claim (N.J.S.A. § 2A:32C-3(b)) based on the alleged inaccuracy of the certified payroll records, when such were provided.  (McCarthy Decl. Ex. 2 at 9.)  Once again, Relators fail to put forth a scintilla of evidence establishing Defendants' underpayment of prevailing wages when a claim was submitted with payroll records, and this throw-away argument is considered waived.  *See Conroy*, 316 F. App'x at 144 n.5.

In their opposition brief, Relators argue that Defendants violated the NJPWA, and thus the NJFCA, when they submitted claims not "accompanied by a certified payroll [record]."[5]  (Relators' Opp. at 18-19.)  The Court finds Relators' attempt to unearth such a requirement unavailing.  Defendants maintain that no contract signed with a public entity required submission of a certified payroll with a claim for payment.  (See Defs.' Br. at 12.)  In opposition, Relators make vague arguments that this was a bidding and contractual requirement.  Analyzing the handful of contracts and bids attached to their brief, the Court finds at best only a general requirement to abide by the NJPWA and no specific requirement to submit certified payroll records with claims for payment.  (See Decl. Henry Furst Opp. Defs.' Mot. Summ. J. ("Furst Decl.") Ex. 14, ECF No. 81-2, 3 (noting only the need for the contractor to keep an accurate record and placing no requirement to submit these records with claims for payment); see also Furst Decl. Ex. 15 at 6 and Ex. 16B at 3.)  Consistently, the section in the NJPWA designating required contractual provisions does not include a certified payroll requirement, see N.J.S.A. § 34:11-56.27, and the language of the statute places the onus of requiring certified payrolls on the public body, see N.J.S.A. § 34:11-56.33.  See also N.J.A.C. § 19:30-4.4; N.J.A.C. § 12:66-2.1.  Additionally, the administrative regulation relied on by Relators does not condition payment from the public entity on the submission of certified payrolls, which is corroborated by the notice Relators attach to their opposition brief.[6]  N.J.A.C. § 12:60-5.1(c) (requiring contractors to submit certified payrolls within ten days of payment of wages); (See Furst Decl. Ex. 16A, ECF No. 81-2).  Accordingly, the Court finds that Relators have failed to demonstrate a statutory or contractual requirement to submit certified payrolls with claims for payment, violating which would result in an implied false certification.

---

[5] Relators argue—for the first time in their second supplemental briefing—that these claims misrepresented a NJPWA requirement to pay wages in full when due.  A party may not raise a new argument in their reply brief, and axiomatically a new and undeveloped argument raised in a supplemental brief will not be considered.  See Bernstein v. City of Atl. City, No. 08-CV-3796 NLH, 2011 WL 2559369, at *3 (D.N.J. June 27, 2011); Conroy, 316 F. App'x at 144 n. 5.

[6] In their second supplemental briefing, Relators attach a letter from the Patterson Public Schools informing their vendors to submit certified payrolls with their invoices.  (Second Br. Ex. D.)  However, Relators present no evidence demonstrating that Defendants failed to comply with this request.  (See Pls.' Br. Supp. Mot. Partial Summ. J., ECF No. 80-1, 10 (quoting Haig stating in his deposition that he provided certified payrolls to the public entity "[i]f they ask for it."))

Since Relators have not met their *prima facie* burden at the summary judgment stage under an implied false certification theory, the Court will grant summary judgment for Defendants on Count One.

## D.     Failure to Pay Overtime (Counts 3-4)

Defendants move for summary judgment on the overtime FLSA and NJWPL claims, arguing that payroll records show that Relators hardly worked more than forty hours in a work week.[7]  In support of their motion, Defendants merely rely on a conclusory statement by Haig based on his review of the payroll records.  (*See* DSUF ¶ 57; Haig Decl. ¶ 45.)  In opposition, Relators point to McCarthy's review of the records illustrating instances where Defendants failed to pay for work done on Saturdays, Sundays, federal holidays, and general overtime.  (*See* McCarthy Decl. ¶ 23.)  McCarthy's reports include examples of such underpayment and a total calculation based on an analysis of the documents from 2010 and 2011 for Honsberger.  Relators also allege a failure by Defendants to pay on-call time in full and that much of this on-call work was allegedly covered by the prevailing wage, which Relators allege would significantly raise the amount owed.  (*See* Honsberger Decl. ¶ 23.)  In support of these arguments, Honsberger attaches examples of service tickets and paychecks to his declaration.  (*See id.* Ex. 1 and 2.)

Since Relators do not appear to seek compensation for all on-call time, which would subject their claim to a series of factors enunciated by the Third Circuit, Defendants' primary argument that such time is not compensable is inapplicable.  *See Ingram v. Cty. of Bucks*, 144 F.3d 265, 268 (3d Cir. 1998).  For their only other argument, Defendants do not provide any citations to support their deduction that the highest amount of unpaid overtime demonstrated by Honsberger is only $22.50 and, thus, well within the additional $50.00 given to employees in their weekly pay.  (*See* Defs.' Reply Br. Further Supp. Mot. Summ. J., ECF No. 86, 14.)  Consequently, in contrast to the conclusory nature of Defendants' arguments, Relators have put forth sufficient evidence to allow the Court to find that genuine issues of material fact exist as to the amount and number of overtime

---

[7] In their supplemental briefing, Relators argue that their overtime claims arise under both the NJWPL and the NJWHL.  However, in the Amended Complaint, Relators have brought a cause of action under the NJWPL alone.  (FAC ¶¶ 114-17.)  Relators may not expand the legal scope of their claims at the summary judgment stage.  However, the Court will consider the applicable sections of the NJWHL if necessary when determining the NJWPL claim.

payments made and the applicable rate.  Therefore, the Court will deny Defendants' motion for summary judgment on the overtime claims.

## E.  Retaliation by Defendants Against Honsberger and Santiago, Jr. (Counts 5-9)

Relators Honsberger and Santiago, Jr. raise claims of retaliation based on Defendants' conduct after this action was unsealed.  These claims are based on the NJFCA, NJPWA, FLSA, NJWPL, and CEPA.[8]

### i.  NJFCA (Count 5) and FLSA (Count 7) Retaliation

In the Third Circuit, an evaluation of retaliation claims is typically governed by the *McDonnell Douglas* burden-shifting framework.  *Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002) (applying the burden-shifting framework to a FLSA claim.)  While plaintiff carries the initial burden of establishing a *prima facie* claim, the defendant may rebut the claim by showing some legitimate, non-discriminatory reason for the adverse action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  If such a showing is made, plaintiff must then articulate how defendant's legitimate reason was in actuality a pretext for discrimination.[9] *Id.*  "A *prima facie* case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse

---

[8] In their supplemental briefing, Relators concede that no private right of action exists under either the NJPWA or the NJWPL for retaliation claims.  *See Muhammed v. LVI Demolition Servs. Inc.*, No. CIV.A. 12-5260 ES, 2015 WL 1498567, at *3 (D.N.J. Mar. 31, 2015) (finding that the NJPWA does not provide employees with a private right of action against their employer for retaliatory conduct); *compare* N.J.S.A. § 34:11-56.39 *with* N.J.S.A. § 34:11-56a24 (providing in similar language for criminal sanctions against employers for retaliation, but allowing no individual right to recover under these statutes).  Thus, the Court will dismiss these claims.

[9] The Court rejects Relators' argument that Defendants are seeking to re-litigate whether *prima facie* claims of retaliation have been asserted.  The state court order only permitted Relators to amend their complaint and made no determination as to the merits of the retaliation claims. (Furst Decl. Ex. 22, ECF No. 81-6.)  Relators thus cannot avoid this Court's review of the claims at the summary judgment stage, where plaintiff must adduce sufficient evidence—not merely allegations—from which a reasonable fact finder can find a *prima facie* claim and, if necessary, evidence to demonstrate under the *McDonnell Douglas* burden-shifting framework that defendant's reasons are pre-text.  *See, e.g.*, *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001) (concluding that plaintiff had demonstrated ample evidence of elements of a prima facie retaliation claim at the summary judgment stage.)

action." *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015).  The parties have not pointed to—and the Court has been unable to find—any cases using the *McDonnell Douglas* burden-shifting framework for retaliation claims raised under the NJFCA.  Resembling the pre-2009 version of the FCA, the anti-retaliatory provision of the NJFCA provides employees with the same protections and relief. *Compare* 31 U.S.C.A. § 3730(h) (2008) *with* N.J.S.A. § 2A:32C-10(b)-(c); *see also Portilla*, 2014 WL 1293882 at *9.  Therefore, the Court will evaluate Relators' NJFCA claim under the *McDonnell Douglas* rubric.

### 1.) Materially Adverse Changes

The crux of Honsberger and Santiago, Jr.'s claims are that they were retaliated against by Defendants after the instant action was unsealed.  There is no dispute that filing of the instant action constitutes a protected activity under the FLSA and the NJFCA—the first prong.  Instead, Defendants argue that the adverse actions raised by Relators do not rise to the level of a material adverse change in working conditions sufficient to maintain a *prima facie* claim.  Under the FCA, a materially adverse action is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Turner v. Schering–Plough, Corp.*, 901 F.2d 335 (3d Cir. 1990).  Similarly, "[t]o assert a retaliation claim under the FLSA, a plaintiff need only allege that his employer retaliated against him by engaging in an action that would have been materially adverse to a reasonable employee because the employer's actions could well dissuade a reasonable worker from making or supporting a FLSA claim." *Stewart v. Pemberton Twp.*, No. CIV. 14-6810 RBK/AMD, 2015 WL 5164717, at *4 (D.N.J. Sept. 2, 2015) (quoting *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008)) (quotations omitted).

Based on this standard, the Court finds that Honsberger and Santiago, Jr. have put forth adverse actions sufficient to make a *prima facie* claim, including Honsberger's termination, decreased work hours and changing job responsibilities for both Relators, no longer assigning Relators covered work, and requiring Honsberger to conduct work by himself in violation of safety regulations. (Honsberger Decl. ¶¶ 26-44.)  As for the confiscation of job perks like the company vehicle and computers, the Third Circuit has recognized that the loss of perks may constitute a materially adverse change. *See Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 788 (3d Cir. 1998) (citing *Collins v. Illinois*, 830 F.2d 692, 703 (7th Cir. 1987)).  However, Relators do not demonstrate in either their

briefing or declarations that the removal of a computer and a second company vehicle amounted to more than "trivial" changes in their working conditions. Moreover, it appears from Relators' own Statement of Disputed Facts that other teams had single vehicles (including the team that received one of Relators' company vehicles). (RSDF ¶ 59.) The Court will therefore not consider these alleged retaliatory actions in determining Relators' claims.

### 2.) Causation

Moving to the third prong, Honsberger and Santiago, Jr. demonstrate a causal link between filing of the instant suit and the adverse employment actions. Courts recognize a causal inference where (i) there is temporal proximity between the protected activity and the adverse employment action, (ii) if there was a pattern of antagonism following the protected conduct, or (iii) based on an examination of the proffered evidence as a whole. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). While Relators do not provide dates, Honsberger notes that the changes in his and Santiago, Jr.'s hours and the conditions of their employment occurred "[s]hortly after the unsealing," providing some temporal proximity. (Honsberger Decl. ¶ 27.) In addition, O'Neill's reference to Honsberger's lawyer when the latter complained about the changes supports a connection and inference of retaliatory animus. (*Id.*) The continued nature of these actions, culminating in Honsberger's termination—after Defendants informed him that they did not have proof of wrongdoing—is sufficient to substantiate a causal link between Relators' instant suit and the alleged adverse employment actions against Honsberger and Santiago, Jr.

### 3.) Non-Retaliatory Reason and Pre-Text

Setting aside Defendants' lengthy reasons for removing Relators' job perks and the eventual terminations, Defendants fail to satisfy their "relatively light burden" of showing a legitimate, non-discriminary reason for the various other adverse employment actions. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Defendants rely on a statement by Haig in his declaration that the "schedule for weekends and on-call is constantly changing." However, Defendants make no attempt to rebut Relators' claim that they were selectively reduced in hours and removed from the on-call list. Nonetheless, even if the Court were to find Haig's conclusory statement sufficient to demonstrate a legitimate, non-discriminatory reason, the fact that O'Neill told Honsberger to "call [his] lawyer"

in response to these actions is sufficient to produce a material issue of fact as to the pretextual nature of their explanation.  (Honsberger Decl. ¶ 27.)

As for the terminations, Defendants argue that Honsberger and Santiago, Jr.'s theft from a client resulted in their firing—a legitimate, non-discriminatory reason.  It does not appear from Relators' opposition papers that they continue to raise a claim of retaliation based on Santiago, Jr.'s termination.  Honsberger, however, vigorously contests his involvement in the theft and argues—contrary to Defendants' brief—that he was never arrested.  (Honsberger Decl. ¶ 41.) Honsberger also points to the reason Defendants provided to the Department of Labor for his dismissal, which did not mention any theft but rather that Honsberger had misused a company vehicle.  (*See* Honsberger Decl. Ex. 3.)  This inconsistency is sufficient to cast doubt upon the explanation proffered by Defendants, and allows for a factfinder to conclude that the alleged theft was a pre-textual after-the-fact justification for Honsberger's termination.  *See Fuentes*, 32 F.3d at 763.

### ii.  CEPA Violation (Count 9)

Similar to the FLSA and the NJFCA, CEPA prohibits employers from taking retaliatory action against whistle-blowing employees.  N.J.S.A. § 34:19-3.  An evaluation of CEPA claims are correspondingly governed by the *McDonnell Douglas* burden-shifting framework.  *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999).  CEPA retaliation claims require the same showing, though the protected employee prong is divided into:  (1) a reasonable belief that the employer's conduct was violating a law, and (2) a whistle-blowing activity as described in N.J.S.A. 34:19-3c.  *Dzwonar v. McDevitt*, 177 N.J. 451, 462, 828 A.2d 893, 900 (2003); *see also Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005) (describing this test as analogous to that used for unlawful retaliation claims under Title VII.).  The first prong of this test does not require that the employer actually violated the law, but rather only that the plaintiff "reasonably believed" it to be the case.  *Dzwonar*, 177 N.J. at 462.

Honsberger and Santiago, Jr.'s CEPA claim is identical to their FLSA and NJFCA claims.  Consequently, Relators have established the first prong of their *prima facie* CEPA retaliation claim, by clearly identifying statutes that they reasonably believed may have been violated by Defendants, and the second prong, by filing the instant action.  Federal and state courts in New Jersey have interpreted CEPA's definition of "retaliatory action" as requiring an employer's conduct to have significantly impacted either the employee's compensation or rank.  *See, e.g.,*

*Marracco v. Kuder*, No. CIV. A. 08-713 NLH, 2009 WL 235469, at *2 (D.N.J. Jan. 30, 2009); *Hancock v. Borough of Oaklyn*, 347 N.J. Super. 350, 790 A.2d 186 (N.J. Super. A.D. 2002); *see also* N.J.S.A. § 34:19-2e. The Court finds—similar to the FLSA and NJFCA claims—that the adverse actions put forth by Honsberger and Santiago, Jr. establish a *prima facie* claim of retaliation under CEPA, except for the confiscation of the company vehicle and computers. Beyond this, the Court's analysis above regarding Defendants' burden to provide a legitimate, non-discriminatory reason for their actions and Relators' requirement to demonstrate that such reason is pretextual applies equally.

Therefore, the Court will deny Defendants' motion for summary judgment on the FLSA, NJFCA, and CEPA retaliation claims.

## F.   Common Law Claims (Counts 10-12) and Bernard and O'Neill

### i.   Common Law Claims

Because the common law claims partly arise from the NJPWA claim, which the Court will not dismiss, the ensuing unjust enrichment (Count 10), breach of fiduciary duty (Count 11), and constructive trust (Count 12) claims will not be dismissed either. (*See* FAC ¶¶ 142-56.)

### ii.   Bernard and O'Neill

Defendants argue that Bernard and O'Neill should not be held individually liable, since none of the claims can be sustained against them. Bernard and O'Neill are named in every count of the Relators' amended complaint. However, Relators tackle only the NJFCA and CEPA claims in their opposition brief.

#### 1.) FLSA Claim

Under the FLSA, individual liability is imposed on "any person acting directly or indirectly in the interest of an employer in relation to an employee . . .." 29 U.S.C.A. § 203(d); *see Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 153 (3d Cir. 2014) ("[A] company's owners, officers, or supervisory personnel may also constitute 'joint employers' for purposes of liability under the FLSA.") It is undisputed that—viewed in the "totality of the circumstances"—O'Neill's responsibility to run day-to-day operations is sufficient to confer a supervisory role on him and impose individual liability. *See Thompson*, 748 F.3d at 154; (DSUF ¶ 6). In contrast, Bernard is described by Defendants as only a contractor of HSC

with a limited role and Relators provide no evidence in opposition, exempting him from individual liability.  (DSUF ¶ 5).

### 2.) NJWPL and NJPWA Claims

The NJWPL also imposes individual liability.  However, this is restricted to "the officers of a corporation and any agents having the management of such corporation," and not the broader definition employed by the FLSA.  *Compare* N.J.S.A. § 34:11-4.1 *with* 29 U.S.C.A. § 203(d).  Courts have applied the NJWPL's individual liability provision to officers of the corporation.  *See, e.g., Mulford v. Computer Leasing, Inc.*, 334 N.J. Super. 385, 393, 759 A.2d 887, 891 (Law. Div. 1999) ("The [NJWPL] imposes personal liability on the managing officers of a corporation by deeming them the employers of the employees of the corporation"); *Meyers v. Heffernan*, 740 F. Supp. 2d 637, 654 (D. Del. 2010).  Since O'Neill had at best supervisory status as the branch manager and Bernard was only a contractor, the Court will dismiss the NJWPL claim against both.  (*See* DSUF ¶¶ 4, 7.)  Lastly, the NJPWA employs the narrowest definition of employer, providing for no individual liability.  *See* N.J.A.C. § 12:60-2.1.  Therefore, the Court will dismiss this claim against Bernard and O'Neill.

### 3.) Retaliation Claims

Finally, Defendants argue that O'Neill and Bernard should be dismissed from the retaliation claims because individual liability under CEPA applies only to employees "who act with the authorization of their employers."  *Ivan v. Cnty. of Middlesex*, 595 F.Supp.2d 425, 479 (D.N.J. 2009); *see also Scholly v. JMK Plastering, Inc.*, No. CIV.A. 07-CV-4998, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008) (noting that FLSA allows for individual liability on retaliation claims as well).  Bernard is dismissed from these claims, since the evidence does not demonstrate any alleged retaliation by him.  As for O'Neill, it appears from Honsberger's declaration that a number of the retaliatory actions fell within his purview as manager of the day-to-day operations—for example, the reduction in hours and removal from the on-call list.  (Honsberger Decl. ¶¶ 26-29; *see also* DSUF ¶ 6.)  Since CEPA and the FLSA provide for individual liability on retaliation claims, the Court will deny Defendants' request to dismiss O'Neill.

However, while Relators note in passing that they have brought a retaliation claim against O'Neill under the NJFCA, neither side discusses whether the statute allows for individual liability.  District courts in the Third Circuit have found that the FCA does not create liability for individual supervisors under the

whistleblower provision.  *See Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 464 (D.N.J. 1999) (finding no individual liability unless defendant is "alleged to have dominated and dictated the actions of the defendant corporations" under pre-2009 version of the FCA); *see also U.S. ex rel. Petras v. Simparel, Inc.*, No. CIV.A. 13-2415 FLW, 2015 WL 337472, at *11 (D.N.J. Jan. 26, 2015) (same for post-2009 FCA).  Based on its similarity to the pre-2009 FCA, the Court finds that the NJFCA—by correspondingly restricting itself to "employer"—does not impose individual liability for retaliation claims, and O'Neill is dismissed due to his supervisory role.  *See* N.J.S.A. § 2A:32C-10.

Therefore, the Court will not grant summary judgment as to the common law claims, will grant summary judgment for Bernard on the FLSA, NJWPL, NJPWA, and all retaliation claims, but will only grant summary judgment for O'Neill on the NJWPL and NJPWA claims and the NJFCA retaliation claim.

## IV.   CONCLUSION

For the above reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion for summary judgment and **DENIES** Relators' cross-motion for partial-summary judgment.  The Court rules as follows:

- Summary judgment is **GRANTED** on the NJFCA claim (Count 1);
- Cross-motions for summary judgment are **DENIED** on the NJPWA claim (Count 2) as to Defendants HSC and Haig, but Defendants' motion for summary judgment is **GRANTED** as to Defendants Bernard and O'Neill;
- Summary judgment is **DENIED** on the FLSA claim (Count 3) as to Defendants HSC, Haig, and O'Neill, but **GRANTED** as to Defendant Bernard;
- Summary judgment is **DENIED** on the NJWPL claim (Count 4) as to Defendants HSC and Haig, but **GRANTED** as to Defendants Bernard and O'Neill;
- Summary judgment is **DENIED** on the NJFCA retaliation claim (Count 5) as to Defendants HSC and Haig, but **GRANTED** as to Defendants Bernard and O'Neill;
- Summary judgment is **DENIED** on the FLSA and CEPA retaliation claims (Counts 7 and 9) as to Defendants HSC, Haig, and O'Neill, but **GRANTED** as to Defendant Bernard;

- Summary judgment is **GRANTED** as to the NJPWA and NJWPL retaliation claims (Counts 6 and 8); and
- Summary judgment is **DENIED** on the common law claims (Counts 10-12).

An appropriate order follows.


/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 24, 2016**